CORNELIO DE LA CRUZ SALES, J.R.
C/O MICHELLE HEALEY
1739-A SAPLING COURT
CONCORD, CA 94519
**PRO SE**

**FILED**

**JUL 2 0 2016**

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Cornelio Sales,<br><br>       Petitioner,<br><br>Vs.<br><br>JEH CHARLES JOHNSON, Secretary of the United States Department of Homeland Security; LORETTA LYNCH, Attorney General of the United States; MICHAEL VAUGHN, Sacramento Field Office Director, Office of Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; SCOTT JONES, Sheriff of Sacramento County Sheriff's Department and Rio Cosumnes Correctional Center,<br><br>       Respondents | CASE NO.: 16-cv-01745 EDL (PR)<br><br>Agency NO. A-029-556-125<br><br>**SUPPLEMENTAL<br>TO HABEAS CORPUS** |

## Introduction

1.  Petitioner is supplementing his writ of habeas because petitioner has had a second bond hearing in which the same Immigration Judge (IJ) denied bond. Petitioner asserts once again that bond was denied erroneously and was subjected to due process violations. The BIA dismissed petitioner's appeal of the IJ's denial based on a "reasonable foundation" claim rather than a current threat to danger or flight risk where the government bears the burden of proof. (*Rodriguez v. Robbins,* 715 F.3d 1127 (9th Cir. 2013, *Rodriguez v. Robbins,* 804 F.3d 1060 (9th Cir. 2015). Furthermore. The BIA did not address all claims presented in petitioner's bond appeal.

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

Specifically, (1) the IJ was only interested in change of circumstances where the petitioner had the burden to justify a release on bond. (2) The IJ stated the remedy is to ask the ninth circuit to expedite consideration in petitioner's petition for review. Cleary, both of these claims are erroneous and do not properly represent controlling law in a *Rodriguez* prolonged detention hearing.

2.   It is now six months since petitioner's last bond hearing and he is again entitled to another prolonged detention hearing under *Rodriguez*. Petitioner respectfully asks for an immediate remedy from this court because he will be subjected to the same erroneous standards once again, where it appears no evidence to mitigate flight risk will satisfy the IJ or BIA to grant bond based on speculation that the petition for review will be dismissed. Furthermore, following *Rodriguez,* the likelihood of success is not an appropriate factor to consider in a bond hearing. For the record, the judge has already indicated that it may not be appropriate, but it is not mandated and refused to go into a legal discussion over the matter. (See Tr. @ 15:12 – 16:11)

### Factual Allegations

3.   On October 23, 2015, the Immigration Judge (IJ) denied petitioner's motion for a custody redetermination hearing asserting that petitioner's circumstances had not materially changed to warrant another bond hearing. With respect to the order, petitioner had pointed out that the ninth circuit court granted petitioner a stay of removal during the pendency of his petition for review. Legal counsel was also granted pro bono. The IJ denied the motion stating that "...*Rodriguez* and *Casas-Castrillon* represent judicially created remedies for individuals who have *never* had a bond hearing." ..."even if respondent can obtain a second *Rodriguez* or *Casas-Castrillon* hearing for changed circumstances, he has not demonstrated materially changed circumstances in this case. The facts cited by the respondent in no way ameliorate the risk, as discussed in detail in the prior bond memorandum and BIA decisions in this case, that respondent is an acute risk of flight." **SEE EXHIBIT XI- BOND MEMORANDUM DECISION DATED OCTOBER 23, 2015.**

4.   On October 28, 2015, the 9th Circuit Court of Appeals issued an updated decision in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). In this injunction, detainees can now contest their prolonged detention every six months. Furthermore, IJ's have been instructed to consider the length of detention that the detainee has already been subjected to and consider alternatives to detention when determining a reasonable bond. Petitioner filed a motion for a custody

redetermination hearing requesting to be present in order to effectively represent himself pro se. Subsequently, the motion was granted and a second prolonged detention hearing was scheduled for December 11, 2015,

5. On December 11, 2015, petitioner had his second *Rodriguez* hearing via video teleconference. Petitioner had filled the court room with family, friends, and organizations that were there to support release on bond. A significant amount of time was spent on technical difficulties faxing documents back and forth. Petitioner was cut off by the IJ during his testimony because the IJ specifically wanted to know what circumstances have changed since his last bond hearing. (Tr @ 9:22–11:19) Petitioner's wife was allowed to give testimony because she had supporting documents that were not being received via Fax. During her testimony she was trying to get an understanding as to reasons behind the original denial. She was then cut off by the IJ when attempting to quote the *Rodriguez* Injunction in which pertains to her husband right to release on bond. (Tr @ 14:3–18:15)   Petitioner respectfully asked if his elderly parents who drove from San Diego could testify, along with the rest of his family and support. The IJ stated that he didn't have the time to hear testimonies but as a resolution, offered a continuance a week later on December 18, 2015. (Tr @ 25:14) This resulted in more than half of these witnesses unable to come back the following week.

6. On December 18, 2015, petitioner's hearing continued in which pro bono attorney Mr. Anoop Prasad, from the Asian Law Caucus made an appearance on petitioner's behalf. Mr. Prasad was also present at the December 11, 2015, hearing in which the IJ acknowledged his presence. During the hearing, Mr. Prasad introduced countless measures and evidence to mitigate the IJ's concerns in regards to flight risk. (Tr @ 32:3, 18- 35:16). Questions were raised about the decision from the April 2015 hearing and Mr. Prasad was asked to recreate the record from this first bond hearing. (Tr @ 29:18-31:15)The IJ than proceeded to ask Mr. Prasad if anyone has asked the Ninth Circuit to expedite proceedings in the petition for review and went on to have a lengthy discussion with Mr. Prasad about the *Rodriguez* injunction and how he feels detainees such as petitioner should have no right to due process. (Tr @ 35:18 – 40:7)

7. The IJ then acknowledges the government attorney waiting patiently and asks if she would like to say something. The Government attorney wanted to raise a danger issue but the IJ did not feel that was necessary and again addressed recreating the record from the first bond hearing. (Tr @

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

40:8-41-21) The IJ once again set a reserved decision to go over supporting documents. Before the close of the hearing, Mr. Prasad informs the IJ if there is anything specific that can be amended about parole or ankle monitoring he can reach out to the California Corrections Department to request necessary changes. (Tr @ 48:18) **SEE EXHIBIT XII-BOND HEARING TRANSCRIPTS DATED DECEMBER 11 & 18, 2015.**

8.   On December 23, 2015, the IJ denied bond without stating any reasons behind his decision. Petitioner argues that receiving a denial without a reason is erroneous and violates his due process rights. Only because petitioner chose to appeal was he given a reasoning of the denial in a bond memorandum. **SEE EXHIBIT XIII-ORDER OF THE IMMIGRATION JUDGE BOND DENIAL 12-23-2015.**

9.   In January 2016, petitioner filed an appeal to the Board of Immigration Appeals (BIA) asserting that he had been denied bond erroneously and he had been subjected to due process violations.

10.   On January 29, 2016, the IJ issued a memorandum stating his reasons behind the bond denial. Specifically, the IJ cites that the remedy consistent with both parties is to ask the ninth circuit to expedite proceedings because in the IJ's view, the only legal question has already been decided in a Supreme Court decision under *Gonzalez v. Duenas-Alvarez,* 549 U.S. 183 (2007). Petitioner continues to argue the legal questions and errors made from his removal go beyond the scope of this Supreme Court case and require legal analysis beyond the scope of the Immigration Court. Regardless, this reasoning is erroneous and exactly relates to why analyzing the likeliness of success is not appropriate in a bond proceeding. **SEE EXHIBIT XIV-BOND MEMORANDUM DATED JANUARY 29, 2016.**

11.   On March 7, 2016, petitioner filed his bond appeal brief with the BIA, Citing multiple statutory and procedural violations at his bond hearing. **SEE EXHIBIT XV-COPY OF BIA BRIEF DATED MARCH 7, 2016.**

12.   On April 26, 2016, petitioner filed a supplemental brief to the BIA. After numerous requests, petitioner received the bond hearing transcripts for his December 11 & 18 hearings. **SEE EXHIBIT XVI-COPY OF SUPPLEMENTAL BRIEF DATED APRIL 26, 2016.**

13.   On May 20, 2016, the Board of Immigration Appeals (BIA) dismissed petitioner's appeal. In the BIA decision it states "We are unpersuaded by the respondent's appellate arguments and

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

decline to disturb the Immigration Judge's decision." The BIA acknowledges the fact that the IJ concluded a flight risk determination primarily because he is subject to a final order of removal and lacks incentive to appear for deportation. **SEE EXHIBIT XVII-BIA DISMISSAL DATED MAY 20, 2016.**

14.   Petitioner was not given a neutral forum or a neutral fact finder (IJ) to contest his continued detention because the IJ was only interested in a change of circumstances since petitioner's first hearing warranting a release. The BIA rejected the petitioner's argument regarding the focus of changed circumstances because the BIA only focused on the denial from the original 2nd bond request where the IJ determined a lack of materially changed circumstances, and stated that "that decision is not before us." Petitioner had claimed in his appeal brief to the BIA, the IJ's focus was on a changed circumstance at the bond hearing which reiterated his statement in the denial …"Even if respondent can obtain a second *Rodriguez* or *Casas- Castrillon* hearing for changed circumstances, he has not demonstrated materially changed circumstances in this case. The facts cited by the respondent in no way ameliorate the risk, as discussed in detail … that respondent is a flight risk."

Petitioner understandably feels his denial had already been predetermined because the IJ's was only interested in a change of circumstances rather than correctly identifying current factors that would establish a danger or flight risk if he was released at his hearing. (Tr @ 9:22–11:19) The BIA did not see that the IJ exhibited a predetermination to decide the case but only expressed an opinion as to the motivation for seeking a release. The BIA concluded that those views do not detract from the outcome of the decision, which properly represents the application of controlling law to the facts of the case. Petitioner argues that when reading the BIA dismissal and the IJ's memorandum it becomes clear that the IJ's decision to deny bond was based on questionable speculation. The IJ's flight risk determination is based solely on the IJ's speculation that the ninth circuit court will deny petitioner's petition for review.

15.   The BIA concluded that the IJ's bond denial has a reasonable foundation and declines to disturb it. The BIA forms the reasonable foundation structure on the fact that petitioner is subject to a final order of removal, petitioner asserts that this decision erroneous. The BIA addressed the concerns of the petitioner that there was lack of an individualized assessment. The BIA concluded that the IJ acknowledged at the first hearing the favorable equities but states "the unfavorable

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

factors, including the speculative and limited opportunity for relief, indicate a lesser motivation to appear for removal." Petitioner argues there are no unfavorable factors other than speculation that petitioner will not succeed in his petition for review, and what is worse, the IJ concluded that the strong ties and favorable factors actually made him a flight risk and would give him an incentive to not report for removal. The IJ's reasoning and BIA affirmance leads to absurdities rather than a "reasonable foundation." Following the IJ's reasoning, no individual should be released on bond while appealing his removal order because it is always likely that the appeal will be denied and the removal order becomes final—every detainee seeking bond is a flight risk because he/she likely has no relief.   This runs afoul of well-settled law. *See, e.g.*, *Singh*, 638 F.3d at 1205.

