proof is on the DHS to establish clear and convincing evidence that prolonged detention is justified.

5. The IJ erred when he disregarded the alternatives to detention suggested by respondent guaranteeing he will not abscond from a final removal order. The IJ erred when stating he cannot order ankle monitoring for respondent when *Rodriguez* clearly states IJ's should already be considering alternatives to detention.

6. The IJ erred when citing *Zadvydas v. Davis*, 533 U.S 678, 699 (2001) to justify his denial. Respondent is not subject to a final order of removal because as long as a non-citizen's removal order is stayed by a court pending judicial review, that non-citizen is not subject to "the court's final order." (*Rodriguez, id.* at 49, 50)

## II.   STATEMENT OF FACTS

Respondent, Cornelio Sales Jr. is a thirty-nine year old legal permanent resident; he was born in the Philippines but has resided legally in the United States since the age of five as a military dependent. In 1995, respondent, still in high school was convicted as an aider and abettor under the *natural and probable consequence doctrine* of second degree murder in California for violation of Cal. Penal Code Section 187, and was sent to prison.  The State Governor approved respondent's parole grant and was given a release date on September 18, 2014, respondent was immediately transferred to DHS custody where he remains today.

Respondent has been detained for eighteen months and has been denied bond twice by the same Immigration Judge (IJ) who presided over his removal proceedings. On September 17, 2015 the BIA affirmed respondent's first bond denial and the following day, respondent was granted a stay of removal from the Ninth Circuit Court of Appeals. (See Exhibit 1- Stay of removal granted and order appointing pro bono legal counsel for petition of review).

Based on this change of circumstance, respondent filed a motion requesting a second bond hearing. On October 23, 2015 respondent was denied this hearing for two reasons. 1.) Respondent was not entitled to a *second* bond hearing. 2.) Even if respondent was granted a second bond hearing, he did not demonstrate materially changed circumstances, and the fact that a stay of removal was granted no way ameliorate the risk of flight, as discussed in detail in the

prior bond memorandum or the BIA decision on appeal. (See Exhibit 2- Motion for bond hearing denied

On October 28th 2015, the Ninth Circuit affirmed the permanent injunction in *Rodriguez II* (*Rodriguez v. Robbins*, 804 F. 3d 1060 (9th Cir. 2015)) and further held that the government must provide periodic bond hearings every six months for non-citizens to challenge their continued detention and that IJ's must consider the length of detention for class members detained longer than twelve months. (*Rodriguez, Id.* at 3) The Court also affirmed that these bond hearings require IJ's to consider alternatives to detention because it is presumed, that IJ's are already doing so when determining whether to release a non-citizen on bond. (*Rodriguez, Id.* at 24 -25). Respondent filed another motion and was granted a second bond hearing but was denied an in person hearing and would be subject to representing himself pro se via video conference.

On December 11, 2015 respondent appeared pro se via video conference for a second prolonged detention bond hearing. Although unable to appear in person, respondent filled up the court room with many family and friends as well as representatives from the Asian Law Caucus and the Asian prisoners support committee in support of a release on bond. At this hearing, much time was spent on technical difficulties with the fax machine. The IJ was not receptive to any other evidence other than a change of circumstances in respondent's removal proceedings. (Respondent has not received the requested transcripts from his hearing) Respondent attempted to satisfy this requirement with his granted motion to stay and pro bono counsel, but the IJ found that insignificant. The IJ allowed respondent's wife to testify but again was only interested in a change of circumstance and made it clear that he didn't want a legal battle in his courtroom as he "interpreted the law differently." Respondent's wife pointed out all of the people in support of

her husband who would like to testify but the IJ "did not have time" to go over everyone's testimony. He recommended a continuance to the following week in which respondent agreed to with the advice of attorney Anoop Prasad who was there in support of a release for the respondent. Mr. Prasad offered to represent respondent in his next hearing because of the disturbing interaction between the IJ and the respondent.

On December 18th 2015, Mr. Prasad appeared on behalf of respondent to point out that respondent would be subject to parole conditions which would guarantee that respondent would not be a flight risk. It was also made clear that respondent is not afraid to go back to his country and has a support system in place in the Philippines ensuring that he would not abscond from a final removal order. The IJ had a discussion with Mr. Prasad in regards to his belief that it is the Ninth Circuit that should expedite proceedings rather than respondent be released on bond. The IJ set a reserved decision to go over the documents and on December 23rd respondent was denied bond with no explanation.

Respondent respectfully asks this court to now consider granting bond in light of the stay of removal in place. Pro bono counsel has been appointed to the respondent through Orrick, Herrington & Sutcliffe LLP. (See Exhibit 3 – Ninth Circuit appointment order)

Respondent has already provided many years' worth of certificates in education, rehabilitation and self-help programs that has earned him a second chance and a release from prison. He has psychological evaluations dating back to 2007 deeming him a low risk of future violence. The IJ has already said he did not find respondent a danger but continues to deny bond without justification.

### III.   RESPONDENT'S DUE PROCESS RIGHTS WERE VIOLATED AT HIS HEARING

Under the permanent injunction, the government must provide any class member who is

subject to "prolonged detention"—six months or more—with a bond hearing before an

Immigration Judge ("IJ"). At that hearing, the government must prove by clear and convincing

evidence that the detainee is a flight risk or a danger to the community to justify the denial of

bond. (*Rodriguez, id.* at 6). To evaluate whether the government has met its burden, the IJ is

instructed to consider factors set forth in *In re Guerra*, 24 I & N Dec. 37, 14 (BIA 2006)

The IJ did not treat respondent as a class member nor did he ever hold the government

accountable to justify continued detention. This violates respondent's due process because due

process requires the IJ to consider the relevant evidence, see *Larita-Martinez v. I.N.S.*, 220 F.3d

1092, 1095 (9th Cir. 2000). Pursuant to the "'law of the circuit' rule," "a published decision

constitutes binding authority which 'must be followed unless and until overruled by a body

competent to do so.'" *Gonzalez*, 677 F.3d at 389 n.4 (quoting *Hart v. Massanari*, 266 F.3d 1155,

1170 (9th Cir. 2001)) (*Rodriguez, id.* at 37).