16.   Finally, The IJ stated that ..." the remedy which is consistent with both his interests and the public interest is to ask the Ninth Circuit to expedite consideration of the narrow legal issue presented by his petition for review." (See Bond Memorandum Oct 23, 2015) Once again, based on speculation that petitioner will not win relief and his petition for review will be dismissed, the IJ erroneously chose to deny bond. The IJ questioned if anyone has filed a class action lawsuit to the Ninth Circuit because the executive branch has done everything it could do. Even worse, the IJ proceeded to go into a lengthy discussion with Petitioner's counsel regarding the hold up in petitioner's removal order.

... "What you're driving is that despite the finding by me and by the BIA that he's subject to deportation, he should have a comfortable period where he can associate with his family while his petition for review is being adjudicated?"

Mr. Prasad responds

... "what I'm saying is he should be released not because he's entitled to a comfortable period but he should be released if he doesn't pose a threat to public safety or a flight risk and if we can mitigate those two things."

Leading into the IJ and Counsel's legal discussion on *Rodriguez,* the IJ asks

... "Do you agree with me, you don't have to... that what *Rodriguez* does is create a substantive due process right for people such as respondent to be at liberty in the United States absent a Justification by the Government.? ... So then the question becomes does even a person who has a green card but committed a deportable offense does he have a substantive due process right to be at liberty in this country? (Tr. @ 35:18 – 40:7).

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

Clearly, the IJ interprets *Rodriguez* in a way for him to justify petitioner has no legal right to due process. *Rodriguez* makes it clear that no subclass member under this permanent injunction is subject to a final order of removal. Petitioner has a granted stay of removal while challenging his removal, as long as this stay is in place Petitioner is not subject to the IJ and the BIA's order of removal. (quoting Prieto-Romero, 534 F.3d at 1060) (Rodriguez, Id. at 49, 50).

## Claims for Relief

### I.    STATUTORY VIOLATION

17.   Petitioner re-alleges and incorporates by reference paragraphs 1 through 16 above.

18.   Respondents' continued detention of Petitioner violates petitioner's entitlement to bond as interpreted in the permanent injunction under *Rodriguez v. Robbins,* 804 F.3d 1060 (9th Cir. 2015). Due to petitioner's granted stay of removal, he is a class member of *Rodriguez* and now facing prolonged detention. A decision to deny bond based on the IJ's "reasonable foundation" structure rather than clear and convincing evidence from the government that petitioner poses a current danger or flight risk is erroneous and contrary to statute.

19.   The IJ and BIA continue to violate petitioner's entitlement to release on bond where the government bears the burden in justifying continued detention based on current danger or flight risk. It is clear that the IJ held the petitioner not the government accountable for providing evidence in support of a release on bond. Although petitioner does not bear the burden of proof in this type of hearing, he has provided an extraordinary amount of support to justify he is not a current flight risk or danger. The IJ ignored all evidence and safeguards petitioner ensured that would prevent him from escaping. First, the Immigration Judge and Board could have set a sufficient bond amount to ensure that Petitioner would not escape.   This is the sole purpose of bond.   Second, California's parole system provides an additional safeguard that Petitioner will report for removal.   Petitioner is on parole from the California Department of Correction.   A parolee from the California Department of Corrections is subject to a range of supervising programs, including routine check-ins, drug tests, unexpected visits by a parole officer, mandatory participation in workshops. Petitioner, currently on parole, will lose his parole if he fails to meet requirements of these supervising programs. As presented by Petitioner's counsel in his second

*Rodriguez* hearing, the California Department of Corrections and Rehabilitation implements an effective parole program and closely work with ICE through a criminal alien program. The government fails to prove otherwise by clear and convincing evidence. The BIA dismissed the appeal stating" We do not find unreasonable the Immigration Judge's determination that the evidence is clear and convincing that the respondent poses a flight risk." Petitioner argues that this decision is erroneous because The IJ's determination was not based on clear and convincing evidence demonstrated by the government because the government at no time objected to any evidence presented in support of a release.

## II.   SUBSTANTIVE DUE PROCESS VIOLATION

20.   Petitioner re-alleges and incorporates by reference paragraphs 1 through 16 above.

21.   Petitioner's continued detention violates his right to substantive due process through deprivation of freedom. The Fifth Amendment requires that depravation of liberty must be narrowly tailored to serve a compelling government interest. Any interest to continue prolonged detention to ensure removal cannot be justified here because petitioner's stay of removal halted any efforts to effectively remove respondent until further order from the ninth circuit court. Petitioner cannot be removed and continues to languish in detention pending his petition for review, furthermore, the IJ has made it clear, that in his opinion petitioner has no right to due process. (Tr. @ 35:18 – 40:3). Petitioner has been detained for twenty-two months, well over the presumptively reasonable period of six months. Petitioner seeks an immediate remedy from this court otherwise he will continue to receive bond hearings at six month intervals by the same IJ who continues to violate petitioner's due process rights.

## III.   PROCEDURAL DUE PROCESS VIOLATION

22.   Petitioner re-alleges and incorporates by reference paragraphs 1 through 16 above.

23.   Under the due process clause of the Fifth Amendment, an alien is entitled to a meaningful opportunity to demonstrate why he should not be detained. Although given that opportunity, any efforts to mitigate flight risk were disregarded by the IJ. The IJ had no interest to discuss any evidence that would satisfy a release and the government had no objections to any evidence introduced, he had no intentions to grant bond based on speculation that petitioner's case will be dismissed. Furthermore, it was the IJ and the BIA (not the government attorney) who formed a "reasonable foundation" structure to justify a denial. The failure to provide a neutral decision

Petition for Writ of Habeas Corpus

maker to review continued custody violates petitioner's rights to procedural due process.

24.   Furthermore, the IJ made it clear that he does not feel due process is entitled to the petitioner as a deportable alien, that itself is a procedural due process violation because the IJ's remedy is for the petitioner to ask the Ninth Circuit Court to expedite his proceedings rather than to grant a release on bond where he can live comfortable awaiting the outcome of his case. It is not a matter of petitioner living comfortably; it is a matter of whether or not he poses a current danger or flight risk warranting further detention.

WHEREFORE, Petitioner prays that the Court grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under chapter 153 (habeas corpus) of Title 28;

(3) Pursuant to 28 U.S.C. § 2243 issue an order directing respondents to show cause why the writ of habeas corpus should not be granted;

(4) Grant petitioner a writ of habeas corpus directing the respondents to immediately, set a reasonable bond amount and or release petitioner from custody on electronic monitoring.

(5) Award petitioner attorney fees and or appoint counsel;

(6) Grant any other and further relief as the Court deems just and proper.

**Dated: July 18, 2016**

Cornelio Dela Cruz Sales, Jr.
Petitioner
Pro Se

Petition for Writ of Habeas Corpus

Agency No. A029-556-125

## EXHIBITS

XI.     **BOND MEMORANDUM DECISION DATED OCTOBER 23, 2015.**

XII.     **BOND HEARING TRANSCRIPTS DATED DECEMBER 11 & 18, 2015.**

XIII.     **ORDER OF THE IMMIGRATION JUDGE BOND DENIAL 12-23-2015.**

XIV.     **BOND MEMORANDUM DATED JANUARY 29, 2016.**

XV.     **COPY OF BIA BRIEF DATED MARCH 7, 2016.**

XVI.     **COPY OF SUPPLEMENTAL BRIEF DATED APRIL 26, 2016.**

XVII.     **BIA DISMISSAL DATED MAY 20, 2016.**

**XI.     BOND MEMORANDUM DECISION DATED OCTOBER 23, 2015.**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO, CALIFORNIA

Matter of                )                Date: October 23, 2015
                                    )
   **Cornelio Sales,**          )                File Number:  A 029 556 125
                                      )
   Respondent           )                In Bond Proceedings
                                      )
   ————————————————————)      **MEMORANDUM**

     On March 27, 2015 this court denied respondent's request for release on bond pursuant to *Rodriguez v. Robbins*, 715 F. 3d 1127 (9th Cir. 2013). The BIA dismissed his bond appeal on September 17, 2015. The respondent has filed a motion for, in substance, a second *Rodriguez* hearing, asserting that his circumstances have changed. He points out that the Ninth Circuit has granted a stay of removal and appointed an attorney for him.

     Respondent's position implicitly is that aliens who have received one bond hearing under *Rodriguez* or *Casas-Castrillon v. DHS*, 553 F.3d 942 (9th Cir. 2008) may receive a second bond hearing if their circumstances materially change. But both *Rodriguez* and *Casas-Castrillon* represent judicially-created remedies for individuals who have *never* had a bond hearing. *See* the injunction issued, at the direction of the Ninth Circuit, by the United States District Court for the Central District of California in *Rodriguez v. Holder*, CV-07-3239 TJH, which specifically defines the class of persons to whom it applies as aliens who "[h]ave not been afforded a bond hearing to determine whether their detention is justified."

     Even if respondent can obtain a second *Rodriguez* or *Casas-Castrillon* hearing for changed circumstances, he has not demonstrated materially changed circumstances in this case. The facts cited by the respondent in no way ameliorate the risk, as discussed in detail in the prior bond memorandum and BIA decisions in this case, that respondent is an acute risk of flight.

     The respondent's motion for a second bond hearing is denied.


                                   _____
                                    **Anthony S. Murry**
                                    **Immigration Judge**

**XII.   BOND HEARING TRANSCRIPTS DATED DECEMBER 11 & 18, 2015.**

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                                          File:  A029-556-125


CORNELIUS DELA CRUZ SALES          )
                                                      )          IN BOND PROCEEDINGS
                                                      )
      RESPONDENT                              )          Transcript of Hearing


Before ANTHONY S. MURRY, Immigration Judge


Date: December 11, 2015                    Place: SAN FRANCISCO, CALIFORNIA


Transcribed by DEPOSITION SERVICES, Inc.-2


Official Interpreter:


Language:


Appearances:

  For the Respondent: PRO SE

  For the DHS: JUSTIN PRICE

1  JUDGE FOR THE RECORD

2           This is Immigration Judge Anthony Murry in San Francisco, California.  It

3  is December 11, 2015.  We're conducting <u>Rodriguez</u> bond proceedings in A 029 556

4  125.  The respondent appearing by VTC from Mesa Verde, not Mesa Verde,

5  Sacramento ICE offices.  He appears to be pro se.  Justin Price, Assistant Chief

6  Counsel here on behalf of the Government.  Respondent has several family members

7  present in the courtroom.

8  JUDGE TO MR. SALES

9           Good morning, Mr. Sales.

10  MR. SALES TO JUDGE

11           Good morning, Judge, Mr. Murry.

12  JUDGE TO MR. SALES

13           For a second <u>Rodriguez</u> bond here.

14  MR. SALES TO JUDGE

15           Yes.

16  JUDGE TO MR. SALES

17           Do you have an attorney helping you today, sir?

18  MR. SALES TO JUDGE

19           I appreciate that.

20  JUDGE TO MR. SALES

21           Mr. Sales, do you have a lawyer who's assisting you with your case

22  today?

23  MR. SALES TO JUDGE

24           I believe I'm proceeding pro se, Your Honor.

25  JUDGE TO MR. SALES

A029-556-125                    1                    December 11, 2015

1          All right.

2  MR. SALES TO JUDGE

3          My understanding is that Mr. Prasad is here.

4  JUDGE TO MR. SALES

5          Mr. Prasad is here.  He has not entered an appearance on your behalf.

6  He's simply here to lend support.

7  MR. SALES TO JUDGE

8          Yes.  Right.  [Indiscernible], Your Honor, will it be possible for me to confer

9  with him during the hearing for any questions I might have?

10  JUDGE TO MR. SALES

11          I'm not sure how that's going to work, Mr. Sales, for you to confer with him

12  during the hearing because you're appearing by VTC.