The IJ erroneously placed the burden upon himself to justify continued detention. The

burden does not fall upon the IJ; he is to be a neutral fact finder and should only consider

evidence when rendering a decision in a bond hearing. Due process requires 'adequate

procedures to review their cases, allowing persons once subject to detention to show through

rehabilitation, new appreciation of their responsibilities, or under other standards, they no longer

present special risks of danger if put at large. *Zadvydas v Davis* , 533 U.S. 678, 721 (2001).

Respondent's fifth amendment due process rights were violated when the IJ restricted his

rights to represent himself pro se by not allowing him to introduce evidence as afforded by the

constitution, *Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1162 (9th Cir. 2005), *Ibarra-Flares v.

Gonzales*, 439 F.3d 614, 620-21 (9th Cir. 2006) (internal quotation omitted). "Because aliens

appearing pro se often lack the legal knowledge to navigate their way successfully through the

morass of immigration law, it is critical that the IJ's 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Agyman v. INS,* 296 F.3d 871, 877 (9th Cir. 2002) (quoting *Jacinto v. INS,* 208 F.3d 725, 733 (9th Cir. 2000)). The IJ's obligation is founded on his statutory duty to "administer oaths, receive evidence, and interrogate, examine and cross examine the alien and any witnesses." 8 U.S.C.A § 1229 a(b)(1).

Respondent's bond hearing lacked a personal interview, and a genuine opportunity to contest his continued detention. There was never an individualized assessment and all evidence provided in support of a release was disregarded by the IJ. The Government attorney never opposed a release on bond because the fact is the IJ was only interested in hearing a change of circumstance. The IJ abused his authority by forming a personal opinion where his own feelings towards the respondent's criminal history absent in the record any current danger or risk of flight justified his denial of bond.

## A. Respondent's constitutional rights to due process were violated when his motion to be present at his bond hearing was denied.

On December 11, 2015, a generous amount of time was spent on technical difficulties, specifically faxing documents back and forth from the court to the respondent. The time spent on numerous failed attempts to fax documents could have been easily avoided had the respondent been granted to be physically present to represent himself pro se. As a result:

1. Respondent was prevented from reasonably presenting his case due to the fact that he was unable to present evidence due to the IJ's claims that he didn't have time. As mentioned above, technical difficulties took away time from witness testimony. Thus, prejudicing respondent during his prolonged detention hearing.

2. Respondent was unable to review key documents during the video-conference and failed attempts to fax documents were not received. This is clearly a violation of

respondent's rights to a fair hearing guaranteed by § 1229  a(b)(4)(B). *Id.* at 532-
33(""[T]here is no need to invoke the constitution when the immigration statute itself
guarantees a fair hearing."". Further, as noted by the Fourth Circuit in *Rusu v. I.N.S.,*
296 F 3d. 316, 322 (4th Cir. 2002), video conferencing "may render it difficult for a
fact finder in adjudicative proceedings to make credibility determinations and to
gauge demeanor," and may thereby violate due process.

3.  Respondent as well as his witnesses were unable to testify largely in part due to the
    IJ's claims that he did not have the time. This degree of interference with
    respondent's full and fair representation of his case caused by the video-conference,
    and the degree of prejudice suffered by respondent is clearly a violation of
    respondent's constitutional rights to due process.

4.  The IJ violated respondent's due process rights when he did not allow responding
    who is proceeding pro se, "an opportunity to present testimony and other evidence in
    support of the application..." *Almaghzar v. Gonzales,* 457 F.3d 915, 921 (9th Cir.
    2006). ("Where an alien is given a full and fair opportunity to be represented by
    counsel, to prepare an application for ...relief, and to present testimony and other
    evidence in support of the application, he or she has been provided with due
    process.") *supra.* Clearly this was not the case during respondent's hearing.

### B. Respondent's constitutional rights to due process were violated when he was not given the time to allow Witnesses' present to testify on his behalf

On December 11, 2015, the IJ attempted to conclude the hearing until respondent's wife
spoke up about the witness testimony. During bond hearings, witnesses, supporting documents,
etc. are allowed as evidence to support release on bond. The IJ stated that he "did not have the
time" to hear testimonies from the respondent's witnesses. (Transcripts requested by the

respondent are yet to be received) For the record, respondent's elderly parents, who drove 8-9

hours to be present and to provide supporting testimony, were denied an opportunity to testify.

The IJ as a resolution continued the hearing on December 18, 2015, and for those who are able to

return may do so to provide testimony at that time. Respondent's parents and other family

members were unable to return the following week as they live in Southern California. This is

clearly a violation of due process rights by not allowing respondent to present evidence during

his bond hearing in support of a release.

**C. The Immigration Judge erred when he denied bond without stating a reason**

...." At the conclusion of each bond hearing, the IJ "shall release each subclass member on

reasonable conditions of supervision, including electronic monitoring if necessary, unless the

government shows by clear and convincing evidence that continued detention is justified based

on his or her danger to the community or risk of flight."" (*Rodriguez* id. at 5) The decision to

deny bond without stating a reason is clearly erroneous which the IJ has now done at both of

respondents prolonged detention hearings. This is clearly an error because if respondent chooses

not to appeal, he would never know why he was denied bond. This is a clear violation of due

process because the IJ continues to disregard the instructions set forth in the permanent

injunction which entitles respondent to a release on bond unless the government can prove

otherwise.