13  MR. SALES TO JUDGE

14          Oh.

15  JUDGE TO MR. SALES

16          If you'd like to talk to him before we get started, I can arrange for that to be

17  done.

18  MR. SALES TO JUDGE

19          Would that be a possibility?

20  JUDGE TO MR. SALES

21          It certainly would be.  As long as Mr. Prasad is willing to do it.

22  MR. PRASAD TO JUDGE

23          Certainly.  I can go to the VTC room.

24  MR. SALES TO JUDGE

25          If he's okay with that of course.

1   JUDGE TO MR. PRASAD

2          There's somebody else in the VTC room, sir. We'll probably have to put

3   you in the pro bono room.

4   MR. PRASAD TO JUDGE

5          Okay. That's fine. That's all right by me.

6   JUDGE TO MR. PRASAD

7          Okay.

8   JUDGE TO OFFICER

9          Officers, could you put Mr. Sales in the pro bono room so that Mr. Prasad

10  can talk to him?

11  OFFICER TO JUDGE

12         Yes, Your Honor.

13  JUDGE TO OFFICER

14         All right. Done.

15  JUDGE FOR THE RECORD

16         Let's go off the record on this one.

17                              (OFF THE RECORD)

18                              (ON THE RECORD)

19  JUDGE FOR THE RECORD

20         Okay. This is Immigration Judge Anthony Murry in San Francisco,

21  California, December 11, 2015. Continued Rodriguez bond proceedings A 029 556

22  125. I think I did the introductory part before. Respondent appearing by VTC. He's pro

23  se. Yes I did. I was asking him if he had counsel. And we stood down to let

24  respondent speak to Anup Prasad (phonetic sp.), Esquire from Asian Law Caucus

25  who's not entering an appearance for the respondent. Justin Price here for the

1  Government.

2  JUDGE TO MR. SALES

3          All right.  Mr. Sales, you had a chance to talk to Mr. Prasad.  Is that

4  correct?

5  MR. SALES TO JUDGE

6          Yes.  Thank you very much, Mr. Murry.

7  JUDGE TO MR. SALES

8          And I understand, sir, that he's not your attorney today.  Is that right?

9  MR. SALES TO JUDGE

10          Correct.  That's correct.

11  JUDGE TO MR. SALES

12          Do you want to go forward with your bond hearing today?

13  MR. SALES TO JUDGE

14          Yes.  Yes, sir.

15  JUDGE TO MR. SALES

16          Let me see if the Government Attorney has any questions for you.

17  MR. PRICE TO JUDGE

18          Yes, Your Honor.

19  JUDGE TO MR. PRICE

20          Wait a minute.  Hold on, Mr. Price.  Wait a minute.  He faxed documents

21  down.

22  MR. PRICE TO JUDGE

23          Yes, sir.

24  JUDGE TO MR. PRICE

25          Let's see if those documents came in.

1  JUDGE FOR THE RECORD

2            Off the record.

3                              (OFF THE RECORD)

4                              (ON THE RECORD)

5  JUDGE TO MR. SALES

6            All right.  Mr. Sales, the document hasn't come through yet.  The Officer

7  said it's sending on his end.  I asked one of the legal assistants to keep an eye out of

8  the documents and bring them in here when we get them.  Let's go ahead because I

9  don't want to just keep waiting for the documents.  We'll take a look at the documents

10  when they get here.

11  JUDGE TO MR. PRICE

12            Government, questions for the respondent?

13  MR. PRICE TO JUDGE

14            Thank you, Your Honor.

15  MR. PRICE TO MR. SALES

16        Q.    Good morning, sir.

17        A.    Good morning.

18        Q.    If you have any trouble hearing me or understanding what I say

19  please let us know.  Okay?

20        A.    Okay.

21        Q.    When did you first arrive in the United States?

22        A.    1982.

23        Q.    And what status did you come in if you know?

24        A.    I was a military dependent and I believe it was a B2 visa.

25        Q.    Did you adjust status and get your green card?

A029-556-125                          5                    December 11, 2015

1        A.      Yes, sir.

2        Q.      And then in 1995 you were convicted of second degree murder.  Is
3   that correct?

4        A.      That's correct.

5        Q.      You were sentenced to is it 15 years to life?  Is that correct?

6        A.      Total is 16 years to life.  15 and a gun enhancement charge.

7        Q.      You were convicted at a jury trial.  Correct?

8        A.      Correct.

9        Q.      It looks like the actual incident occurred on January 14, 1995.
10   Does that sound correct?

11       A.      Yes.  That's correct.

12       Q.      What can you tell us about what happened?

13       A.      At that time of my life I was, my judgment, I was hanging around
14   the wrong crowd.  It wasn't making me any better because my, just a bad influence
15   towards them as they were towards me.  And at the time I felt that, you know, there's
16   things that I had to do in order to fit in.  Keep in mind that I was still in high school.  I
17   was still a teenager.  And my belief system was that to impress and to fit in when I
18   possibly could.  And, like, it's like if I didn't engage right and participate in whatever they
19   were doing I wouldn't be a person of value to them and that's one of the main reason
20   why I was able to commit such a, or partake in such a horrible crime.

21       Q.      So you were at a birthday party.  Is that correct?

22       A.      There was a birthday party.  I didn't actually attend.

23       Q.      And you were a member of a gang called Side by Side.  Is that
24   right?

25       A.      Correct.

1    Q.    And the victim was named John Moreno.  Is that right?

2    A.    That's correct.  That's correct.

3    Q.    Did you know John Moreno?

4    A.    No, sir.  I did not.

5    Q.    And he was shot five or six times.  Is that right?

6    A.    I believe so.  That's correct.

7    Q.    Were you caught by the police the same day or did it take some
8    time?

9    A.    It took some time.

10    Q.    Do you remember approximately when you were arrested?

11    A.    I believe it was February 28, 1995.

12    Q.    Why did you and the other people attack Mr. Moreno?  Can you
13    remember?

14    A.    Well, to be honest with you, there was an altercation at the party
15    and my friends went to go confront the people at the party and the location of the crime
16    and where I was at were two different places, sir.  The confrontation between him and
17    Mr. Moreno and that's when he opened fire at Mr. Moreno unfortunately.  There was
18    some words exchanged and that's when, that's when they shot him.

19    Q.    Now here in Immigration Court in 2014 you were denied relief and
20    ordered removed.  Is that correct?

21    A.    That's correct.

22    Q.    And you appealed that decision to the Board of Immigration
23    Appeals?  Is that right?

24    A.    Right.

25    Q.    I'm sorry.  I didn't hear you, sir.  There was some other noise in the

1  courtroom.  Could you please repeat?

2          A.      Yes.  That's correct.

3          Q.      And the Board of Immigration Appeals dismissed your appeal in

4  March of 2015.  Is that right?

5          A.      That's correct.

6          Q.      And you currently have a petition for review pending with the Ninth

7  Circuit?

8          A.      That's correct.

9          Q.      Are you married or single?

10         A.      I'm married.

11         Q.      How long have you been married?

12         A.      Since March 10, 2012.

13         Q.      Do you have any children?

14         A.      I have one stepson.

15         Q.      How old is your stepson?

16         A.      15.  Just turned.

17         Q.      Do your parents live in the United States?

18         A.      Yes they do.

19         Q.      Do you have any other siblings that live in the United States?

20         A.      Yes.  I have one brother and one sister.

21         Q.      Do you have any family that remains in the Philippines?

22         A.      Yes I do.

23         Q.      Well, what family of yours is still in the Philippines?

24         A.      Well, most of them are distant.  Distant cousins and uncles and

25  aunties.

A029-556-125                          8                   December 11, 2015

1       Q.    Were you working in the United States before you went to prison?

2       A.    I had short stints at like McDonald's, fast food restaurants.  Nothing

3 for a long period of time.

4       Q.    What year did you graduate from high school?

5       A.    I was actually, I would have been class of 1995 but I was arrested

6 before I was able to graduate.  But I was able to obtain my GED in prison in 2001.

7       Q.    Are you afraid to return to the Philippines?

8       A.    No, sir.  I'm not afraid if I was returned back to the Philippines.  I'm

9 just trying to, this is an opportunity for me to stay with my family while my petition for

10 relief is pending and I'm just trying to exercise that right, sir.

11      Q.    Thank you, sir.

12 MR. PRICE TO JUDGE

13       I have no further questions at this time, Your Honor.

14 JUDGE TO MR. SALES

15      Q.    Mr. Sales, I wanted to give you an opportunity.  Do you feel that

16 your circumstances have changed in any way since the last bond hearing that you had?

17      A.    Absolutely.  Mr. Murry --

18      Q.    It's Judge Murry, Mr. Sales.

19      A.    Sorry.  Judge Murry.  I'm sorry, Your Honor.  Is it possible for me to

20 say something in regards to that?

21      Q.    That's exactly what I wanted you to do.

22      A.    Okay.  Okay.  It's that, it's my understanding from what I read from

23 the bond memo, Your Honor, that I was in that bond on March 25, 2015 largely in part

24 because I was subjected to an administrative final order of removal.  In the opinion of

25 this Court and my only contention with the Ninth Circuit has already been rejected by

1  the United States Supreme Court in <u>Gonzales v. Duenas-Alvarez</u>, and since my last

2  custody determination hearing there has been significant changes in circumstances in

3  my case that I would like to point out. First, a motion to stay being granted by the Ninth

4  Circuit. Now the Government is unable to remove me, excuse me, to remove me until

5  further order from the Court, from the Circuit Court. And it's also important to point out

6  that the most important immediate trial is to overcome when getting a stay granted is

7  likely to succeed, [Indiscernible] has held that you must show more than the mere

8  possibility [indiscernible] of removal. And second, not only was my motion for a stay

9  granted but my motion for pro bono counsel has also been granted, guaranteeing that

10  there will be further proceedings in determining my removability from the United States.

11  And I've been detained for almost 15 months with no likelihood for removal in the near

12  future, subjecting me to even further detention, Your Honor. And in addition too, the

13  Ninth Circuit has once again ruled in my [indiscernible] and further held that

14  [indiscernible] likely detention for which I have already been subjected to and that IJ's

15  must consider alternatives to detention concerning a recent bond. And it was also my

16  understanding, Your Honor, that the Government has the burden of proof to prove

17  through clear and convincing evidence to justify continued detention. And also I'd like to

18  address other factors and issues that were raised in the <u>Rodriguez</u> order in regards to

19  the <u>Guerra</u> factors, hardships, and et cetera. I've been facing in regards to my --

20        Q.    Mr. Sales. Mr. Sales.

21        A.    Yes.

22        Q.    When you were here for your last <u>Rodriguez</u> hearing --

23        A.    Yes.

24        Q.    -- Government had the burden of proof and I considered the <u>Guerra</u>

25  factors. So what I'm trying to find out is, are there new factors that I didn't previously

1  consider or has something changed in the factors that I did consider?  Because you told

2  me last time about the factors.  For example, family ties which I discussed at length.  So

3  that's not, I mean, we've got all that in the record.  What I need to know is now that

4  you're doing your second <u>Rodriguez</u> bond hearing --

5          A.    Right.

6          Q.    -- what's different?  You pointed out length of detention.  You're

7  right.  I have to consider that.  Alternatives to detention such as an ankle bracelet.  I'll

8  have to consider that as well.  I agree with you on that.

9          A.    Yes.

10         Q.    I understand that the Ninth Circuit issued a stay.  I will tell you

11 honestly that that's not a tremendously significant factor because the Ninth Circuit has a

12 very expansive interpretation of [indiscernible] in my humble opinion, but I'll consider it.