**IV.    THE IMMIGRATION JUDGE'S BOND IN MEMORANDUM DOES NOT
COMPORT WITH DUE PROCESS AND DOES NOT FOLLOW THE
PROCEDURAL REQUIREMENTS THAT MUST BE FOLLOWED
UNDER THIS PERMANENT INJUNCTION**

The Ninth Circuit has clarified that the procedural requirements for a bond hearing are

bound by *Singh* which include proceedings before "a neutral IJ" at which "the government bears

the burden of proof by clear and convincing evidence that continued detention is necessary."

*Singh v. Holder*, 638 F.3d 1196, 1200 (9th Cir. 2011), (*Rodriguez, Id.* at 51)

Upon receiving the IJ's memorandum it becomes clear he didn't hold the government accountable in satisfying their burden of proof. The IJ clearly gives the impression that due to the fact that he ordered respondent removed, respondent no longer has any constitutional right to due process or the procedures set forth in *Rodriguez*. But respondent is a certified class member of *Rodriguez* and has established a stay of removal, the Ninth Circuit now retains jurisdiction over "constitutional claims or questions of law," 8 U.S.C.§ 1252(d), which includes the question whether a state crime of conviction is an aggravated felony. Removal and bond proceedings are two different hearings and should be conducted as such.

### A. Respondent's granted stay of removal is more than significant and warrants a release on bond

The Ninth Circuit granted a stay of removal and motion for pro bono counsel. The government's motion to deny the petition for lack of jurisdiction was denied, the order states, "… questions raised by this petition for review are sufficiently substantial to warrant further consideration by a merits panel."

The IJ states the stay of removal is insignificant because an applicant does not necessarily need to make a strong showing that he is likely to succeed on the merits to establish a stay. Clearly, the IJ personally believes there is no chance in succeeding on merits and does not want to release respondent. But the fact is that if this stay of removal had been denied, respondent would not be facing continued prolonged detention and respondent would not be entitled to *Rodriguez* bond hearings at six month intervals to challenge his continued detention. Clearly a granted stay of removal is the only reason respondent continues to face prolonged detention.

### B. There is no current danger or flight risk to justify denial of bond

The IJ's only reason to deny bond is based on his belief that respondent has no chance in succeeding on merits, and is not based on danger or flight. The Ninth Circuit clearly explains that a denial based on these factors alone is too speculative and too dependent upon the merits of the respondent's claims and should not be considered on a release from prolonged detention. Analyzing the likelihood of eventual removal is not appropriate during a bond hearing. (*Rodriguez* Id. at 55) IJ's must also be considering the length of past detention and the likeliness of continued future detention. (*Rodriguez* Id. at 56)

The IJ continues to disregard that *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007) introduced the "realistic probability" standard and that respondent has successfully established a stay of removal. The fact that *this* Judge ordered respondent removed and the BIA dismissed his case finding his argument "unpersuasive" does not mean he doesn't raise serious concerns and valid questions of law that the Ninth Circuit has Jurisdiction to review.

The IJ continues to use criminal history alone to deny bond although he does not find respondent to be a danger. This is conflicting, prejudicial and ambiguous that the IJ does not deem respondent a danger but yet continues to use the crime that is over 20 years to justify further detention. Clearly the IJ expresses his personal opinion when he states:

"... what respondent's position comes down to is a belief that, despite having been found culpable for the murder of a human being, and despite having been ordered removed, he should be allowed to live in comfort with his family and friends in the United States while his case is reviewed."

Respondent has served his sentence; he does not have any criminal charges currently against him. The IJ states he has been ordered removed but then acknowledges his case as being reviewed. Clearly the IJ personally feels respondent should be detained and is undeserving to live comfortably while his case is pending. This is clearly an abuse of authority where the IJ is overstepping his obligatory duties by continuing to form a personal opinion of respondent and

what he is entitled to. The IJ's personal belief that he does not think respondent has a chance in succeeding on merits is not supported by any case law where the facts of respondent's case are identical and warrants such opinion.

*Rodriguez* has already recognized that the government does not dispute that some subclass members will win relief from removal, further undermining any purported rationale for continued detention. This permanent injunction is necessary to ensure that individuals whom the government cannot prove constitute a flight risk or danger is not needlessly detained.

The Ninth Circuit has also recognized that they do not defer to the BIA's interpretation of state or federal criminal statutes, because the BIA does not administer such statutes or have any special expertise regarding their meaning. *See Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1126 n.7 (9th Cir. 2006).

## C. The Immigration Judge erred when stating he cannot order ankle monitoring for respondent

The IJ erred when he stated he cannot order ankle monitoring when *Rodriguez* clearly states that IJ's should already be considering alternatives to detention (*Rodriguez, Id.* at 24 -25). IJs are instructed to "release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government" satisfied its burden of justifying continued detention. 715 F.3d at 1131 (emphasis added). (*Rodriguez, Id.* at 52). Federal regulations authorize IJs to "detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released" and to "ameliorat[e] the conditions" of release imposed by DHS. 8 C.F.R. § 1236.1(d)(1). Accordingly, if DHS detains a noncitizen, an IJ is already empowered to "ameliorat[e] the conditions" by imposing a less restrictive means of supervision than detention. (*Rodriguez, Id.* at 53).