13         A.    Okay.

14         Q.    And that's counsel's been appointed.  Those are new factors and I'll

15 have to consider them.  Are there other things that are new?  Because we understand

16 what <u>Rodriguez</u> says and I applied it last time.  Go ahead if there's something new.

17         A.    Aside from the new <u>Rodriguez</u> order and those changes in my

18 Ninth Circuit case that's pretty much it, Your Honor.

19         Q.    Okay.

20 JUDGE TO MR. PRICE

21         Government, anything else on this one?

22 MR. PRICE TO JUDGE

23         No, Your Honor.

24 JUDGE TO MR. SALES

25         I don't have the documents, Mr. Sales.  So I can't actually do anything else

1 until I read the documents and see if the documents tell me something that I need to

2 consider.

3 UNIDENTIFIED MALE TO JUDGE

4         Your Honor?

5 JUDGE TO UNIDENTIFIED MALE

6         Yes?

7 MS. YUVI TO JUDGE

8         I have copies of the documents.

9 JUDGE TO MS. YUVI

10         Oh. Fabulous. Fabulous.

11 JUDGE FOR THE RECORD

12         There's a family member here who's got them.

13 MS. YUVI TO JUDGE

14         And I've already made copies for each.

15 JUDGE TO MS. YUVI

16         Outstanding. There you go?

17 MS. YUVI TO JUDGE

18         Can I just explain a little what's in there?

19 JUDGE TO MS. YUVI

20         Come on up, ma'am. I've got to get you in front of the microphone. You're

21 his wife. Correct?

22 MS. YUVI TO JUDGE

23         Yes I am.

24 OFFICER TO JUDGE

25         Excuse me.

A029-556-125                    12                    December 11, 2015

1  OFFICER TO MR. PRICE

2           Counsel, I've now received your documents right now at this moment.

3  MR. PRICE TO OFFICER

4           Thank you.

5  JUDGE TO MR. PRICE

6           What did you send?

7  OFFICER TO MR. PRICE

8           Yes.  Make sure there's a correct fax number.

9  MR. PRICE TO OFFICER

10          One moment, sir.

11  OFFICER TO MR. PRICE

12          Okay.

13  MR. PRICE TO JUDGE

14          I sent the [indiscernible] documents, sir, Your Honor, and your memo --

15  JUDGE TO MR. PRICE

16          Okay.

17  MR. PRICE TO JUDGE

18          -- from the last, April 28, 2015.

19  JUDGE TO MR. PRICE

20          Okay.  He was served with all that so.

21  JUDGE TO MS. YUVI

22          Go ahead, ma'am.

23  MS. YUVI TO JUDGE

24          Okay.  You just want me to discuss what was in the --

25  JUDGE TO MS. YUVI

A029-556-125                    13                    December 11, 2015

1              Tell me whatever you'd like.

2  MS. YUVI TO JUDGE

3              I would like to tell you. I am John's wife. I just would like to say at this
4  point I am extremely exhausted. I have a full-time job. I'm an R performance engineer
5  for T-Mobile. Constantly I have to drive back and forth from Santa Cruz, Monterey. I'm
6  also dealing with the Super Bowl at Levi's Stadium. So I'm really busy right now. I just
7  wanted to mention that as being part of the hardships that I am dealing with, health-wise
8  I'm seeing a doctor continually for my depression and anxiety. I've been recently having
9  panic attacks and that's been, it's been hurting me as far as going to visit my husband.
10 He's 60 miles away. I'm only able to see him at night. Non-contact visits behind a
11 glass. It takes me three hours, three to four hours just to go see him and I get 45
12 minutes behind the glass. I haven't, the, I wanted to make that an important factor as to
13 hardship because yes, he was in prison, but his conditions here, which are supposed to
14 be civil detention, are far worse than his conditions when he was in prison.

15 JUDGE TO MS. YUVI

16             Okay. Ma'am, I don't have any control over the conditions under which
17 he's held. The issue is whether he's a danger to the community or a risk of non-
18 appearance. I understand that it's difficult for you being separated from him and it's
19 been a long time. But I can't change anything about the conditions under which he's
20 held. So I want you to understand that.

21 MS. YUVI TO JUDGE

22             Okay. Okay.

23 JUDGE TO MS. YUVI

24             Okay?

25 MS. YUVI TO JUDGE

1          Well, as far as the last bond hearing it was a little unclear as to why he

2   was denied because a reserved decision was set.

3   JUDGE TO MS. YUVI

4          And that's, ma'am, I tried to explain in the order that we issued that's what

5   we always do.  We issue a summary decision if the case is appealed and we prepare a

6   bond memorandum that explains our decision.

7   MS. YUVI TO JUDGE

8          I understand that.

9   JUDGE TO MS. YUVI

10         And as you know the bond memorandum found he was a risk of flight and

11  explained why.

12  MS. YUVI TO JUDGE

13         From what I understood the reason was because he had a final order of

14  removal.

15  JUDGE TO MS. YUVI

16         No.

17  MS. YUVI TO JUDGE

18         And that his --

19  JUDGE TO MS. YUVI

20         That's not correct, ma'am.  But go ahead.

21  MS. YUVI TO JUDGE

22         And that his only contention for relief was [indiscernible] the Ninth Circuit

23  was already rejected by Duenas-Alvarez.  Those were the two main factors that I saw in

24  the bond memo that denied him.  And I just wanted to point out that the recent

25  Rodriguez hearing says that those two factors are actually inappropriate to consider in a

A029-556-125                    15                    December 11, 2015

1  bond hearing.

2  JUDGE TO MS. YUVI

3           All right.  Ma'am, I don't want to get into a legal argument --

4  MS. YUVI TO JUDGE

5           Okay.

6  JUDGE TO MS. YUVI

7           -- with you.  But I don't read Rodriguez the same way you do.

8  MS. YUVI TO JUDGE

9           I understand, Your Honor.

10  JUDGE TO MS. YUVI

11           Okay.  I think it says that I'm not mandated to consider likelihood of

12  success but it doesn't forbid me from considering likelihood of success.  I really don't

13  want to get into a legal argument with you about that.

14  MS. YUVI TO JUDGE

15           Okay.  We're just trying to understand what exactly is the reason for

16  denial.  I guess then why, the reason why I'm up here is to give you these documents.

17  JUDGE TO MS. YUVI

18           All right.

19  MS. YUVI TO JUDGE

20           The first page is basically the order from the Ninth Circuit dismissing the

21  respondent's motion summary disposition.

22  JUDGE TO MS. YUVI

23           Yes.

24  MS. YUVI TO JUDGE

25           And ordering pro bono attorney for his case in the petition of review.  So

1   that again guarantees that he's going to be facing more prolonged detention.  There's
2   no end date.  Other things I have, support letters from Ben Wang (phonetic sp.).  He's
3   part of the Asian Prison Support Committee.  He's been involved in John's life for many
4   years and is a strong supporter.  And he couldn't be here today but he has some people
5   here on his behalf in support of him.  And I have a few additional support letters.  I have
6   information regarding the fact that he would be on parole.  That is a safeguard, in my
7   opinion, that he would be comply with any removal proceeding or any order that
8   becomes the outcome from the Ninth Circuit petition review because he knows that if he
9   violates any parole conditions he would be subject to ICE detention.  So I would think
10  that that's a definite safeguard that he would comply with any order.  And, again, that's
11  included.  And then parole information, his conditions for parole, that is all in there.  And
12  then I would also note the date, the fact that yes, when he was not in prison he did have
13  a job at McDonald's or at the commissary.  However, when he was in prison he became
14  a certified optician.  He's been a certified optician.  His license is still valid and since
15  2001 he's been making, he's been manufacturing eyeglasses for welfare, military, a
16  whole bunch of different people.  So, I mean, that, I think, would show some
17  responsibility that he would comply with any order.  He's a responsible person.  Even,
18  even where he is today he's become the house man where he is.  The guards trust him
19  enough to let him out of his cell and help the other people when needed.  I mean, he's a
20  responsible, reliable person and we are just asking for a chance for him to come home
21  just during this time while his petition is pending because since the stay has been
22  granted the Government can't do anything.  There's nothing going on behind the scenes
23  with the Government trying to deport him while he's being detained because the stay is
24  in place.
25  JUDGE TO MS. YUVI

1          I understand.

2   MS. YUVI TO JUDGE

3          And that's all that I would like to say.

4   JUDGE TO MS. YUVI

5          Keep in mind, ma'am, with respect to him being a responsible person and

6   the guards trusting him and so forth, keep in mind I specifically did not make a finding

7   that he currently posed a danger to the community.

8   MS. YUVI TO JUDGE

9          I understand that.

10  JUDGE TO MS. YUVI

11         Okay?

12  MS. YUVI TO JUDGE

13         I understand that.  We're just trying to figure out what we can do to assure

14  you that he would comply with any order and allow him to come home for Christmas.

15  And that's all that we're asking.

16  JUDGE TO MS. YUVI

17         Ma'am, are you sure you gave me the same, these look like different

18  documents.  Can I show these to you?

19  MR. SALES TO JUDGE

20         They're different, Your Honor.

21  JUDGE TO MS. YUVI

22         Next down and you --

23  JUDGE TO MR. SALES

24         Yes, Mr. Sales?

25  MR. SALES TO JUDGE

1        Yes.  They're different, Your Honor.

2    JUDGE TO MR. SALES

3        Oh, okay.  They are different.  All right.

4    MR. SALES TO JUDGE

5        These were --

6    MS. YUVI TO JUDGE

7        I think some of them are different and there may be some additional ones

8    in my --

9    JUDGE TO MS. YUVI

10        Okay.

11    JUDGE TO MR. PRICE

12        Mr. Price, I can give these to you.

13    JUDGE FOR THE RECORD

14        So let's make the documents that Mr. Sales' wife gave, BB-1.

15    JUDGE TO MS. YUVI

16        Oh, you're okay.

17    MR. SALES TO JUDGE

18        Judge Murry?

19    JUDGE TO MR. SALES

20        Yes, Mr. Sales?

21    MR. SALES TO JUDGE

22        May I say something please?

23    JUDGE TO MR. SALES

24        Of course.

25    MR. SALES TO JUDGE

1         In regards to me being a flight risk and not appearing on deportation day,

2  Your Honor.

3  JUDGE TO MR. SALES

4         Yes?

5  MR. SALES TO JUDGE

6         I got safeguards here in place.  Number one safeguard is I'm on parole for

7  at least the next five years and after 20-some years the last thing that I would want to do

8  is reincarcerate myself.  So if I don't comply with any obligation or any guidelines with

9  any agency I will be returned to prison.  And I spent my late teens, all my twenties, and

10  almost all my thirties incarcerated.  Like I said, I'm not [indiscernible].  If I don't comply I

11  will be returned back to prison and if I were to fight this hard just to get out, just

12  purposely abscond and be sent back to prison I would rather be deported and be free.

13  And I wouldn't want to put anymore suffering towards my family, my wife, and those who

14  are close and dear to me, Your Honor.

15  JUDGE TO MR. SALES

16         All right.  Thank you, Mr. Sales.

17  MR. SALES TO JUDGE

18         I can assure you of that.  You're welcome.

19  JUDGE TO MR. SALES

20         All right.  Thank you, sir.  Sir, I got, I just got these documents.

21  JUDGE FOR THE RECORD

22         The second packet of documents that Mr. Sales sent out.  Let's make that

23  BB-2.

24  JUDGE TO MR. SALES

25         I have not had a chance to read these documents so I'm going to take the

1  time to read the documents.  I'll try to issue a decision.  Again, it will be a summary

2  decision, same procedure as before.  I'll try to issue a decision today.  It could be very

3  well be Monday before I can get to it.  But I need to read the documents.