Furthermore, Congress authorized and funded an ICE alternatives-to-detention program in 2002, and DHS has operated such a program, called the Intensive Supervision and Appearance Program, since 2004. It is abundantly clear that IJs can and do consider conditions of release on bond when determining whether the government's interests can be served by detention only, and DHS will administer any such conditions, regardless of whether they are imposed by DHS in the first instance or by an IJ upon later review. ). (*Rodriguez, Id.* at 53,54).

Respondent will be subject to parole conditions set forth by the State of California. He will report immediately to his parole officer in Contra Costa County and must continue to report to his parole officer at any given time. Respondent understands the circumstances that any violation could result in being returned to custody with the California Department of Corrections and will be subject to having his life sentence reinstated. With that said, the incentive to appear if ordered removed is highly logical, respondent would much rather choose to report for removal and be free in a country he does not know, than go back to prison for violating his parole conditions. He still has a right to contest his removal order and that should not be a punishment subjected to civil detention if he is not a danger to the community. The IJ, again, disregards this fact by stating:

> ..."but it is not clear that if the respondent simply does not report for removal the State of California will get involved, and by no means certain that state parole authorities in California will cooperate with DHS at all. This court has no authority to order an ankle bracelet for the respondent, although such condition would, in the court's view, be both insufficient to assure his appearance and improper in light of the gravity of respondent's criminal history."

Again, The IJ's personal opinion abuses his authority in determining a release on an alternative to detention. The IJ continues to use a twenty year old state crime to deny bond even though respondent has lawfully contested his aggravated felony determination and has succeeded so far in such that he has received a granted stay of removal and pro bono counsel in his removal

proceedings. The IJ appears to feels so strongly that respondent should be deported but does have

trust in the immigration system or the state of California to enforce the law if respondent is

ordered removed. It seems unlikely that DHS would ignore such a removal order and California

would not cooperate because both the State and DHS worked together to ensure respondent was

picked up immediately after his release from prison on an ICE hold. Surely they would cooperate

and work together to ensure removal if respondent is ordered removed.

### D. The Immigration Judge erred when suggesting the remedy is to ask the Ninth Circuit to expedite his case

The IJ erred in suggesting that the remedy which is consistent with both the respondent's

interests and the public is to ask the Ninth Circuit to expedite his proceedings. The clear remedy

is to conduct a prolonged detention hearing pursuant to *Rodriguez v. Robbins*, 804 F. 3d 1060

(9th Cir. 2015) as a *neutral decision maker,* where the burden of proof is on the DHS to establish

clear and convincing evidence that prolonged detention is justified based on current danger or

flight risk. If this was the remedy as suggested by the IJ, clearly this permanent injunction would

not be in place and clearly IJ's would not be instructed to conduct these hearings at six month

intervals to consider the length of detention a detainee has already faced and is likely to continue

to endure while their case is pending.

The IJ is clearly in violation of not following adequate procedures in a prolonged

detention hearing. The Ninth Circuit has identified that the class members "clearly face

irreparable harm in the absence of this injunction" because "the deprivation of constitutional

rights unquestionably constitutes irreparable injury." This injunction safeguards constitutional

rights by ensuring that "individuals whom the government cannot prove constitute a flight risk or

a danger to public safety, and sometimes will not succeed in removing at all, are not needlessly

detained." Similarly, the balance of equities favors these class members because "needless

prolonged detention" imposes "major hardship," whereas the government "cannot suffer harm

from an injunction that merely ends an unlawful practice or reads a statute as required to avoid

constitutional concerns." Finally, the injunction is consistent with the public interest, which is

"implicated when a constitutional right has been violated," and "benefits from an injunction that

ensures that federal statutes are construed and implemented in a manner that avoids serious

constitutional questions." (*Rodriguez* id. at 18)

 In light of this permanent injunction it is clear that the remedy which is consistent with

both the interest of the respondent and the public is to release respondent on bond, it is the

burden of the government to justify further detention.

### E.  Respondent is not subject to a final order of removal

 The IJ erred when citing *Zadvydas v. Davis,* 533 U.S 678, 699 (2001) to justify denying

bond because respondent is not subject to a final order of removal and the government has

already failed to appeal this permanent injunction relying on *Zadvydas* and  *Demore.* (*Rodriguez*

id. at 19-20). *Rodriguez* makes it clear that no subclass member under this permanent injunction

is subject to a final order of removal. The IJ relies on *Zadvydas* to justify further detention in the

last paragraph of his memorandum. He states:

 ...."but respondent's position undermines the very important public interest in the
effective enforcement of the immigration laws. As the Supreme Court has said, the "basic
purpose" for detention of aliens ordered removed is "assuring the aliens presence at the moment
of removal." *Zadvydas v. Davis,* 533 U.S 678, 699 (2001). In addition, "there is always a public
interest in prompt execution of removal orders: The continued presence of an alien lawfully
deemed removable undermines the streamlined removal proceedings IIRIRA established, and
"permits and prolongs a continuing violation of United States law...
 "Postponing justifiable deportation (in the hope that an alien's status will change... or
simply with the object of extending the alien's unlawful stay) is often the principal object of
resistance to a deportation proceeding." *Nken, supra,* at 436, (citations and internal quotation
marks omitted).

The "basic purpose" for detention is to ensure the aliens presence, however respondent cannot be deported until his case is resolved. Respondent is not postponing justifiable deportation because his removal order is not final; respondent has not been "lawfully deemed removable".

In *Zadvydas,* the Supreme Court resolved statutory and due process challenges to indefinite detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period, where removal was not practicable..(*Rodriguez, Id.* at 10). However, as long as a non-citizen's removal order is stayed by a court pending judicial review, that non-citizen is not subject to "the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii)."If an alien has filed a petition for review with this court and received a judicial stay of removal, the 'removal period' under § 1231(a) does not begin until this court 'denies the petition and withdraws the stay of removal.'") (quoting *Prieto-Romero*, 534 F.3d at 1060) (*Rodriguez, Id.* at 49, 50

A certified class member of *Rodriguez* is defined as: all non-citizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified. Because the class is defined as non-citizens who are detained "pending completion of removal proceedings," it excludes any detainee subject to a final order of removal. (*Rodriguez, id.* at 8).