4  MS. YUVI TO JUDGE

5           Now, is there going to be a reason for the denial.

6  JUDGE TO MS. YUVI

7           Not in the summary order.

8  MS. YUVI TO JUDGE

9           Because from what I understand is you're supposed to give the denial

10 here and then the reasoning would be -- am I --

11 JUDGE TO MS. YUVI

12          Okay.  Ma'am, do you want me to make a decision before I've read his

13 documents?

14 MS. YUVI TO JUDGE

15          I'm scared.

16 JUDGE TO MS. YUVI

17          Okay.  I understand that you're scared.  But I think you want me to read

18 his documents before I do a decision.  Right?

19 MS. YUVI TO JUDGE

20          I just want him to come home.

21 JUDGE TO MS. YUVI

22          I understand, but it's not quite as simple as that.

23 JUDGE TO MR. SALES

24          All right.  Mr. Sales, I assume you want me to read the documents before I

25 render a decision.  Correct?

A029-556-125                    21                    December 11, 2015

1  MR. SALES TO JUDGE

2          That's true, Your Honor, but a majority of them is just, a lot of it, the first

3  packet was just to satisfy the Guerra factor for a fixed residence.  And the other one

4  was just my parole guidelines to assure that I do have safeguards set in place and just a

5  reassurance of that I will not abscond, Your Honor, if I was granted bond.

6  JUDGE TO MR. SALES

7          Right.  But my point is --

8  MR. SALES TO JUDGE

9          And that's pretty much it.

10  JUDGE TO MR. SALES

11          My point, Mr. Sales, is I've never seen your parole guidelines and I have

12  several more cases to do.  So I think it's in everybody's best interest that instead of me

13  doing a decision without reading the documents you gave me that I read the

14  documents.  I think everybody's better if I do that.  So that's all I'm suggesting.

15  MR. SALES TO JUDGE

16          Okay.  I respect that, Your Honor.

17  JUDGE TO MR. SALES

18          All right.

19  MR. PRICE TO JUDGE

20          Your Honor, may I ask him if he's received, if he has a copy of --

21  JUDGE TO MR. PRICE

22          Go ahead.

23  MR. PRICE TO JUDGE

24          Thank you, Your Honor.

25  JUDGE TO MR. PRICE

A029-556-125                           22                    December 11, 2015

1          Well, he's been previously served with them.

2  MR. PRICE TO MR. SALES

3          Sir, I have your conviction document and your probation report.  Do you

4  have that in your possession?

5  MR. SALES TO MR. PRICE

6          I don't have that with me but I'm pretty familiar with it so if you have any

7  questions I'd be more than willing to answer.

8  MR. PRICE TO MR. SALES

9          Have you received it in the past?

10  MR. SALES TO MR. PRICE

11          Yes I have.

12  MR. PRICE TO MR. SALES

13          And do you have the April 2015 bond decision from Judge Murry?

14  MR. SALES TO MR. PRICE

15          Yes I, yes I do.  Is it dated April 15th or April 28th?

16  MR. PRICE TO MR. SALES

17          April 28, 2015.

18  MR. SALES TO MR. PRICE

19          April 28th?

20  MR. PRICE TO MR. SALES

21          Yes.

22  MR. SALES TO MR. PRICE

23          Yes I do.  I already -- four pages?

24  MR. PRICE TO MR. SALES

25          Yes.  Four pages.

1   MR. SALES TO MR. PRICE

2           Yes.  Yes I have it.

3   MR. PRICE TO JUDGE

4           And, Your Honor, [indiscernible].

5   JUDGE TO MR. PRICE

6           All right.  Let's make the --

7   MR. PRICE TO JUDGE

8           They may have been previously --

9   JUDGE TO MR. PRICE

10          I understand.

11  MR. PRICE TO JUDGE

12          In the previous Rodriguez bond hearing.

13  JUDGE FOR THE RECORD

14          We'll make the conviction documents BB-3 and we'll make the April 28,

15  2015 decision BB-4.

16  JUDGE TO MR. PRICE

17          Anything else, Government?

18  MR. PRICE TO JUDGE

19          No, Your Honor.  Thank you.

20  JUDGE TO MR. SALES

21          Anything else, Mr. Sales?

22  MR. SALES TO JUDGE

23          Yes please, Your Honor.  Is it possible for the people who are here to

24  support, [indiscernible] for the record to identify themselves, Your Honor?

25  JUDGE TO MR. SALES

1          Absolutely.  That would be absolutely fine.

2  JUDGE TO MS. YUVI

3          Are you able to tell me who's here?

4  MS. YUVI TO JUDGE

5          Yes.  His parents are here.  I know they would like to testify.  His dad.

6  JUDGE TO MS. YUVI

7          Okay.

8  MS. YUVI TO JUDGE

9          I have people from the Asian Support Group.  He has a bunch of friends

10 who want to speak on his behalf.

11 JUDGE TO MS. YUVI

12         Okay.

13 JUDGE TO MR. SALES

14         Mr. Sales, if you want to have other people testify today I'm not going to

15 be able to finish the case today.  I'm going to have to put it over for a later date because

16 we've got several other cases we have to do.  Do you want me to schedule you for

17 another date so that these witnesses can testify?

18 MR. SALES TO JUDGE

19         I ask --

20 MS. YUVI TO JUDGE

21         Well, he has his family.  They drove here from San Diego.

22 MR. SALES TO JUDGE

23         San Diego, Your Honor.

24 JUDGE TO MR. SALES

25         They can testify telephonically if need be if you want me to have them

A029-556-125                          25                          December 11, 2015

1   testify. It's up to you all. I don't mind having them testify. I just can't do it today. They

2   don't need to come back.

3   MR. SALES TO JUDGE

4           Oh.

5   JUDGE TO MR. SALES

6           They can testify by telephone. That's perfectly fine.

7   MR. SALES TO MS. YUVI

8           Michelle, the question's more for them. I would like for them to.

9   JUDGE TO MS. YUVI

10          I can't guarantee that, ma'am.

11  MR. SALES TO MS. YUVI

12          Michelle, ask them if they're willing to do that because I think it be more for

13  them to answer than me. I would for them to but ultimately I think they have the final

14· say-so on that.

15  JUDGE TO MS. YUVI

16          That's a good idea and please make sure they understand they don't have

17  to drive back here. They can testify telephonically. Do you want to talk to them about

18  that? Go right back there and talk to them.

19  JUDGE FOR THE RECORD

20          We're off the record for a minute.

21                          (OFF THE RECORD)

22                          (ON THE RECORD)

23  JUDGE FOR THE RECORD

24          All right. Respondent would like a continuance to put on additional

25  witnesses. Let's put it over to 14 December, 1:00 p.m.

1  JUDGE TO MR. SALES

2           Anything else today, Mr. Sales?

3  MR. PRICE TO JUDGE

4           Did you say next Monday, Your Honor, or next Friday?

5  JUDGE TO MR. PRICE

6           No.  No.  No.  Next Friday.  I'm sorry.

7  MR. PRICE TO JUDGE

8           That the 18th.

9  JUDGE TO MR. PRICE

10          18th. I'm awfully sorry.

11  JUDGE TO MR. SALES

12          Anything else, Mr. Sales, today?

13  MR. SALES TO JUDGE

14          I just asked this Court, Your Honor, just for clarification on the record that

15  I'm not the principal in my crime, that I was convicted as an aider and abettor

16  [indiscernible] under California statute of the law.  Just for the record, Your Honor.  And

17  please take into consideration the safeguards, Your Honor.  To me, Your Honor,

18  personally, they're solid foolproof safeguards that I will not abscond, Your Honor.  I don't

19  know how else to put it because ultimately in the end if I do I'm going back to prison and

20  that's the last thing that I want for myself, for my family, or for anyone else for that

21  matter who's supported me throughout all these years.  Just I just wanted to reiterate

22  that, Your Honor.

23  JUDGE TO MR. SALES

24          Okay.  And actually I should tell you I should be able to at least give you a

25  summary decision when you come back next time, because I'll have a window to read

1   the documents and then I'll only have to consider the testimony.  So I should be able to

2   do that.

3   JUDGE TO MR. PRICE

4            Anything, Government?

5   MR. PRICE TO JUDGE

6            No, Your Honor.  Thank you.

7   JUDGE FOR THE RECORD

8            Put it over.  Hearing concluded.

9                      <u>HEARING CONTINUED</u>

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                    File: A029-556-125


CORNELIUS DELA CRUZ SALES          )
                                   )        IN BOND PROCEEDINGS
                                   )
    RESPONDENT                     )        Transcript of Hearing


Before ANTHONY S. MURRY, Immigration Judge


Date: December 18, 2015                  Place: SAN FRANCISCO, CALIFORNIA


Transcribed by DEPOSITION SERVICES, Inc.-2


Official Interpreter:


Language:


Appearances:

  For the Respondent: ANUP PRASAD

  For the DHS: ELIZABETH GROSS

1   JUDGE FOR THE RECORD

2        This is Immigration Judge Anthony Murry, San Francisco, California. It's
3   December 18, 2015, continued Rodriguez bond proceedings.  Respondent appearing
4   by VTC from Sacramento, California.  Anup Prasad, Esquire, who is present has
5   entered an appearance for, at least for these proceedings today.  Elizabeth Gross,
6   Assistant Chief Counsel, here on behalf of the Government.  All right.  We ran out of
7   time last time.  The respondent indicated there were additional witnesses he wanted to
8   present and Mr. Prasad has submitted a brief.  Let's make that BB-5 and there are
9   support documents as well.

10  JUDGE TO MR. PRASAD

11       Okay.  And Mr. Prasad, are there other witnesses that are available?

12  MR. PRASAD TO JUDGE

13       Well, sort of.  We need to run through who's in here and see if we actually
14  needed them to testify.

15  JUDGE TO MR. PRASAD

16       That'd be fine.

17  MR. PRASAD TO JUDGE

18       So I have one quick question.  This is my first sort of second Rodriguez
19  hearing.  Are the documents and testimony from the first Rodriguez hearing a part of the
20  record at this time?

21  JUDGE TO MR. PRASAD

22       Well —

23  MR. PRASAD TO JUDGE

24       I know there's a transcript.  I don't know if we can just make that part of
25  the record so we don't have to testify to everything over again.

1   JUDGE TO MR. PRASAD

2              Is there a transcript?

3   MR. PRASAD TO JUDGE

4              Or, I have a transcript if the Court doesn't so.

5   JUDGE TO MR. PRASAD

6              Oh, you do?

7   MR. PRASAD TO JUDGE

8              There was an appeal.

9   JUDGE TO MR. PRASAD

10             Because what probably happened, you know what I think the situation is

11  the original Rodriguez hearing is a file unto itself.

12  MR. PRASAD TO JUDGE

13             Okay.

14  JUDGE TO MR. PRASAD

15             This is a brand new file.

16  MR. PRASAD TO JUDGE

17             Well, okay.

18  JUDGE TO MR. PRASAD

19             Which does not incorporate the prior.  We may have it somewhere but --

20  MR. PRASAD TO JUDGE

21             Okay.  So should I resubmit everything else today from the first Rodriguez

22  hearing again?

23  JUDGE TO MR. PRASAD

24             Probably.

25  MR. PRASAD TO JUDGE

1          Okay. I don't have copies of everything so I would need to make copies.

2   JUDGE TO MR. PRASAD

3          I mean, we can do it. We need to do it today in terms of --

4   MR. PRASAD TO JUDGE

5          Okay. That's fine.

6   JUDGE TO MR. PRASAD

7          -- whenever.