Following *Zadvydas*, the court defined detention as "prolonged" when "it has lasted six months and is expected to continue more than minimally beyond six months." Diouf II, 634 F.3d at 1092 n.13.7 At that point, "the private interests at stake are profound," and "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial." Id. at 1092. (*Rodriguez, Id.* at 32).

## V.    RESPONDENT HAS STRONG FAMILY TIES IN THE UNITED STATES THAT SUPPORT A RELEASE ON BOND

Respondent requests this court to take an individualized assessment of who he is and not base any denial or judgement on the California conviction alone because he has successfully established a stay of removal and has provided valid legal arguments making a strong showing he is likely to succeed on the merits of his case. It can be asserted that respondent will obey the law because he is subject to parole conditions guaranteeing he is not a flight risk, nor a danger to society. Respondent only wishes to be free from prolonged detention to reunite with his U.S Citizen wife, stepson, and the rest of his family. After twenty-one years of incarceration, more than half his life, he only wishes to acclimate to the free world and adjust to a new lifestyle with his family's support. Respondent urges this court to show some compassion and understanding that he has been institutionalized and will need some time and family support to adjust, especially in the event that he would be ordered removed and deported to a place he does not know.

Respondent has a fixed address with his wife and step son in Concord California. She has a successful career as an engineer in the wireless industry, born and raised in California whose father and grandfather both served in the U.S Navy. She would never allow anything to jeopardize her career or the safety of her son and can guarantee a place of residence for respondent where he will continue to report to his parole officer as required by the State of California. Respondent has a long history in the United States since coming here legally when he was five years old as a military dependent, and he continues to have very strong family ties, his parents, siblings, nieces and nephews all continue to reside in California as United States citizens and legal permanent residents. Respondent's Parents are senior citizens wishing to reunite with their son, and if given bond, plan to come to Concord California immediately to spend what time they have left with him.

## VI.    RESPONDENT'S BEHAVIOR WHILE IN CUSTODY

Respondent has been cooperative and respectful to all staff throughout his incarceration and since he has been detained at Rio Cosumnes Correctional Center in Elk Grove California. He has been helping other detainees who do not speak very good English in filing forms and educating them on the removal process and possible forms of relief. He has become a worker in his unit, helping with the cleaning duties, and has become the barber to the other detainees who need a haircut. Respondent keeps a positive attitude and outlook on his future and does not let his adversities affect his attitude and ultimate goal of starting a new life.

## VII.    CONCLUSION

For the foregoing reasons, the respondent respectfully requests this court to agree that an individualized bond hearing was not provided by a neutral decision maker pursuant to *Rodriguez v. Robbins*, 715 F. 3d 1127 (9th Cir. 2013), and that a heightened standard of proof that the respondent is a flight risk or danger was not supported by clear and convincing evidence from the government.

The Respondent asks this court to consider the evidence he has provided in support of a release under supervision by the State of California, and set a reasonable bond to allow him to reunite with his family while his case is pending in the Ninth Circuit.

Executed on: 7 of March, 2016                    Respectfully Submitted,

                                                 _____

                                                 Cornelio Sales
                                                 Respondent
                                                 **Pro Se**

**XVI.   COPY OF SUPPLEMENTAL BRIEF DATED APRIL 26, 2016.**

Respondent just received the transcripts from his December 11, 2016 & December 18, 2016, prolonged detention hearing on April 14, 2016. Please accept this as a supplemental to Respondent's brief on Bond Eligibility Appeal dated March 7, 2016.Upon review of the transcripts, Respondent requests a full review of the transcripts by the BIA and would like to point out key statements made by the Immigration Judge to assert and reiterate that he did not feel obligated to follow the *Rodriguez* permanent injunction, where the burden of proof is on the Government to establish flight risk or danger to justify prolonged detention.

## 1.   CHANGE OF CIRCUMSTANCES IN A PROLONGED DETENTION HEARING.

Respondent testified to the court his understanding as to the procedures of the *Rodriguez* bond hearing. During his testimony, the Immigration Judge (IJ) interrupted respondent to reiterate the he was only concerned about new factors in his case since the last bond hearing. See TRANSCRIPTS from Bond Hearing Dated December 11, 2016. Tr. @ 9. The IJ did not position himself as a neutral decision maker in which an individualized assessment is to be done to consider *current* flight risk and or danger to justify his continued detention. A change in circumstances to a respondent's removal proceedings should be irrelevant in a prolonged detention hearing and although respondent has identified a change in circumstances, it was disregarded by the IJ.

## 2.   RESPONDENT'S STAY OF REMOVAL

The IJ stated in regards to respondent's granted stay of removal, "I will tell you honestly that that's not a tremendously significant factor because the Ninth Circuit has a very expansive interpretation of [indiscernible] in my humble opinion, but I'll consider it." Tr. @ 10-12.

Having a stay granted considering the conviction the respondent is challenging in his petition for review *is* significant to say the least.

In considering stays, a court considers four factors:

- whether the stay applicant has made strong showing that he is likely to succeed on the merits;
- whether the applicant will be irreparably injured absent a stay;
- whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
- where the public interest lies." *Hilton V. Braunskill*, 481 U.S. 770, 776 (1987).