8   MR. PRASAD TO JUDGE

9          Okay.

10  JUDGE TO MR. PRASAD

11         And then just submit them later.

12  MR. PRASAD TO JUDGE

13         I just procedurally wasn't sure there wasn't a file. Okay.

14  JUDGE TO MR. PRASAD

15         Yes.

16  MR. PRASAD TO JUDGE

17         Okay. So the packet of documents that I submitted today I sort of want to

18  run through different factors. I think the issue is whether or not he's a flight risk. And so

19  I just want to sort of run through some things. I know last time we discussed that since

20  the last hearing he had gotten a stay, an appointment of counsel.

21  JUDGE TO MR. PRASAD

22         Yes.

23  MR. PRASAD TO JUDGE

24         Given the Ninth Circuit's docket we're probably looking at two years --

25  JUDGE TO MR. PRASAD

1          Yes.

2  MR. PRASAD TO JUDGE

3          -- plus for briefing and for a decision to get issued.  So we are a looking at

4  a lengthy period of detention.  And then so at Tab B is a report from the DHS Officer

5  Inspector General talking about the effectiveness of the ISAP program.  It found that in

6  2012 the program was 95 percent effective at preventing people from absconding.  I

7  know the Court does not have the procedural mechanism to order ISAP.  But to the

8  extent we're considering alternatives to detention if the Court feels like some

9  combination of ISAP plus bond plus other restrictions would mitigate the flight risks, we

10  could go back to ERO and see if he's amenable for inclusion in the ISAP program as

11  part of a bond decision from the Court and then come back to you.  If the Court feels

12  like ISAP isn't going to be effective then, you know, then it doesn't matter.  But if the

13  Court does feel like ISAP could be effective then we can do that.  I don't know how else

14  to sort of implement Rodriguez --

15  JUDGE TO MR. PRASAD

16          Right.

17  MR. PRASAD TO JUDGE

18          -- where it says about alternatives.  The second issue I wanted to discuss

19  was he's on what's called high-controlled paroled with State of California.

20  JUDGE TO MR. PRASAD

21          Okay.

22  MR. PRASAD TO JUDGE

23          Which [indiscernible] leading indeterminate sentences in the state of

24  California [indiscernible] high control.  So it's a more frequent level of check-in with

25  parole officers, a greater overall supervision.  It also isn't clear, and we're trying to get

1  an answer on this.  It appears that people who have former gang affiliation like Mr.

2  Sales are also required to be on an ankle monitor as part of that parole program.  So it

3  might be independent of ISAP that CDCR is going to put an ankle bracelet on him.  At

4  Tab C is a report from CDCR on the effectiveness of the parole program.  And if you

5  look at the statistics it shows that people on high-control parole, people being paroled

6  from indeterminate sentences, are five times more likely to comply with the terms of

7  parole.

8  JUDGE TO MR. PRASAD

9              Yes.

10  MR. PRASAD TO JUDGE

11              Also in there there's a discussion of what they call CPAT, California Parole

12  Apprehension Teams, which focus on locating and arresting individuals who violate the

13  terms of their parole, prioritizing people with serious offenses like Mr. Sales.

14  JUDGE TO MR. PRASAD

15              Yes.

16  MR. PRASAD TO JUDGE

17              Also, I want to note that CDCR works closely with ICE through the criminal

18  alien program.  There are ICE officers who work with specifically California Parole.  So if

19  he were to violate parole or if ICE were informed the two agencies are going to

20  cooperate.  They're not impacted by the Trust Act or local detainer policies.  So it's quite

21  likely that if Mr. Sales were to abscond somewhere between the State of California and

22  the Department of Homeland Security, given his conviction --

23  JUDGE TO MR. PRASAD

24              Yes.

25  MR. PRASAD TO JUDGE

1    -- that they're going to be deploying a lot of resources looking for him.  Mr.

2    Sales is aware of this.  He's also been aware of for some time the possibility that he is

3    going to end up getting deported.  He has spoken to his family about what would

4    happen if he gets deported.  There's a declaration from his father at Tab A and his

5    father is via telephone and he lives in San Diego and he's prepared to testify right now.

6    But basically his father states is that he's now 75 years old and he's a disabled Vietnam

7    War Veteran.

8    JUDGE TO MR. PRASAD

9         Yes.

10   MR. PRASAD TO JUDGE

11        He is in poor health.  He hasn't seen his son in 20 years outside of prison

12   visits.  He hasn't seen him at all in the last year because he hasn't been able to visit him

13   in Immigration detention.  Basically what his father says is that he's talked to his son

14   and that they would rather be able to spend some time together in the Philippines rather

15   than having him abscond, inevitably get arrested, return to state prison, and not be able

16   to sort of spend time together outside of a correctional setting.  And that, you know, that

17   is their plan.  Mr. Sales has sort of anticipated the likelihood that his appeal may get

18   denied and he will get deported.  So at the last tab is his plans if he does get deported

19   to the Philippines.

20   JUDGE TO MR. PRASAD

21        Yes.

22   MR. PRASAD TO JUDGE

23        He has applied for a job in his hometown in the Philippines and received a

24   job offer as an optician.  That's the work he was trained to do when he was in state

25   prison, making eyeglasses.  He also has contacted the government there.  He got a

1  letter from the police chief of his town saying there won't be any issues with him

2  returning even with his conviction and they're looking to support him. Also, a letter from

3  the mayor and other family members in the town basically showing that he has a place

4  to live. He doesn't have any fear of return to the Philippines.

5  JUDGE TO MR. PRASAD

6              Right. He said that.

7  MR. PRASAD TO JUDGE

8              And so it's not that he's returning to a place that is hostile or impossible for

9  him to live in. Given, you know, the choices between returning to state prison possibly

10 for another life sentence if he violates parole versus going to the Philippines and being

11 free and being able to see his family he would rather comply with the deportation order.

12 Finally, in terms of his parole plans, if there are specific things that the Court thinks

13 would mitigate the flight risk, particularly whether or not he's going to need an ankle

14 bracelet or released to a residential program as opposed to released to his home, we're

15 happy to work with his parole officer and adjust his parts of the parole plan and come

16 back to court.

17 JUDGE TO MR. PRASAD

18             Has anybody filed a motion with the Ninth Circuit to have his appeal at the

19 Ninth Circuit, his petition for review, adjudicated in an expedited manner?

20 MR. PRASAD TO JUDGE

21             I understand all detained cases are adjudicated in an expedited manner.

22 JUDGE TO MR. PRASAD

23             Well, more expedited manner.

24 MR. PRASAD TO JUDGE

25             I --

1  JUDGE TO MR. PRASAD

2          Because he says he's looking at a year, a year and a half, two years.

3  MR. PRASAD TO JUDGE

4          Right.  And I think that's the normal time on a detained Ninth Circuit

5  appeal.  I'm not representing him at the Ninth Circuit.  His motion for pro bono counsel

6  was granted but they haven't appointed him an attorney yet.

7  JUDGE TO MR. PRASAD

8          Right.

9  MR. PRASAD TO JUDGE

10         So I'm not sure, I guess, I guess the Government can file that.

11  JUDGE TO MR. PRASAD

12         Because at this point the holdup is the Ninth Circuit.

13  MR. PRASAD TO JUDGE

14         Right.

15  JUDGE TO MR. PRASAD

16         The Executive Branch has done everything it can do.

17  MR. PRASAD TO JUDGE

18         Right.

19  JUDGE TO MR. PRASAD

20         And so I just wondered if anybody had gone to the Ninth Circuit and said,

21  you know, this means detention is being prolonged.

22  MR. PRASAD TO JUDGE

23         Yes.

24  JUDGE TO MR. PRASAD

25         Well, and the answer is of course not.

1  MR. PRASAD TO JUDGE

2          Right.

3  JUDGE TO MR. PRASAD

4          Nobody's filed a class action saying the Ninth Circuit you have to do

5  something because these people's detention is being prolonged when the Executive

6  Branch has done everything that it can do.  And so really what he's driving and what

7  you're driving at is that despite the finding by the Superior Court that he was responsible

8  for the death of another human being, despite the finding by me and by the BIA that he's

9  subject to deportation, he should have a comfortable period where he can associate

10  with his family his petition for review is being adjudicated?

11  MR. PRASAD TO JUDGE

12          Well, I'm not sure if it's -- well, I mean, I guess what Rodriguez said is that

13  he's entitled to a bond hearing, not necessarily entitled to release.

14  JUDGE TO MR. PRASAD

15          Right.

16  MR. PRASAD TO JUDGE

17          What I'm saying is he should be released not because he's entitled to a

18  comfortable period but he should be released if he doesn't either pose a threat to public

19  safety or a flight risk and if we can mitigate those two things.  Now I think if the issue is

20  he's a threat to public safety I agree, ISAP and monetary bond don't address those

21  issues.  And if the issue is threat to public safety we can discuss that.  But my

22  understanding was the principle issue was flight risk.  And I think flight risk, some

23  combination of parole conditions, ISAP monetary bond together has proven effective

24  individually in mitigating flight risk and together I think in this case some combination

25  could work to mitigate his flight risk.

1  JUDGE TO MR. PRASAD

2          I understand.  Hang on for just one second. I just want to ask you an

3  academic question.  Do you agree with me, you don't have to, do you agree with me

4  that what Rodriguez does is create a substantive due process right for people such as

5  the respondent to be at liberty in the United States absent a justification by the

6  Government?

7  MR. PRASAD TO JUDGE

8          So my understanding of Rodriguez is they sidestep the Constitutional

9  question.  Right?  And just said we're going to avoid the Constitutional question and just

10 say, you know, detention switches to 236(a).

11 JUDGE TO MR. PRASAD

12         But, see, here's the thing.  This is why I ask the question.  Because they

13 sidestep, the Constitutional question that they sidestep as I understand it, I think what

14 they're really saying is that 236 says pending a decision on whether the alien is to be

15 removed accept as provided in subsection (c) the Attorney General may.  He

16 [indiscernible] in subsection (c).  So you would think, looking at 236(a) since it says

17 accept as provided in subsection (c) the Attorney General may release, you would think

18 he was subject to mandatory detention pending a decision on whether he was to be

19 removed.  So the argument, as I understand it, is because it would take a long period of

20 time to avoid declaring that unconstitutional they created this business about shifts to

21 236(a).

22 MR. PRASAD TO JUDGE

23         Yes.

24 JUDGE TO MR. PRASAD

25         I'm asking a different question.  Don't, you can say yes, no, or I don't want

A029-556-125                          38                      December 18, 2015

1  to get involved in this.  Okay?  It seems to be that there's a different Constitutional

2  issue.  That the underpinning is that under <u>Casas</u> and <u>Diop</u> and <u>Rodriguez</u> the default is

3  that the alien is at liberty.  And so that they're saying that there's a substantive right

4  somewhere in the due process clause for an alien, whether it's a criminal alien or a

5  person who entered without inspection, there's a substantive due process right for that

6  person to be at liberty in the United States unless the Government explains why it's

7  taking his liberty away.  That's the Constitutional issue I just was curious about but you

8  can move off that.

9  MR. PRASAD TO JUDGE

10           Yes.  I think I do recall seeing in a briefing citations of case law that liberty

11  is the default under generally American law.  I don't recall what the citations are.