The first two factors of the traditional standard are the most critical. In *Nken v. Holder*, 556 U.S. 2009*)* "It is not enough that the chance of success on the merits be "better than negligible." *Sofinet v. INS*, 188 F.3d 703, 707 (CA7 1999) (internal quotation marks omitted). The Ninth Circuit has deemed in Respondent's Stay of removal order that "the questions raised on this appeal warrants a review by a merits panel" clearly indicates that the *Nken* factors, especially the first two critical factors were well considered in deciding as whether to issue or deny the motion for stay. Respondent argues that this is in fact significant when satisfying the IJ's concerns for new circumstances.

## 3. HARDSHIPS

The IJ stated during respondent's wife testimony, "Okay, Ma'am, I don't have any control over the conditions under which he's held." Tr. @ 14.

Clearly the IJ has complete control over the conditions the respondent continues to be subjected to. All pertinent and relevant factors clearly point to respondent being none other than an excellent bail risk which entitles the respondent to a reasonable bond. There is nothing on record to indicate that he is a poor bail risk other than the IJ's formed personal opinion as to what the respondent is and isn't entitled to given his aggravated felony determination by this court.

## 4. A DECISION WITHOUT REASON.

Respondent's wife attempted to recite *Rodriguez* in regards to a bond decision upon conclusion of this hearing, The IJ stated, "we issue a summary decision if the case is appealed we then prepare a bond memorandum that explains our decision." Tr. @ 15. In other words, respondent will never know the reasons for denial if he decides not to appeal. If the IJ never has to explain his reason for denial to the respondent at his hearing this is clearly a procedural error and a violation of due process to deny respondent bond without a reason. In any case, the respondent would be almost forced to file an appeal just to obtain the reasons behind his bond denial. This has occurred twice in both of respondent's prolonged detention hearings by the same IJ and in both bond memorandums there is no clear finding of danger or flight to justify continued detention. After full review of the transcripts it becomes clear that the IJ does not want to grant bond because he does not feel that the respondent should be allowed to live comfortably while his petition for review is pending in the Ninth Circuit Court.

## 5. NO CURRENT DANGER IF RELEASED ON BOND

The IJ stated in response to respondent's wife's testimony, "Keep in mind, ma'am, with respect to him being a responsible person and the guards trusting him and so forth, keep in mind I specifically did not make a finding that he currently posed a danger to the community." Tr. @ 18.

## 6. NO FLIGHT RISK OR DANGER TO JUSTIFY DENIAL

The IJ made it clear that he was not neutral during the hearing by placing his personal opinion before professional judicial duties as an Immigration Judge. The IJ made personal statements that were biased against the respondent and wanted the Respondent's attorney's personal opinion in regards to the *Rodriguez* order. He asks, "...despite the finding by me and the BIA that he's subject to deportation, he should have a comfortable period where he can associate with his family while his petition for review is being adjudicated?" This question is clearly personal and the IJ does not believe respondent should have a comfortable period despite this being "civil detention." It is not within the scope of his duties as an Immigration Judge to integrate personal beliefs when his obligatory duties are to weigh evidence and consider evidence that is introduced.

In response the respondent's attorney stated, "...*Rodriguez* said is that he's entitled to a bond hearing, not necessarily entitled to release." ..."What I'm saying is he should be released

not because he's entitled to a comfortable period but he should be released if he doesn't either pose a threat to public safety or flight risk and if we can mitigate those two things."

This statement countered the IJ's personal comments in regards to entitlement. This is another clear indication that the IJ was not neutral. During the hearing, the majority of the dialogue was between only the IJ, respondent, and at times with respondent's wife. There was no opposition implied by the government until the point in which the IJ had noticed that government representative had been waiting patiently. When the government tried to raise the issue about danger, the IJ stated that his preference would be to look at flight again. Clearly, danger was not of importance or of concern to the IJ during the prior decision as well as this hearing. Tr. @ 37-40.

## 7.  ALTERNATIVES TO DETENTION

During the hearing, respondent's attorney introduced evidence to mitigate flight risk. Respondent's attorney testified that ISAP in combination with parole supervision by California Department of Corrections and Rehabilitation (CDCR), possible ankle monitoring by CDCR, money bond, as well as California Parole and Apprehension Team (CPAT) would mitigate flight risk. Tr. @ 31-34..

The IJ's memorandum discusses his opinion in response to ISAP and other alternatives to detention, "Respondent further asserts that if he absconds from a removal order he may be arrested by the state of California for violating his parole. But it is not clear that if respondent simply does not report for removal the state of California will cooperate with DHS at all." See Memorandum denying bond dated January 29, 2015, page 2.

It is only logical to believe that given the respondent's crime, should he abscond, CDCR in conjunction with local and state authorities as well as ICE Fug Ops would definitely deploy resources to apprehend respondent. It is the IJ's personal opinion that there may be a lack of cooperation but that certainly does not justify a denial of bond, his freedom from civil detention.

## 8.  A MOTION TO HAVE RESPONDENT'S PETITION FOR REVIEW ADJUDICATED IN AN EXPEDITED MANNER.

The IJ does not want to use his authority to grant bond to detainees pending petition for review decisions with the Ninth Circuit Court. The IJ asks, "Has anybody filed a motion with the Ninth Circuit to have his appeal… adjudicated in an expedited manner?" Respondent's attorney responds, "I understand all detained cases are adjudicated in an expedited manner." And the IJ responds, "Well, more expedited manner… "Because at this point the holdup is the Ninth Circuit." …"The Executive Branch has done everything it can do." Tr. @ 35-37.