12  JUDGE TO MR. PRASAD

13           Well, to use that phrase, you know, freedom is the norm or liberty is the

14  norm.  But I think that was in the context of persons who are citizens because liberty

15  certainly is the norm with respect to citizens.  But see, a person, this is not his situation,

16  but a person who enters the United States without inspection, as I always understood,

17  had no fundamental Constitutional right to be at liberty in the United States because

18  they're walking here illegally.  They had no Constitutional right.  They had a right to

19  process in determining whether they entered without inspection as opposed to being a

20  citizen or being a green card holder.  And they had a right to a review of that decision

21  and so but they had no fundamental substantive right to be at liberty in this country.

22  The green card, under the definition of what a lawful permanent resident is, is valid so

23  long as the green card holder does not violate the terms of the green card, one of which

24  is that you don't do things like get involved in homicides.  So then the question becomes

25  does even a person who has a green card but committed a deportable offense does he

1  have a substantive due process right to be at liberty in this country?  It's kind of

2  academic.  I just was kind of curious because you're a thoughtful person and I'm just

3  kind of curious about it.

4  MR. PRASAD TO JUDGE

5           I don't know [indiscernible] thought about that.

6  JUDGE TO MR. PRASAD

7           It's academic.

8  JUDGE TO MS. GROSS

9           Ms. Gross has been waiting patiently.  She wants to say something.

10  MS. GROSS TO JUDGE

11           Just that from reading your prior decision on the bond hearing --

12  JUDGE TO MS. GROSS

13           Okay.

14  MS. GROSS TO JUDGE

15           It seems like you didn't reach the danger issue.  You just, because you

16  just found that he was a flight risk.  So Counsel is arguing all these things about flight

17  but I think danger is still an issue.

18  JUDGE TO MS. GROSS

19           But --

20  MS. GROSS TO JUDGE

21           I don't know.

22  JUDGE TO MS. GROSS

23           What I say about that is, I mean, my preference would be to look at the

24  flight again.  If I need, if we need to talk about danger I think we need to, I mean, we're

25  going to need a whole hearing about that.

1  MS. GROSS TO JUDGE

2          Okay.

3  JUDGE TO MS. GROSS

4          Because he's going to want to talk about the rehabilitation.  He talked

5  about that to some degree.  The rehabilitation programs, what he's done, passage of

6  time, he's going to talk about all those things.  But we'd have to develop that record.

7  MS. GROSS TO JUDGE

8          Okay.

9  JUDGE TO MS. GROSS

10          So my inclination would be, I mean, let me look at this.

11  MR. PRASAD TO JUDGE

12          Okay.  And then I think we need to recreate --

13  JUDGE TO MR. PRASAD

14          Right.

15  MR. PRASAD TO JUDGE

16          -- the prior bond proceedings.

17  JUDGE TO MR. PRASAD

18          I think that's the best thing to do because otherwise I think that other file is

19  sort of a separate case and it's over and done and if it doesn't get recreated it's not

20  going, it won't be physically in anybody's possession.  It's somewhere the Record

21  Center.  So, yes, I think we're going to have to do that.

22  MR. PRASAD TO JUDGE

23          Okay.  And in terms of testimony, so Mr. Sales would be testifying about

24  his plans post-denial of an appeal.

25  JUDGE TO MR. PRASAD

1        Yes.

2   MR. PRASAD TO JUDGE

3        As would his father.  Should we go ahead and take that testimony today?

4   JUDGE TO MR. PRASAD

5        If you want to put that on --

6   MR. PRASAD TO JUDGE

7        Okay.

8   JUDGE TO MR. PRASAD

9        -- I'm happy to hear that.

10  MR. PRASAD TO JUDGE

11       Yes.  Sure.

12  JUDGE TO MR. PRASAD

13       Okay.  Did you want to start with him or?

14  MR. PRASAD TO JUDGE

15       Yes.  Sure.  Actually, first, can I just have people in the court identify

16  themselves for the record?

17  JUDGE TO MR. PRASAD

18       Absolutely.  Please.

19  MS. YUVI TO JUDGE

20       Hi.  I'm Michelle Yuvi (phonetic sp.).  I'm John's wife.

21  JUDGE FOR THE RECORD

22       Respondent's wife.

23  MS. SOLIN TO JUDGE

24       I'm Gilda Frances Solin (phonetic sp.), his aunt.  His aunt.

25  JUDGE FOR THE RECORD

1          Respondent's aunt.

2  MR. GUERRERO TO JUDGE

3          Tito Guerrero (phonetic sp.).  Friend.

4  MR. BANAFASIO TO JUDGE

5          I'm Quin Banafasio (phonetic sp.), a good friend from Alameda.

6  JUDGE TO MR. BANAFASIO

7          Thanks, Mr. Banafasio.

8  JUDGE FOR THE RECORD

9          Okay.  So Tito Guerrero and Mr. Banafasio, two friends of the respondent

10  are present here today.

11  MR. PRASAD TO JUDGE

12          Okay.

13  JUDGE FOR THE RECORD

14          As well as wife and aunt.

15  JUDGE TO MR. SALES

16          Mr. Sales, you're still under oath.  We're going to take some testimony

17  from you.

18  MR. SALES TO JUDGE

19          Okay, Your Honor.

20  MR. PRASAD TO MR. SALES

21          Q.     Can you hear us okay?

22          A.     Yes I can.

23          Q.     Okay.  Great.  Quickly, Mr. Banafasio is here.  Can you just briefly

24  explain who he is and your relationship to him?

25          A.     Yes.  When I was in prison Mr. Banafasio he was my accountability

A029-556-125                          43                          December 18, 2015

1   partner.  He was willing, he is willing, to assist me in any way as far as assurances in

2   meeting any obligations with any agency or any guidelines as far as parole and for

3   anything for that matter.  He's one of those where, you know, as a friend he'll be there to

4   guide, made sure that I don't, if I take a step it's going to be forward and not back

5   backwards, Mr. Prasad.

6           Q.      Okay.  Now, I understand that you are currently on parole with the

7   State of California.  Is that correct?

8           A.      Correct.

9           Q.      Could you explain a little bit about what your parole plan looks like

10  and what your obligations are?

11          A.      As far as the parole I will be [indiscernible] control and there are

12  frequent visits by the parole officers, unannounced visits at that, check-ins, drug testing,

13  mandatory AA, and it's even possible that I might be on ankle bracelet, ankle

14  monitoring.  It's unclear but those guidelines, those what I need to follow as far as that is

15  to me personally would be a safeguard to comply.

16          Q.      Okay.  Are you aware of what the potential consequences are for

17  you violating parole?

18          A.      Yes I do.  Yes I am.

19          Q.      What are those consequences?

20          A.      I could be sent back to prison potentially and possibly for life, again.

21          Q.      Okay.  And now, in the even that your appeal is denied and you're

22  ordered deported what are your plans?

23          A.      If I'm ordered deported in the Philippines I have a place to stay.  I

24  have numerous, tons of support from the community over there, from all walks of life,

25  from the police chief to the mayor to the social welfare department.  I've got pastors who

1  are willing to assist me in any way.  Moral support, financial employment, residential.

2  So if in the even that I am deported it wouldn't be an issue for me.  I would be okay in

3  the Philippines so.

4          Q.      Okay.  Now I have some questions about your parents.  How old

5  are your parents?

6          A.      75 and 74.

7          Q.      Okay.  And when is the last time you saw them?

8          A.      When I was still in state prison well over a year ago.

9          Q.      Okay.  And how is the health of each of your parents?

10         A.      My father he's having eye issues.  He has, he's diabetic and he

11  also, he has high blood pressure.

12         Q.      Okay.  And does your mother have any medical or health issues?

13         A.      I believe my mother just went to go see the eye doctor yesterday.

14  She had a stroke before and she's had an aneurysm.

15         Q.      Okay.  Do you know if the health of your parents is good enough to

16  allow them to travel to the Philippines?

17         A.      Yes.  They're, I would say yes.

18         Q.      Okay.

19         A.      That they are willing to go visit me frequently over there, every now

20  on occasion.

21         Q.      Okay.

22         A.      To maintain the family ties.

23         Q.      Okay.  And how has your relationship with your parents since you

24  were incarcerated when you were 18?

25         A.      It's 19.  We try to stay in contact but the distance is an issue.  They

1  went from Stockton to San Diego which makes visiting even more difficult, on top of the

2  whole visiting in itself.  I haven't seen them since I've been here.  I've been here for 15

3  months.  And coming from San Diego all the way RCCC in Elk Grove is obviously an

4  issue.  They're elderly so driving is another issue.  And all I want is, you know, to

5  redevelop this relationship and I want the relationship not behind plexi-glass or in the

6  visiting room where I'm being scrutinized, and just the opportunity to spend time with my

7  family is all I ask for.

8             Q.     How do you feel about the toll that your incarceration has taken on

9  them?

10            A.     I feel bad because to this very day, I mean, I might be out of prison

11  but they're still suffering and at the end of the day it's all because of what I did and it's

12  my past that's continued to take a toll on them.

13            Q.     Okay.  Finally, do you have employment or know how you'll support

14  yourself in the Philippines?

15            A.     Yes.  I have a job offer as an optician and my uncle, my uncle has

16  land over there and we can do the farming business if I wanted to.  So I do have

17  options.  It's not like I'll go there with no, no place to live, no employment, no support

18  network, none.  I actually have, I'm blessed and fortunate that I do have support in the

19  Philippines if I am ordered deported.  So I would do that optician thing to support myself

20  so.

21  MR. PRASAD TO JUDGE

22            Nothing further.

23  JUDGE TO MS. GROSS

24            Government, any questions for this witness?

25  MS. GROSS TO JUDGE

1          No, Your Honor.

2   JUDGE TO MR. PRASAD

3          Somebody else came in if he wants to identify?

4   MR. DERASARIO TO JUDGE

5          Do I just say my name?

6   JUDGE TO MR. DERASARIO

7          Yes.  Absolutely.

8   MR. DERASARIO TO JUDGE

9          Oh.  It's, I'm John's cousin, Rolly Derasario (phonetic sp.).

10  JUDGE TO MR. DERASARIO

11         Thank you, sir.

12  JUDGE TO MS. GROSS

13         Okay.  And you said no questions, Ms. Gross?

14  MS. GROSS TO JUDGE

15         No questions.

16  JUDGE TO MS. GROSS

17         Okay.

18  JUDGE TO MR. PRASAD

19         So we've got his father that you're going to call or --

20  MR. PRASAD TO JUDGE

21         So there's a declaration from his father basically on what he's going to

22  testify.  I don't know if we can just sort of take that as a proffer.

23  JUDGE TO MR. PRASAD

24         I don't mind.

25  JUDGE TO MS. GROSS

1          Do you think you have any questions for his father?

2   MS. GROSS TO JUDGE

3          No.

4   MR. PRASAD TO JUDGE

5          Okay.  That's fine.

6   JUDGE TO MR. PRASAD

7          We can take that Mr. Prasad.

8   MR. PRASAD TO JUDGE

9          Okay.

10  JUDGE TO MR. PRASAD

11         Okay.  Well, first thing I need to do is read this then you want to recreate

12  the record.

13  MR. PRASAD TO JUDGE

14         Right.

15  JUDGE TO MR. PRASAD

16         I'll just carry it as a reserved decision for now.

17  MR. PRASAD TO JUDGE

18         Okay.  And, I mean, if there's specific things that we can amend about the

19  parole program or ISAP and we sort of know what those are we can reach out to CDCR

20  and change the parole program to a residential release or residential in-house program

21  or ankle bracelet.