Clearly, a motion to expedite proceedings is not standard procedure for aliens facing prolonged detention. The ninth circuit granted *Rodriguez, a* permanent injunction, this *is* the solution the ninth circuit court has remedied for aliens clearly facing prolonged detention. The respondent here is a class member in this class action lawsuit, he has been entitled to these bond hearings at six month intervals so he can continue contesting his prolonged detention. The IJ continues to violate respondent's due process rights by not obliging to the permanent injunction in place. The IJ continues to interpret the law differently when justifying his denial of bond without holding the government accountable for justifiable evidence supporting continued detention.

**9.**   THE *GUERRA* FACTORS.

The IJ is not fully considering the positive factors that makes respondent an excellent bail risk. Respondent clearly has a lot of support for release on bond. Support from all walks of life that clearly mitigates flight risk and or danger. Professional and reputable organizations within the Immigration Community would not support anyone under any circumstances if they believed he would be a danger and or a flight risk.

In conclusion, respondent asserts that the IJ did not conduct a *Rodriguez* bond hearing where the government has the burden to justify continued detention. Respondent's due process rights were clearly violated by the IJ's formed personal opinion as to what respondent should be entitled to. The IJ's decision to deny bond is not supported by justifiable evidence provided by the government but rather a denial clearly based on his own feelings on releasing a detained alien that he has already determined removable as he disregarded any evidence the respondent attempted to introduce to mitigate any concerns of non-appearance.

Respondent has had two prolonged detention hearings since being detained on September 18, 2014, the length of detention in custody has been overlooked and the respondent respectfully requests that this court to consider this supplement in support of a release under supervision by the state of California, and set a reasonable bond at this level of review because a remand back to the same IJ will subject respondent to the same atmosphere of due process violations.

Executed on:                                        Respectfully Submitted,

                                                          _____

                                                          Cornelio Sales
                                                          Respondent
                                                          **Pro Se**

RESPONDENT'S SUPPLEMENTAL TO BRIEF ON APPEAL FOR BOND ELIGBILITY                    A029-556-125

XVII.    BIA DISMISSAL DATED MAY 20, 2016.



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 22041

SALES, CORNELIUS DELA CRUZ
0/A029-556-125
RIO COSUMNES CORRECTIONAL CTR
16500 BRUCEVILLE ROAD
ELK GROVE, CA 95757

DHS/ICE Office of Chief Counsel - SFR
P.O. Box 26449
San Francisco, CA 94126-6449

Name: SALES, CORNELIUS DELA CRUZ          A 029-556-125

Date of this notice: 5/20/2016

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Greer, Anne J.

schwarzA
Userteam: Docket

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A029 556 125 – San Francisco, CA

Date:   **MAY 2 0 2016**

In re:  CORNELIUS DELA CRUZ <u>SALES</u>

IN BOND PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT:  Pro se

APPLICATION:  Redetermination of custody status

　

The respondent appeals an Immigration Judge's December 23, 2015, order, as explained in a memorandum dated January 29, 2016, denying his motion to redetermine his custody status. The appeal will be dismissed.

The respondent challenges the Immigration Judge's determination that he is ineligible for release on bond because he is a flight risk. The respondent contends that his due process rights were violated because: (1) his motion to appear at his bond hearing was denied; (2) he was denied a neutral forum; (3) the Immigration Judge was solely interested in considering evidence establishing a change of circumstances in the status of his removal proceedings;[1] (4) the Immigration Judge did not permit witnesses to testify; (5) the Department of Homeland Security ("DHS") was not held accountable for bearing the burden of proving that he was a flight risk; (6) the Immigration Judge did not conduct an individual assessment of his bond eligibility; (7) the Immigration Judge expressed his personal view of what the respondent thought he deserved; and (8) the Immigration Judge did not issue a decision at the bond hearing.[2] The respondent also contends that the Immigration Judge did not sufficiently consider the factors mitigating his risk of flight.

---

[1] On October 22, 2015, the respondent had moved for a redetermination of his custody status based on a change in his circumstances since a prior bond hearing. At that time, the standard for granting a new hearing on bond was a showing by the movant that there had been a material change in circumstances since his or her last bond hearing. 8 C.F.R. § 1003.19(e). Since the respondent's motion asserted a change in circumstances, the Immigration Judge's October 23, 2015, memorandum denying the motion cites as the reason the lack of a showing of materially changed circumstances (I.J. October 23, 2015 memorandum). That decision is not before us, so we reject the respondent's argument regarding the Immigration Judge's focus on changed circumstances.

[2] The Immigration Judge stated at the close of the hearing that he wished to review documents submitted by the respondent during the hearing and would reserve his decision (tr. at 41, 48-49). The respondent's counsel did not object (tr. at 49).

A029 556 125

The Board reviews an Immigration Judge's findings of fact, including findings as to the credibility of testimony, under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review de novo questions of law, discretion, judgment, and all other issues in appeals from decisions of Immigration Judges. 8 C.F.R § 1003.1(d)(3)(ii).

The Immigration Judge conducted the respondent's bond hearing pursuant to the Order, Judgment and Permanent Injunction issued in *Rodriguez v. Holder*, No. 2:07-CV-03239, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *appeal docketed*, No. 13-56706 (9th Cir. Oct. 1, 2013); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1089 (9th Cir. 2015) (the government must conduct bond hearings every 6 months so that non-citizens may challenge their detention). To justify the denial of bond in a *Rodriguez* proceeding, the government must prove by clear and convincing evidence that an alien poses a danger to the community or is a flight risk. *Rodriguez v. Robbins*, 715 F.3d 1127, 1136-37 (9th Cir. 2013); *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir 2011) (standard of proof in prolonged-detention bond hearings conducted pursuant to section 236(a) of the Act is clear and convincing). An Immigration Judge has broad discretion to consider any matter he deems relevant when determining whether an alien's release on bond is permissible or advisable, and therefore a custody determination with a "reasonable foundation" will not be disturbed on appeal. *Matter of Guerra*, 24 I&N Dec. 37, 39-40 (BIA 2006).