22  JUDGE TO MR. PRASAD

23         I'll be sure to take a look at that.

24  MR. PRASAD TO JUDGE

25         Okay.

1  JUDGE TO MR. PRASAD

2          You've got the parole --

3  MR. PRASAD TO JUDGE

4          Yes.  The parole plan is in there.

5  JUDGE TO MR. PRASAD

6          -- conditions and then the parole plan in there?

7  MR. PRASAD TO JUDGE

8          Yes.

9  JUDGE TO MR. PRASAD

10         Yes.  I saw that.  Okay.  Good.  We'll carry this to a reserved decision for

11  now.  Just get me the recreated documents as soon as you can.

12  MR. PRASAD TO JUDGE

13         Okay.

14  JUDGE TO MR. PRASAD

15         So I can then mark them as exhibits and if we need to reach out to you all

16  for more we will.

17  MR. PRASAD TO JUDGE

18         Okay, Your Honor.

19  JUDGE TO MR. PRASAD

20         Okay.

21  MR. PRASAD TO JUDGE

22         Thank you.

23  JUDGE TO MR. PRASAD

24         Thank you.

25  JUDGE TO MR. SALES

1          Thank you, Mr. Sales.

2    MR. SALES TO JUDGE

3          Okay.  Thank you, Your Honor.

4    JUDGE FOR THE RECORD

5          All right.  Hearing concluded.

6                          <u>HEARING CLOSED</u>

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE ANTHONY S.

MURRY, in the matter of:

CORNELIUS DELA CRUZ SALES

A029-556-125

SAN FRANCISCO, CALIFORNIA

was held as herein appears, and that this is the original transcript thereof for the file of

the Executive Office for Immigration Review.

*Emily Joan Austin*

_____

EMILY JOAN AUSTIN

DEPOSITION SERVICES, Inc.-2

February 12, 2016
_____

(Completion Date)

**XIII.    ORDER OF THE IMMIGRATION JUDGE BOND DENIAL 12-23-2015.**



U.S. DEPARTMENT OF EXECUTIVE OFFICE
FOR IMMIGRATION REVIEW
IMMIGRATION COURT
630 SANSOME STREET, SUITE 475
SAN FRANCISCO, CA   94111

FILE: *A 029 556 125*

IN THE MATTER OF:

*Cornelio Sales*

RESPONDENT

IN REMOVAL PROCEEDINGS

## ORDER OF THE IMMIGRATION JUDGE
## WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of respondent
pursuant to 8 CFR 236.1(c), and full consideration having been given to the
representations of the Department of Homeland Security and the respondent,
it is hereby

__X__  ORDERED that the request for a change in custody status be denied.

__X__  ORDERED that the respondent is ordered detained without bond.

_____  No jurisdiction pursuant to 236 of the Act.

_____  ORDERED that the request be granted and that respondent be:

　　_____  released from custody under bond of $_____

_____  OTHER　_____

_____

Copy of this decision has been served on the respondent and the
Department of Homeland Security.

APPEAL:   waived -- reserved (A) / I / B) Due by: __1/22/16__

SAN FRANCISCO -- SAN FRANCISCO, CALIFORNIA

Date: __12/23/15__

Anthony S. Murry
Immigration Judge

XS

XIV.    **BOND MEMORANDUM DATED JANUARY 29, 2016.**

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
100 MONTGOMERY ST., SUITE 800
SAN FRANCISCO, CA  94104

SALES, CORNELIUS DELA CRUZ
CUSTODY OFFICER
630 SANSOME ST., 6TH FLOOR
SAN FRANCISCO, CA  94111

Date: Jan 29, 2016

File A029-556-125

In the Matter of:
SALES, CORNELIUS DELA CRUZ

_____ Attached is a copy of the written decision of the Immigration Judge.
This decision is final unless an appeal is taken to the Board of
Immigration Appeals.  The enclosed copies of FORM EOIR 26,
Notice of Appeal, and FORM EOIR 27, Notice of Entry as Attorney or
Representative, properly executed, must be filed with the Board of
Immigration Appeals on or before _____.
The appeal must be accompanied by proof of paid fee ($110.00).

_____ Enclosed is a copy of the oral decision.

_____ Enclosed is a transcript of the testimony of record.

_____ You are granted until _____ to submit a brief
to this office in support of your appeal.

_____ Opposing counsel is granted until _____ to submit a
brief in opposition to the appeal.

__X__ Enclosed is a copy of the order/decision of the Immigration Judge.
                                    Bond Memo

All papers filed with the Court shall be accompanied by proof
of service upon opposing counsel.

Sincerely,

NMC

Immigration Court Clerk                    UL

cc: GROSS, ELIZABETH A.
    100 MONTGOMERY ST., SUITE 200
    SAN FRANCISCO, CA  94104

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**SAN FRANCISCO, CALIFORNIA**

| | | |
|---|---|---|
| Matter of | ) | Date: January 29, 2015 |
| | ) | |
| **Cornelius Sales,** | ) | File Number:  A 029 556 125 |
| | ) | |
| Respondent | ) | In Bond Proceedings |
| | ) | |
| | ) | **MEMORANDUM** |

The respondent, a citizen of the Philippines, was convicted in 1995 for second degree murder, that is, the unlawful and violent cessation of the life of another human being.  He was placed in removal proceedings after almost twenty years in prison.  He sought release on bond in March 2015 pursuant to *Rodriguez v. Robbins*, 715 F. 3d 1127 (9th Cir. 2013).  His motion for bond was denied by this court.  The April 28, 2015 bond memorandum is incorporated by reference, including its conclusions regarding the justification for respondent's detention.

The BIA dismissed subsequently respondent's bond appeal.  The BIA also dismissed his appeal of this court's denial of his motion to terminate and affirmed this court's order of removal.  Respondent has now renewed his request for bond, pursuant to *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

In his most recent bond application, respondent points to the fact that he has filed a petition for review with the Court of Appeals for the Ninth Circuit and that court has granted a stay of removal.  This fact is insignificant, because even though an applicant for a stay must make is "a strong showing that he is likely to succeed on the merits," according to the Ninth Circuit, this does not mean that the applicant must show he is likely to succeed on the merits. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).  As a result, and unsurprisingly, although stays are supposed to be "an extraordinary remedy that should not be granted in the ordinary case," in the Ninth Circuit they are in fact "'granted quite frequently.'" *Nken v. Holder*, 556 U.S. 418, 437 (Kennedy, J. concurring).

The only legal question in respondent's case, in reality, is whether the Ninth Circuit is obligated to follow the Supreme Court's decision in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) regarding the scope of aiding and abetting culpability, and of course, it is so obligated. *See, e.g. Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).

Respondent also says that he will report for removal because he has already secured a place to live in the Philippines, he has employment waiting for him, and he has made arrangements for his family to spend time with him in his home country.  But it is hard to understand, and frankly not very believable, that respondent would prefer to remain incarcerated

at a DHS correction facility while he litigates his removal order rather than live what he describes as a comfortable life in the Philippines.   To the extent he is concerned that the Ninth Circuit may delay adjudication of his case for "two or three years" (Brief In Support of Custody Redetermination, p. 1) the remedy which is consistent with both his interests and the public interest is to ask the Ninth Circuit to expedite consideration of the narrow legal issue presented by his petition for review.

Respondent further asserts that if he absconds from a removal order he may be arrested by the State of California for violating his parole.   But it is not clear that if respondent simply does not report for removal the State of California will get involved, and by no means certain that state parole authorities in California will cooperate with DHS at all.   This court has no authority to order an ankle bracelet for the respondent, although such a condition would, in the court's view, be both insufficient to assure his appearance and improper in light of the gravity of respondent's criminal history.

What respondent's position comes down to is a belief that, despite having been found culpable for the murder of a human being, and despite having been ordered removed, he should be allowed to live in comfort with his family and friends I the United States while his case is reviewed.   But respondent's position undermines the very important public interest in the effective enforcement of the immigration laws.   As the Supreme Court has said, the "basic purpose" for detention of aliens ordered removed is "assuring the alien's presence at the moment of removal."   *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).   In addition, "[t]here is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and "permit[s] and prolong[s] a continuing violation of United States law. . . . Postponing justifiable deportation (in the hope that the alien's status will change . . . or simply with the object of extending the alien's unlawful stay) is often the principal object of resistance to a deportation proceeding."   *Nken, supra*, at 436, (citations and internal quotation marks omitted).

The respondent's motion for release on bond or other conditions of release is denied.


**Anthony S. Murry**
**Immigration Judge**

**XV.   COPY OF BIA BRIEF DATED MARCH 7, 2016.**

CORNELIO SALES                                    **DETAINED**
1739 A SAPLING COURT
CONCORD, CA. 94519
209-981-7435
**PRO SE**

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

In the Matter of:                    ) Date: March 7, 2016
                                     )
CORNELIO SALES                       ) File No. : A-029-556-125
                                     )
In Bond Proceedings                  )
                                     )
                                     )
_____      )

RESPONDENTS BRIEF ON APPEAL FOR BOND ELIGIBILITY

## I.  SUMMARY OF ISSUES

1. On October 28, 2015 the ninth circuit court of appeals affirmed the permanent injunction under *Rodriguez II* and at the same time clarified the procedural requirements Immigration Judges (IJ) must follow for prolonged detention to ensure due process rights. The IJ clearly did not treat respondent as a class member in a Rodriguez bond hearing nor did he follow the procedural requirements for prolonged detention clearly set forth in this permanent injunction. Rodriguez v. Robbins, 804 F. 3d 1060 (9th Cir. 2015). Respondent's due process rights were violated at his hearing and in the bond memorandum for multiple reasons:

   a)  Respondent's motion was denied to be present at his bond hearing.
   b)  Respondent was not given a neutral forum to contest his continued detention.
   c)  The IJ was only interested in information pertaining to a change of circumstance in respondent's removal proceedings that would warrant bond.
   d)  The IJ did not allow testimony from witness' supporting a release on bond.
   e)  The government was not held accountable to bear the burden justifying respondent's current danger or flight risk.
   f)  There was no individualized assessment in respondents case
   g)  The IJ made personal comments in regards to his belief of what respondent feels he deserves.
   h)  The IJ erred when he did not make a decision at the conclusion of the hearing. Instead, a reserved decision by the IJ days later resulted in a denial with no explanation until an appeal was filed with the BIA.

2. The IJ erred in disregarding respondent's granted stay of removal by stating it as being insignificant. Respondent's granted stay of removal was based on serious legal questions regarding his removal order warranting further review from a merits panel. If this stay of removal had been denied, respondent would not be facing continued prolonged detention and respondent would not be entitled to *Rodriguez* bond hearings at six month intervals to challenge his continued detention.

3. The IJ's only reason to deny bond is based on his personal opinion that respondent has no chance of relief from removal and is not based on current danger or flight risk. The Ninth Circuit clearly explains that a denial based on these factors alone is too speculative and too dependent upon the merits of the respondent's claims and should not be considered on a release from prolonged detention. The IJ continues to disregard that *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) introduced the "realistic probability" standard and that respondent has successfully established a stay of removal. The Ninth Circuit has inherited authority to review respondent's claims through a petition of review and the IJ's interpretation of the law regarding respondent's removal proceedings is not appropriate when considering bond in this type of hearing.

4. The IJ erred in suggesting that the remedy which is consistent with both the respondent's interests and the public is to ask the Ninth Circuit to expedite proceedings. The clear remedy is to conduct a continued prolonged detention hearing pursuant to *Rodriguez v. Robbins*, 804 F. 3d 1060 (9ᵗʰ Cir. 2015) as a *neutral decision maker*, where the burden of