The Immigration Judge concluded that the respondent was a flight risk primarily because he is subject to a final order of removal and lacks incentive to appear for deportation. (I.J. January 29, 2016, memorandum at 1, incorporating by reference IJ memorandum dated April 28, 2015). The Immigration Judge acknowledged that the respondent has a petition for review of his removal order pending before the Ninth Circuit Court of Appeals, which granted him a stay of removal pending adjudication of the petition. However, the Immigration Judge observed that the court's grant of a stay of removal is not conclusive evidence that the respondent will prevail in the petition (I.J. January 29, 2016, memorandum at 1).

In accordance with *Matter of Guerra*, the Immigration Judge considered that: the respondent was married and had a 14-year-old stepson; he had been in the United States since he was 5 years old; his parents are lawful permanent residents of the United States; he presented evidence of rehabilitation following his conviction for aiding and abetting a murder; a friend testified to his good character and agreed to provide him employment and housing if he was released; and the respondent asserted that he would report for removal because he has secured housing and employment in the Philippines and his United States family will visit him there (I.J. January 29, 2016, memorandum at 1; April 28, 2015, memorandum at 1-2). The Immigration Judge also noted that the respondent did not own any property, had no assets, was subject to a final order of removal, and the narrow legal issue presented in the respondent's petition for review had already been decided in a Ninth Circuit precedential decision (I.J. January 29, 2016, memorandum at 1-2; April 28, 2015, memorandum at 1-2). *See Matter of Guerra, supra*, at 40 (listing some factors that an Immigration Judge may consider in making a determination under section 236(a) of the Act whether a bond movant is a danger to society or a flight risk).

Following our de novo review, we conclude that the Immigration Judge's flight risk determination has a reasonable foundation, and we decline to disturb it. *Matter of Guerra, supra*, at 39. Contrary to the respondent's argument, the Immigration Judge conducted an individual assessment and acknowledged the equities indicating that he would appear for

2

A029 556 125

removal. However, the unfavorable factors, including the respondent's speculative and limited opportunity for relief from removal, indicate a lesser motivation to appear for removal (I.J. January 29, 2016, memorandum at 1-2; I.J. April 28, 2015, memorandum at 1-3). *Id.*; *cf. Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987) ("A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who would, based on a criminal record or otherwise, has less potential of being granted such relief.").

Moreover, the respondent has not explained how he was prejudiced by his appearance at the December 18, 2015, hearing via video conference rather than in person. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 2000) (to prevail in a violation of due process claim, a respondent must show error and prejudice). Similarly, there is no indication in the record that witnesses were prevented from testifying (Tr. at 14-19 [testimony of respondent's wife]; tr. at 24 [the Immigration Judge explains that the respondent's parents need not appear in person and can testify telephonically; tr. at 26 [respondent's wife says other witnesses want to testify and Immigration Judge grants continuance for the respondent to present witnesses]; tr. at 29 [at continued hearing Immigration Judge asks if witnesses are available and respondent's counsel states that he needs to determine if the witnesses testimony is necessary]; tr. at 42 [Immigration Judge states he would be happy to hear the father's testimony]; tr. at 47-48 [respondent's counsel states that his father's declaration can be a proffer of evidence rather than calling the father to testify telephonically]).

As to the respondent's arguments regarding his right to a neutral forum, following our *de novo* review we conclude that the record reflects a hearing conducted with respect for the respondent and an unfettered opportunity for him to present his case. We do not see that the Immigration Judge exhibited a predetermination to decide the case either in favor of or against the respondent's eligibility for bond. The Immigration Judge, in his memorandum prepared following completion of the hearing, expressed his opinion as to the respondent's motivation for seeking release from custody (I.J. January 29, 2016 memorandum at 2). However, the Immigration Judge's views in that regard do not detract from the outcome of the decision, which properly represents the application of controlling law to the facts of the respondent's case. *See Rodriguez v. Robbins*, *supra*; *Singh v. Holder*, *supra*; *Matter of Guerra*, *supra*; *Matter of Andrade*, *supra*. We do not find unreasonable the Immigration Judge's determination that the evidence is clear and convincing that the respondent poses a flight risk. *Matter of Guerra*, *supra*.

We are unpersuaded by the respondent's appellate arguments and decline to disturb the Immigration Judge's decision. Consequently, we will dismiss the appeal.

Accordingly, the following order will be entered.

ORDER: The respondent's appeal is dismissed.

FOR THE BOARD

3

**CERTIFICATE OF SERVICE**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CORNELIO DE LA CRUZ SALES,
Plaintiff,
v.
JEH CHARLES JOHNSON, et al.,
Defendants.

Case No. 16-cv-01745-EDL

On 7/18/2016, I SERVED a true and correct copy(ies) of the attached order, by
placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by
depositing said envelope in the U.S. Mail.

1.  California Attorney General's Office
    California Department of Justice
    P.O. Box 944255
    Sacramento, Ca. 94244-2550

2.  The Honorable Jeh Johnson
    Secretary of Homeland Security
    Washington, D.C. 20528

3.  Michael Vaughn
    Sacramento Field Office Director
    651 I Street
    Sacramento, Ca. 95814

4.  Loretta Lynch
    Attorney General of The United States
    U.S. Department of Justice
    450 Pennsylvania Avenue NW
    Washington, D.C. 20530

5.  Scott Jones
    Sheriff of Sacramento County Sheriff's Department & Correctional Center
    711 G Street
    Sacramento, Ca. 95814

Signature _____        Date  7-18-16