CORNELIO DE LA CRUZ SALES, J.R.
C/O MICHELLE HEALEY
1739-A SAPLING COURT
CONCORD, CA 94519
**PRO SE**

**FILED**

SEP 21 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

CORNELIO SALES,

      Petitioner,

Vs.

JEH CHARLES JOHNSON, Secretary,
United States Department of Homeland
Security, et al.,

      Respondents

CASE NO.   3:16-cv-01745 EDL

Agency No. A-029-556-125

**PETITIONER'S TRAVERSE TO**
**RESPONDENTS RESPONSE OF**
**AN ORDER TO SHOW CAUSE AND**
**MOTION TO DIMISS**

## PETITIONER'S TRAVERSE TO RESPONDENT'S RESPONSE TO AN ORDER TO SHOW CAUSE AND MOTION TO DISMISS

    By this Traverse, petitioner Cornelio Sales responds to the respondent's response to the order to show cause and the motion to dismiss.

    Petitioner re-alleges and incorporates by reference each of the allegations contained in the petition for writ of habeas corpus dated April 6, 2016 and in the supplemental to the petition of writ of habeas corpus on July 18, 2016, together with the exhibits in each of those documents.

## INTRODUCTION

    The respondent claims that this court does not have the authority or jurisdiction to review petitioner's writ of habeas corpus. However, this respective Court has already assumed jurisdiction of this matter as stated on the June 16, 2016 order to show cause "directing respondent to file with this Court an answer showing cause why the writ of habeas should not be granted.

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

Petitioner respectfully asked this court to deny respondent's motion to dismiss for lack of jurisdiction and failure to make a claim because respondent failed to recognize *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) as the law of the circuit. The respondent identifies petitioner as a "post- order alien" whose detention reverted back to 8 U.S.C. §1226(a) but did not acknowledge his prolonged detention and the statute(s) governing his entitlement to release on bond along with the procedural safeguards set forth to ensure due process.

The respondents claim that petitioner fails to state a claim upon which relief can be granted is incorrect. Petitioner is challenging his aggravated felony determination by way of a categorical approach determination. The California statute in which he was convicted is overbroad where a jury did not need to find intent or knowledge in order to reach a conviction on an aiding and abetting theory by way of California's "Natural and Probable Consequences Doctrine." The overbroad statute does not categorically match the federal definition of petitioner's conviction therefore concluding that he is not removable. If his petition for review is granted, removal proceedings would be terminated, and petitioner will be allowed to remain in the United States as a legal permanent resident. *Rodriguez* has noted that of the § 1226(c) subclass members, such as petitioner here, who apply for relief from removal, roughly 40% are granted such relief, a rate even higher than that of the overall class's. *Rodriguez id.* at 34.

Petitioner is a subclass member of *Rodriguez*, the government does not dispute this, but clearly ignores the permanent injunction and continues to detain him because he has a "final order of removal." Petitioner's stay of removal entitles him to a release on bond if he is not a flight risk or a danger to the community. The Immigration Judge (IJ) has abused his authority as a neutral factfinder to deny bond on pure speculation that petitioner will not succeed on merits in his removal proceedings. Such review violates petitioner's due process in which the regulations require bond hearings to be "separate and apart" from the alien's removal proceedings. *Id.* § 1003.19(d)

## JURISDICTION

This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq. This Court has jurisdiction under 28 U.S.C. § 2241; Art. I, § 9, cl. 2 of the

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

United States Constitution (Suspension Clause) and 28 U.S.C. § 1331, as Petitioner is presently in custody under color of authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. This Court may grant relief pursuant to 28 U.S.C. § 2241, 5 U.S.C. § 702, and the All Writs Act, 28 U.S.C. §1651.

## STATUTORY FRAMEWORK

For the convenience of this Court, Petitioner is attaching the December 2015 ACLU advisory "Bond Hearings for Immigrants Subject to Prolonged Immigration Detention in the Ninth Circuit." (SEE EXHIBIT 1A-Traverse) This advisory outlines in detail the statutory framework in the most recent decision in *Rodriguez v. Robbins*, 804 F. 3d 1060 (9th Cir. 2015).

### I. Relevant statutes governing prolonged detention

Petitioner has summarized the relevant statutes analyzed in *Rodriguez* pertaining to his case for convenience on this Court. See *Rodriguez id.* at 10-20.This decision was not taken lightly as there are years of litigation on immigration detention and the constitutionality of prolonged detention in a civil context.

*Demore v. Kim* 538 U.S. 510 (2003) was a due process challenge to mandatory detention under 8 U.S.C § 1226(c). The Court affirmed that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings," *id.*at 526. Distinguishing *Zadvydas v. Davis,* 533 U.S. 678 (2001) the Court stressed that detention under § 1226(c) has "a definite termination point" and typically "lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.*at 529.

In *Tijani v. Willis*, 430 F.3d 1241 (9th Cir.2005), the court held that the constitutionality of detaining a lawful permanent resident under § 1226(c) for over 32 months was" doubtful." *Id.* at 1242. *Tijani's* habeas petition to the district court was remanded with directions to grant the writ unless the government provided a bond hearing before an IJ within sixty days.

*Casas-Castrillon v .Department of Homeland Security(Casas),* 535 F.3d942 (9th Cir. 2008) was a civil detention challenge in the immigration context involving a Legal Permanent resident like petitioner here. The court concluded that §1226(c)'s mandatory detention provision applies only during administrative removal proceedings—i.e. until the BIA affirms a removal order. *Id.* at 951. From that point until the circuit court has rejected the applicant's final petition for

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

review. The government has discretionary authority to detain the non-citizen pursuant to §
1226(a). *Id.* at 948. The court concluded that "the government may not detain a legal permanent
resident such as *Casas* for a prolonged period without providing him a neutral forum in which to
contest the necessity of his continued detention." *Id. at 94*

    *Singh v. Holder*, 638 F.3d 1196 (9th Cir.2011) clarified procedural requirements for bond
hearings pursuant to the *Casas* decision. The court held the substantial liberty interest at stake
requires due process and a contemporaneous record of *Casas* hearings, and that the government
bears the burden of proving "by clear and convincing evidence that an alien is a flight risk or a
danger to the community to justify denial of bond." *Id.*at 1203,1208. See also *Guerra*, 24 I. &N.
Dec. 37 (BIA2006).

    In *Diouf v. Napolitano (Diouf II)*, 634 F.3d 1081(9th Cir. 2011), the court extended the
procedural protections established is *Casas* to § 1231(a)(6). *Id.*at 1086. In *Rodriguez*, § 1231 is
removed as a class members because class members are non-citizens who are not subject to a final
order of removal *Diouf II* adopted the definition of prolonged detention as detention that "has
lasted six months and is expected to continue more than minimally beyond six months." *Id.* at
1092. The court reasoned the private interests at stake are profound and the risk of an erroneous
deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial. The
burden imposed on the government by requiring hearings at this stage of the proceedings is a
reasonable one.*Id.* at 1091–92.

    In *Rodriguez v. Robbins,* 715 F.3d1127 (9th Cir. 2013), the petitioner's represented a
certified class of non-citizens challenging their prolonged detention without any justification. The
Ninth Circuit applied the above precedents to class members detained under § 1226(c), which is
civil detention of non-citizens previously convicted of certain crimes who have already served
their state or federal periods of incarceration. The court concluded that "the prolonged detention of
an alien without an individualized determination of his dangerousness or flight risk would be
constitutionally doubtful." *Id.* at 951). The court found that the class members "clearly face
irreparable harm in the absence of the preliminary injunction" because "the deprivation of
constitutional rights unquestionably constitutes irreparable injury." *Id.* The preliminary injunction
safeguards constitutional rights by ensuring that "individuals whom the government cannot prove
constitute a flight risk or a danger to public safety, and sometimes will not succeed in removing at

Page 4 of 14

all, are not needlessly detained." *Id.* at 1145. The balance of equities favored the class members because "needless prolonged detention" imposes "major hardship, "whereas the government "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Id.* Finally, the preliminary injunction was consistent with the public interest, which is "implicated when a constitutional right has been violated, "and "benefits from a preliminary injunction that ensures that federal statutes are construed and implemented in a manner that avoids serious constitutional questions." *Id.*at 1146.

The government attempted to distinguish detainees being held who were awaiting their initial administrative proceedings to aliens such as petitioner who is seeking judicial review. This argument was rejected; the court found that it reflected "a distinction without a difference": Regardless of the stage of proceedings, the same important interest is at stake – freedom from prolonged detention."" *Id.* (Quoting *Diouf II,* 634 F 3d at 1087.)

The Ninth Circuit noted that their decision in *Rodriguez* is consistent with two other circuits who have addressed the prolonged detention issue. See *Diop v. ICE/Homeland Security,*656 F.3d 221 (3d Cir. 2011) and *Ly v. Hansen,* 351 F.3d 263 (6th Cir. 2003)

On August 6, 2013 the district court entered a permanent injunction but declined to order IJ's consider the length of detention or the likelihood of removal during bond hearings, or to provide periodic hearings for detainees who are not released after their first hearing.

The government appealed the permanent injunction relying on *Zadvydas* and *Demore* arguing that none of the subclasses are entirely entitled to bond hearings after six months of detention and to instead permit as-applied challenges to individual instances of prolonged detention through habeas proceedings, as this current petitioner is doing so now.

## II. Procedural requirements

On October 28, 2015 the Ninth Circuit court upheld the order and clarified the procedural requirements IJ's must follow for prolonged detention to ensure due process rights. *Rodriguez v. Robbins*, 804 F. 3d 1060 (9th Cir. 2015). The procedural requirements set forth in Singh apply to *Rodriguez* hearings. *Id.* at1139, 1144 (citing Singh, 638 F.3d at 1203). These requirements include proceedings before "a neutral IJ" at which "the government bears the burden of proof by clear and convincing evidence," id.at 1144 (citing Singh, 638 F.3dat 1203–04).

In addition , the court further held that automatic bond hearings are required and Immigration Judges are to consider alternatives to detention because it is presumed that IJ's are doing so already (See 8 C.F.R. § 241.4(f) (listing factors that Department of Homeland Security("DHS") must "weigh[] in considering whether to recommend further detention or release of a detainee," including the detainee's criminal history, evidence of recidivism or rehabilitation, ties to the United States , history of absconding or failing to appear for immigration or other proceedings, and the likelihood that the detainee will violate the conditions of release); id.§1236.1(d)(1) (authorizing IJs to "detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent maybe released" and to "ameliorate the conditions" of release imposed by DHS). *Id.* at 25

The panel also held that IJs must consider the length of detention and provide bond hearings every six months for class members detained longer than twelve months. *id*. at 25.

a. Burden and standard of proof

The Ninth Circuit court has noted that they are bound by precedent in *Singh,* which held that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Rodriguez II*, 715F.3d at 1135 (quoting *Singh*, 638 F.3d at 1203). *Id.* at 51

b. Restrictions short of detention.

*Rodriguez II* affirmed a preliminary injunction that directed IJs to "release each Subclass member on reasonable conditions of supervision, including electronic monitoring if necessary, unless the government" satisfied its burden of justifying continued detention. 715F.3d at 1131 (emphasis added) The government's objections to this requirement were unpersuasive. *Id.* at 52-54

c. Length of detention and likelihood of removal

Accordingly, a non-citizen detained for one or more years is entitled to greater solicitude than a non-citizen detained for six months. Moreover, Supreme Court precedent provides that "detention incidental to removal must bear a reasonable relation to its purpose." *Tijani,* 430 F.3d at 1249 (Tashima, J., concurring) (citing *Demore*, 538 U.S. at 527; *Zadvydas*, 533 U.S. at 690). At some point, the length of detention could "become so egregious that it can no longer be said to be 'reasonably

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

related' to an alien's removal." *Id.* (citation omitted). An IJ therefore must consider the length of time for which a non-citizen has already been detained.

As to the likely duration of future detention and the likelihood of eventual removal, those factors are too speculative and too dependent upon the merits of the detainee's claims for us to require IJs to consider during a bond hearing. We therefore affirm the district court's ruling that consideration of those factors "would require legal and political analyses beyond what would otherwise be considered at a bond hearing" and is therefore not appropriate. *Id.* at 54-55

d. Periodic hearings

IJ's must consider the length of past detention; we hold that the government must provide periodic bond hearings every six months so that non-citizens may challenge their continued detention as "the period of . . . confinement grows." *Diouf II*,634 F.3d at 1091(quoting *Zadvydas,* 533 U.S. at 701). *Id.* at 56

## RESPONSE TO RESPONDENT'S ARGUMENTS

### I. Proper Custodian

Petitioner, who is challenging his detention pro se has named the proper custodians to challenge his detention as he was advised to do. In a circumstance such as petitioner, naming the warden would be naming a respondent incapable of providing the requested relief. When detainees are held in state institutions by contract, the Warden wouldn't have the power release a detainee unless ordered by federal authority.

The respondent suggests that the appropriate approach is to apply the immediate custodian rule and to name the Warden as the proper respondent. The petitioner disagrees, since in the immigration context, a custodian should be based "more on the legal reality of control than the technicalities of who administers on a day-to-day basis the facility in which an individual is detained." *Armentero v. INS*, 340 F. 3d 1058, 1070 (9th Cir. 2003).

Furthermore, District courts have relied on *Rodriguez* in resolving numerous habeas petitions filed by immigration detainees. See, e.g., *Castaneda v. ICE Field Office Dir.*,No.14-1427, 2015 WL71584, at *2–3 (W.D. Wash. Jan. 6, 2015) (addressing whether the petitioner's bond hearing complied with the requirements of *Rodriguez II*); *Garcia-Perez v.Kane*, No. 13-01870, 2014 WL3339794, at *2 (D. Ariz. July8, 2014) (noting that, under *Rodriguez II*,

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

"detention always becomes prolonged at six months," but denying a habeas petition because petitioner "has not been detained for longer than six months"); *Lopez v. Napolitano*, No. 12-01750, 2014WL1091336, at \*4–6 (E.D. Cal. Mar. 18, 2014) (extending *Rodriguez II* to a non-citizen detained under § 1226(a) pending reinstatement of a previously issued removal order); *Franco-Gonzalez v. Holder*, No. 10-02211, 2013 WL3674492, at\*10–13 (C.D. Cal. Apr. 23, 2013) (applying *Rodriguez II* in holding that a class of non-citizens detained under § 1225(b), 1226, and 1231 are entitled to bond hearings after six months of detention)..

## II. Petitioner does not fail to make a claim
### a. Federal Rule of Civil Procedure 12(b)(6)

Respondent relies on Federal Rule of Civil Procedure 12(b)(6) as a claim that petitioner has not shown he is entitled to additional process. However, the petitioner is not asking for any "additional" process rather he claims he never received a "proper" process in his custody review and that DHS did not meet burden of proof by clear and convincing evidence that his prolonged detention is justified. Relying on *Rodriguez,* petitioner strongly suggests he is entitled to bond based on the evidence he has provided supporting a release while his petition for review is pending.

Petitioner has gone beyond "labels and conclusion, and a formulaic recitation of the elements…" satisfying he is entitled to relief. Psychiatric evaluations, parole board suitability, proof of rehabilitation, family & community support letters, strong family ties to the U.S, mandatory parole in the State of California, a fixed address and not to mention the fact that petitioner is a legal permanent resident clearly establishes an entitlement to relief. See *Kim v. Ziglar*, 276 F. 3d 523 (2002) the court held that 1226(c) violates substantive due process as applied to respondent because he is a lawful permanent resident alien. *Id*.at 528. It noted that permanent residents aliens constitute the most favored category of aliens and that they have the right to reside permanently in the United States and work here.

### b. Petitioner asserts that he has not received adequate due process

Respondent identifies petitioner as a post order alien. Petitioner challenges this because "post- order" aliens categorized under 8 U.S.C. §1231 have a final order of removal where their

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

removal proceedings are complete, pending deportation. Therefore there is no such class member of *Rodriguez* defined as a "post-order" alien who reverts back to 8 U.S.C §1226(a). Petitioner was originally detained under to 8 U.S.C §1226(c) and his detention shifted to 8 U.S.C §1226(a) once his detention surpassed the six months and his detention became prolonged. See *Rodriguez v. Robbins*, 804 F.3d (9th Cir. 2015) *Id.* at 49-50

Respondent claims petitioner's hearing fully complied with circuit law but then failed to recognize *Rodriguez* as the law of the circuit and does not cite any authority from the order when asserting petitioner has received adequate due process. In fact, Respondents source of authority pertaining to determining what due process requires is not even relevant to the issue at hand nor does it directly relate to a detainee facing detention in the immigration context. See *Mathews v. Eldridge*, 424, U.S. 319, 335 (1976)

Respondent also relies on *Zadvydas* and *Demore* to satisfy the argument. However, *Zadvydas* applies to detainees who have completed their removal proceedings and is pending removal under §1231, and *Demore,* only authorizes "brief periods" of detention. Petitioner asserts his detention is not authorized under either of these sections and that *Rodriguez* is the law of the circuit because after being detained for over 730 days, he is clearly facing prolonged detention. The Ninth Circuit has noted that *Rodriguez* decision does not conflict with the Supreme Court's decision in *Demore,* 538, U.S. 510 because *Demore* authorizes only "brief periods" of detention without individualized custody hearings to determine danger or flight risk. *Demore,* 538 U.S. at 513,523. *Rodriguez id.* at 32.

Respondent claims that the Government established that its interest in ensuring that criminal aliens do not abscond and can be removed once their removal order is final is served by detention in petitioner's case specifically. The petitioner disagrees. There is no evidence on record that the Government has established "clear and convincingly" that detention is warranted in his case specifically. *Rodriguez* makes clear that there is a distinction "between detention being authorized and being necessary as to any particular person." *Casas,* 535F.3d at 949. The government is required to establish that it has a legitimate interest "reasonably related to continued detention" *Rodriguez id.* at 31.

The respondent claims the two (now three) bond hearings petitioner has received is adequate due process and that DHS has already showed that continued detention is justified and

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

that additional bond hearings would be redundant unless there are changed circumstances. The petitioner asserts the record proves otherwise. Detainees are entitled to periodic bond hearings every six months to challenge their continued detention, petitioner's due process stopped there. Petitioner did not receive an individualized assessment by a neutral decision maker at his first hearing resulting in the IJ denying bond erroneously. The IJ disregarded all supporting evidence presented by the petitioner where the government had the burden of proof to prove otherwise. Due process requires at these hearings a "Neutral Forum" before a "Neutral Decision Maker" so that "…non-citizens may challenge their continued detention as the "period of …confinement grows."" *Id.* 56 citing *Diouf II*, 634 F.3d 1091 (quoting *Zadvydas*, 533 U.S. 701).

Petitioner's second and third Rodriguez bond hearings resulted in denials on the basis that there was no change of circumstances in petitioner's "removal proceedings" and the government has "already" met their burden of proof in petitioner's first bond hearing. Again, all evidence submitted in support of a release by the petitioner outweighs any evidence introduced by the DHS. The DHS continues to reintroduce petitioner's conviction documents and previous bond denials to justify a current danger and flight risk if released. This is not clear and convincing evidence as this is common to all detainees challenging their detention. Petitioner's bond transcripts, memorandum decisions by the same IJ, and BIA dismissals are in fact devoid of such burden having been met by the government. In fact, the IJ's main focus was not what the government had to present to indicate petitioner as a poor bail risk but rather the likelihood of merits of his petition for review. This type of analysis is inappropriate because consideration of those factors "would require legal and political analyses beyond what would otherwise be considered at a bond hearing; *Rodriguez Id.* at 55.

The hearing transcripts clearly paint a clear picture of the statutory, procedural and substantive due process violations petitioner is claiming. The IJ failed to consider alternatives to detention, and he disregarded the substantial evidence ensuring petitioner is not a flight risk. The Government has the burden of proof to prove otherwise and in return, the IJ should have weighed that evidence in determining a decision. Petitioner is a California parolee, subject to parole conditions set forth by the State of California. Petitioner understands the circumstances that any violation could result in being returned to prison. The incentive for him to appear if ordered

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

removed is highly logical, petitioner would much rather choose to report for removal and be free in a country he does not know, than go back to prison for violating his parole conditions.

Finally, the Respondent incorrectly stated that, "the immigration judge did not address whether petitioner was a danger to the community, but instead focused on his lack of ties to the United States and the fact that he has a final order of removal pending against him." (See respondent's response at pg. 4.) This is contradicting to the IJ's decision to deny bond. The IJ did acknowledge petitioner's strong ties to the United States and strong support in the community and the IJ did specify in the transcripts that he did not find petitioner a danger. However, the IJ then violated the procedural requirements when he declared in his decision memorandum that all of the positive factors in support of a release, including his extraordinary ties to the United States indeed give him an incentive to "not" appear for removal. (See IJ's memorandum in 1st bond denial). Petitioner has clearly satisfied all *Guerra* factors and the DHS did not at any time during any one of his bond hearings present or express any concern or argument to prove otherwise. The respondent is correct, however, that the IJ formed his bond denial on the basis that the petitioner is subject to a final order of removal. This basis is pure speculation that petitioner will not succeed in his merits in his petition for review and is a procedural violation because this is common to all detainees challenging removal and in no way, clear and convincingly should justify a flight risk.

### III. The respondent claims petitioner's detention is not indefinite and the Court cannot release him

The respondent claims petitioner's detention is not indefinite and the Court cannot release him, however, *Prieto-Romero*, 534 F 3d. at 1058 does not support the argument that indefinite detention halts this Court from releasing him. Fact is, *Prieto-Romero* received a (third) bond hearing at the direction of the District Court and the IJ found him eligible for bond after given an opportunity to contest the necessity of his detention before a neutral decision maker. *Id.* at 1065-1066

Furthermore, *Rodriguez* sets precedent and has addressed the "indefinite but prolonged" limbo and has already reached the conclusion that after six months, detention is prolonged and the burden of proof shifts to the government by clear and convincing evidence that continued detention is warranted. Petitioner can assert to this Court that the fact that the Philippines will

allow his repatriation and that he has no fear returning if he is ultimately ordered removed only further enhances a support for release on bond and is a positive factor when determining flight risk and danger because he is less likely to abscond.

## IV. Discretionary determination

The Respondent claims petitioner may be challenging the agency's discretionary determinations regarding bond eligibility, and this Court lacks jurisdiction over any such challenge. The petitioner disagrees. He is not challenging the "discretionary" aspect of the IJ's bond determination, but rather that the Petitioner never received a proper custody hearing with the procedural safeguards he is entitled to as set forth in *Rodriguez*.

The petitioner does assert that the IJ's determination that Petitioner is a flight risk is not supported by evidence. The record affirms that the IJ abused his authority to deny bond by speculating that petitioner will not win the outcome of his case and therefore should not be allowed to live comfortably while his petition for review is pending. The IJ even suggested that the proper remedy is to ask the Ninth Circuit court to expedite his proceedings as a resolution because he has already done everything he can do. Clearly, he did not feel he was in the position to grant bond, or rather felt he was in the position where he could deny bond simply because he ordered petitioner removed in his removal proceedings. This is clear abuse of authority because IJ's are directed to conduct bond proceedings separately and shall form no part of, any deportation or removal hearing or proceeding. *Id.* § 1003.19(d)   This inappropriate analysis took away from a proper "individualized assessment" and DHS was not held accountable for achieving even an intermediate burden of proof that continued detention is justified.

## V. Petitioner's third bonding hearing on September 14, 2016

Bond hearings should be automatically scheduled every six months so a detainee can challenge his continued detention. However, upon not receiving a notice for a new custody redetermination petitioner took it upon himself to file a Motion with the Immigration Court requesting a third *Rodriguez* bond hearing. The Court granted Petitioner's Motion and scheduled a bond hearing on September 14, 2016.

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

During this same time, Respondent filed a Motion in this Court for an extension of time to the order to show cause to allow EOIR to schedule a custody re-determination hearing so the petitioner "may appear and participate in his custody determination hearing, and for the immigration court to issue a decision."

Regardless of the manner in how this third bond hearing was scheduled, Petitioner was given another hearing with the same IJ, via video conference where his due process was once again violated.

Petitioner can only wish he had transcripts available to attach as supporting evidence to his claims. The DHS was not prepared to present any evidence as she assumed that the record carried over from the previous decisions. The IJ gave DHS time to prepare evidence in which DHS provided once again, petitioner's record of conviction and previous bond denial decisions. Petitioner attached his opening brief of his petition for review as support of his release with his motion for a bond hearing in which the IJ submitted into evidence at that time.

The IJ asked if there had been any change in circumstances since the last time and allowed petitioner and his wife testify. Petitioner and his wife both asked what more can the petitioner introduce as evidence to further support that he is not a flight risk to warrant bond. The IJ did not provide an answer.

During petitioner's wife's testimony the DHS asked her if she was aware that petitioner is appealing the removal decision and that he is "choosing" to remain detained. Petitioner's wife answered the question by stating that it is his "right" and before the discussion could continue, the IJ halted the questioning in saying that petitioner's wife has been thoroughly active in his proceedings and didn't want this to lead to a discussion. No further questions were asked.

The subject matter of Petitioner's third bond hearing only lasted about ten minutes when the IJ concluded that the DHS already met the burden of proof at petitioners April 2015 bond hearing and that because there are no changed circumstances in petitioner's removal proceedings he will have to deny bond. The hearing was concluded upon reserving the right to appeal the decision. Petitioner requests to supplement his Writ of Habeas Corpus at this time by claiming once again, his due process rights were violated in his third *Rodriguez* bond hearing.

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

## CONCLUSION

Without relief from this Court, petitioner will continue to languish in unjustified prolonged civil detention and a remand back to Immigration Court will be futile resulting in another erroneous decision.

Petitioner has provided an extraordinary amount of clear and convincing evidence supporting a release where the record clearly shows DHS did not meet the burden to prove otherwise. The Immigration Court has ignored the procedural safeguards in place for petitioner in order to ensure due process. The arguments raised in respondent's response are contrary to the Ninth Circuit order in *Rodriguez* making respondent's claims without merit.

**Dated: September 19, 2016**

**Cornelio Dela Cruz Sales, Jr.**
Petitioner
Pro Se

Traverse for Writ of Habeas Corpus

Agency No. A029-556-125

 

IMMIGRANTS' RIGHTS PROJECT

**STAND FOR JUSTICE**

**Bond Hearings for Immigrants Subject to Prolonged Immigration Detention
in the Ninth Circuit**

**Michael Kaufman, ACLU of Southern California
Michael Tan, ACLU Immigrants' Rights Project**

**December 2015**

This advisory discusses Ninth Circuit case law ordering bond hearings for certain immigrants subjected to long-term immigration detention. In October 2015, the Ninth Circuit held in *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) (*Rodriguez III*), that noncitizens detained pending their removal cases are entitled to an automatic bond hearing before an Immigration Judge ("IJ") at *six months of detention*, where the government bears the burden of justifying their continued imprisonment. The Court also required that the hearing be accompanied by several procedural safeguards. The Court thus reaffirmed and expanded upon its prior decision in *Rodriguez*, 715 F.3d 1127 (9th Cir. 2013) (*Rodriguez II*). Although the *Rodriguez* decisions specifically address an injunction governing immigration detention in the Los Angeles area, the decision applies across the Circuit.[1]

This advisory is intended for attorneys and advocates who work with immigrants detained in the Ninth Circuit. It explains who qualifies for a prolonged detention bond hearing after six months of detention under Ninth Circuit case law and the procedural safeguards that should accompany a prolonged detention hearing. The advisory proceeds in three parts. Part I provides background on *Rodriguez* and a related case on prolonged detention, *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). Part II discusses which groups of immigrants are entitled to a bond hearing at six months under Ninth Circuit law. Part III discusses the special procedural safeguards that must be provided at that hearing and other issues.

If you have questions or would like further information, please contact:

*Rodriguez* Class Counsel
ACLU-SC
1313 West 8th Street
Los Angeles, CA 90017

---

[1] *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (holding that all published opinions constitute "law of the circuit" and thus "binding authority which must be followed unless and until overruled by a body competent to do so").

1

rodriguezclasscounsel@aclusocal.org

## I.   Background on *Rodriguez v. Robbins* and *Diouf v. Napolitano*

*Rodriguez v. Robbins* is a class action lawsuit filed on behalf of immigrants detained six months or longer in the Central District of California pending their removal cases. The class as certified by the district court includes:

> all noncitizens within the Central District of California who: (1) are or were detained for longer than six months pursuant to one of the general immigration detention statutes pending completion of removal proceedings, including judicial review, (2) are not and have not been detained pursuant to a national security detention statute, and (3) have not been afforded a hearing to determine whether their detention is justified.

*See Rodriguez III*, 804 F.3d at 1066. The district court also approved subclasses, which correspond to each of the four general detention statutes under which the class members were detained: 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a). *See id.*[2]

*Rodriguez III* builds on a series of cases in the Ninth Circuit recognizing that prolonged immigration detention without a bond hearing raises serious due process concerns and construing the immigration statutes to require a constitutionally adequate bond hearing over such detention.[3] In September 2012, the district court granted a preliminary injunction for two of the subclasses— i.e., Sections 1225(b) and 1226(c). The injunction required that the government "'provide each [detainee] with a bond hearing' at six months and to "release each Subclass member on reasonable conditions of supervision . . . unless the government shows by clear and convincing evidence that continued detention is justified based on his or her danger to the community or risk of flight.'" *Id.* In April 2013, the Ninth Circuit affirmed. *See Rodriguez II*, 715 F.3d 1127.

In August 2013, the district court granted summary judgment and entered a permanent injunction on behalf of the entire class. The Ninth Circuit affirmed in part and reversed in part in October 2015. *See Rodriguez III*, 804 F.3d at 1071, 1090-91. The Court required the government to provide an automatic IJ bond hearing at six months of detention, where the government bears the burden of justifying continued detention by clear and convincing evidence. The Court further required that the IJ consider releasing individuals on reasonable conditions of supervision and the length of the individual's detention in making its custody decision. Finally, the Court ordered

---

[2] The individuals who fall in each subclass are explained in more detail below. Under the original certification orders, the only immigration detainees who do not fall within the *Rodriguez* class are: (1) individuals with administratively final orders of removal and no stay of removal, such that the government has present authority to remove them; and (2) individuals detained on terrorism related grounds under 8 U.S.C. §§ 1226A and 1537, who are subject to specialized custody review processes. Nonetheless, there is some ambiguity about the extent to which there remains a class of detainees held under Section 1231.

[3] *See Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005); *Casas-Castrillon v. Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008); *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011); *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1078-79 (9th Cir. 2006).

periodic bond hearings, every six months, for detainees who are not released after their first hearing. *See id.* at 1087-89.

The Ninth Circuit reversed the district court as to the Section 1231(a) subclass on the grounds that the class by definition excluded such individuals.[4] However, prior to *Rodriguez III,* the Ninth Circuit had held, in *Diouf v. Napolitano,* 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*), that individuals detained under Section 1231(a) are entitled to a bond hearing at six months, where the government bears the burden of proof. *Id.* at 1082. *Rodriguez III* in no way purports to limit *Diouf*; indeed, the Court relied on *Diouf II* throughout the opinion.[5] Thus, although *Rodriguez III* does not apply to Section 1231(a), individuals held under that statute are still entitled to a bond hearing at six months under *Diouf II.*

## II.   Who Is Entitled to a Prolonged Detention Hearing?

*All* immigrants detained under the general immigration detention statutes are **entitled to a prolonged detention bond hearing after six months of detention.** *Rodriguez III* applies to individuals detained six months or longer under Sections 1226(a), 1226(c), and 1225(b). Moreover, *Diouf II* requires bond hearing at six months for individuals detained under Section 1231(a).

### *Individuals detained under Section 1226(a)*

Section 1226(a) generally authorizes detention "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute authorizes release on "bond of at least $1,500" or "conditional parole." *Id.* § 1226(a)(2). Following an initial custody determination by the Department of Homeland Security ("DHS"), a noncitizen may apply for a redetermination by an IJ, and that decision may be appealed to the Board of Immigration Appeals ("BIA"). *See* 8 C.F.R. §§ 1236.1, 1003.19. At the bond hearing, the detainee bears the burden of establishing "that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *Matter of Guerra,* 24 I. & N. Dec. 37, 38 (BIA 2006).

*Rodriguez III* holds that individuals who had a bond hearing at the outset of their cases under Section 1226(a) but remain detained are automatically entitled to another bond hearing after six months of detention, where the government bears the burden of justifying their continued detention by clear and convincing evidence. *See Rodriguez III,* 804 F.3d at 1085.

---

[4] *See Rodriguez,* 804 F.3d at 1086 (concluding that because the class includes only "non-citizens who are detained pending completion of removal proceedings, including judicial review," it "by definition excludes any detainee subject to a final order of removal" and that "[s]imply put, the § 1231(a) subclass does not exist").

[5] *See, e.g., Rodriguez,* 804 F.3d at 1069-70, 1077-78, 1088-89.

4

### Individuals detained under Section 1226(c)

Section 1226(c) imposes mandatory detention on individuals who are "deportable" or "inadmissible" due to their criminal history while their cases are pending before the IJ or BIA. Such individuals are not entitled to an IJ bond hearing at the outset of their cases. Instead, the only review they may request is a hearing, under *In Re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), and 8 C.F.R. § 1003.19(h)(2)(ii) to determine if they are "properly included" under the terms of the statute.

*Rodriguez* holds that Section 1226(c) authorizes detention for only six months, at which point the authority for detention shifts to Section 1226(a), and the person is entitled to a bond hearing before the IJ. Moreover, at that hearing, the government bears the burden of justifying the individual's continued detention by clear and convincing evidence. *Rodriguez III*, 804 F.3d at 1079-81.

### Individuals detained under Section 1225(b)

Section 1225(b) applies to "applicants for admission" who are stopped at the border or a port of entry, or who are "present in the United States" but "ha[ve] not been admitted." 8 U.S.C. § 1225(a)(1). The statute provides that asylum seekers "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV). As to all other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for removal proceedings. *Id.* § 1225(b)(2)(A). Prior to the *Rodriguez* decisions, noncitizens detained pursuant to Section 1225(b) were generally not eligible for a bond hearing. *See* 8 C.F.R. § 1236.1(c)(2). However, the Attorney General has discretion to parole the noncitizen into the United States if there are "urgent humanitarian reasons or significant public benefit[s]" at stake, and individual presents neither a danger nor a risk of flight. 8 U.S.C. § 1182(d)(5)(A).

*Rodriguez III* holds that Section 1225(b) authorizes detention for only six months, at which point the authority for detention shifts to Section 1226(a), and the person is entitled to a bond hearing before the IJ. Moreover, at that hearing, the government bears the burden of justifying the individual's continued detention by clear and convincing evidence. *Rodriguez III*, 804 F.3d at 1082-84.

### Individuals detained under Section 1231(a)

Section 1231(a) authorizes the detention of individuals subject to a final order of removal. 8 U.S.C. § 1231(a). It requires detention during the 90-day removal period for noncitizens ordered removed on criminal or terrorist grounds after entry of a final order. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed during the removal period, Section 1231(a)(6) authorizes continued detention at the discretion of the Attorney General. By regulation, individuals detained under Section 1231 do not receive a bond hearing before an IJ, but rather only periodic post-order custody reviews ("POCRs") by DHS. *See* 8 C.F.R. § 241.4.4.

5

As explained above, *Rodriguez III* holds that the Section 1231 subclass "does not exist." It is unclear how this statement would apply to detainees who apparently are held under that provision, such as those who have a stay and are detained pending review of a denied motion to reopen. While the meaning of the Court's holding on this issue is unclear, prior to *Rodriguez III*, the Ninth Circuit held in *Diouf II* that individuals held under Section 1231 are entitled to a bond hearing after six months of detention, where the government bears the burden of justifying their continued imprisonment. *Diouf II*, 634 F.3d at 1082.[6] Notably, the Court found the POCR process to fail to provide adequate safeguards against unlawfully prolonged detention.[7]

### Individuals detained pending judicial review

The Ninth Circuit has also addressed what detention statute applies when **removal is stayed pending judicial review** in the removal case. The Court has held that Section 1226(a) governs detention when an individual has moved for a stay of removal or obtained a stay of removal pending a petition for review of a removal order.[8] In contrast, the Court has held that Section 1231(a) applies where removal is stayed pending judicial review of a denied motion to reopen.[9] However, for purposes of obtaining a bond hearing over prolonged detention, the distinction does not matter, since the Ninth Circuit has construed *all* the general immigration detention statutes to require a bond hearing at six months.

### Individuals with reinstated orders of removal who are seeking withholding of removal

There is a dispute in the courts about what detention statute applies **pending a reasonable fear determination and/or withholding-only proceedings**: Section 1226 or Section 1231. Regardless of which detention statute applies, an individual in withholding-only

---

[6] The government has argued that a *Diouf* hearing is required only once the individual has been subject to six months of detention *under Section 1231*—and not six *total* months of detention. This position is contrary to Ninth Circuit case law, which has focused on the due process problems presented by *prolonged* detention without a bond hearing, as opposed to the periods of detention under each respective detention statute. *See Diouf II*, 634 F.3d at 1091-92 (holding that "[w]hen *detention* crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound" (emphasis added)); *see also Tijani*, 430 F.3d at 1242, 1246 (Tashima, J., concurring) (characterizing detention as having lasted for two years and eight months, even though 20 of those months were for detention during removal proceedings before the IJ and BIA, and the rest while removal was stayed pending a petition for review); *Casas-Castrillon*, 535 F.3d at 948 (characterizing detention as lasting nearly seven years while case passed through different phases of proceedings).

[7] *See id.* at 1091 (explaining that "[t]he regulations do not afford adequate procedural safeguards because they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge.").

[8] *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059-60 & n.5 (9th Cir. 2008); *Casas-Castrillon*, 535 F.3d at 947.

[9] *Diouf v. Mukasey ("Diouf I")*, 542 F.3d 1222, 1229-30 (9th Cir. 2008).

proceedings should be entitled to a prolonged detention bond hearing after six months of detention.

The Ninth Circuit held in *Ortiz-Alfaro v. Holder*, 694 F.3d 955 (9th Cir. 2012), that individuals do not have a "final" order of removal for purposes of judicial review until the conclusion of reasonable fear and withholding-only proceedings. *Id.* at 958. Citing *Ortiz-Alfaro*, several district courts have concluded that detention pending such proceedings must be authorized by the pre-final order detention statute, Section 1226.[10] By contrast, the government generally has taken the position that individuals in withholding-only proceedings are detained under Section 1231. But even assuming Section 1231 applies, the distinction is irrelevant with respect to prolonged detention, as *Diouf II* establishes that noncitizens detained under Section 1231 are entitled to a bond hearing after six months of detention.

### III.    What Procedural Safeguards Are Required at a *Rodriguez* Hearing?

The Ninth Circuit has held that *Rodriguez* bond hearings must be accompanied by robust procedural protections in light of the serious deprivation of liberty at stake. Although the Ninth Circuit has not directly addressed this issue, the same procedural framework should apply to *Diouf* hearings because the Court has recognized that prolonged detention under Section 1231 presents the same due process concerns.[11]

The procedures for a *Rodriguez* hearing differ in several ways than the procedures that apply to a Section 1226(a) bond hearing conducted at the outset of a person's case. For example, a noncitizen must make a request to obtain such a bond hearing and, at the hearing, the noncitizen bears the burden to demonstrate why he or she should not be detained. *See supra* Section II.

By contrast, the Ninth Circuit has required greater protections for prolonged detention bond hearings:

- The government must provide the hearing **automatically** after six months of detention, rather than at the detainee's request, *see Rodriguez III*, 804 F.3d at 1085;[12]

- The **government bears the burden** to justify continued detention **by clear and convincing evidence**, *see Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011);

---

[10] *See, e.g., Lopez v. Napolitano*, No. 1:12-CV-01750 MJS (HC), 2014 WL 1091336, at *3 (E.D. Cal. Mar. 18, 2014) (holding that Section 1226 applies in these circumstances); *accord Guerra v. Shanahan*, No. 14-CV-4203 (KMW), 2014 WL 7330449, at *3-5 (S.D.N.Y. Dec. 23, 2014); *Guerrero v. Aviles*, No. 14-4367 (WJM), 2014 WL 5502931, at *3-9 (D.N.J. Oct. 30, 2014).
[11] *See Diouf II*, 634 F.3d at 1086 (finding "no basis for withholding from aliens detained under § 1231(a)(6) the same procedural safeguards accorded to aliens detained under § 1226(a)").
[12] By order of the district court in *Rodriguez*, the government must schedule and notice the bond hearing for *Rodriguez* class members prior to 180 days of detention, but the hearing need not take place until the 195th day of detention. *See Rodriguez III*, 804 F.3d at 1071.

- The IJ must consider whether the noncitizen can be released on **reasonable conditions of supervision**, *see Rodriguez III*, 804 F.3d at 1087-88;

- The IJ must take into account **the amount of time that the noncitizen has been detained** in determining whether continued detention is justified, *see Rodriguez III*, 804 F.3d at 1088-89;

- While the IJ need not consider **likelihood of removal** in all cases, the IJ should consider it in particular cases where there may be some impediment to the noncitizen's removal (e.g., he or she is stateless), *see Rodriguez III*, 804 F.3d at 1089 n.18 (citing *Owino v. Napolitano*, 575 F.3d 952, 955-56 (9th Cir. 2009));

- The government must make a **contemporaneous record of the hearing**, such that a transcript can be prepared for an appeal of the bond determination, *see Singh*, 638 F.3d at 1207;

- The government must provide **periodic hearings every six months** for individuals who remain detained for additional periods of prolonged detention, *see Rodriguez III*, 804 F.3d at 1089.

The following discussion addresses these procedural requirements in more detail.

### *Does my client need to request a* **Rodriguez** *bond hearing?*

**No**, the government is required to **automatically** schedule a bond hearing after six months of detention and, if your client remains detained, for periodic bond hearings every six months. *See id.* at 1085, 1089. However, if you believe that your client qualifies under *Rodriguez* but has not been scheduled for a bond hearing, you should request a bond hearing by filing a motion with the immigration court that is handling your immigration case. In addition, detainees arguably held under Section 1231 should always request a hearing, as the application of *Rodriguez III* to their cases remains unclear.

### *What does the "clear and convincing evidence" standard mean in practice?*

At the hearing, **the government bears the burden** to justify continued detention **by clear and convincing evidence** that the individual is either a flight risk or a danger to the community. If the government fails to meet its burden, the individual is entitled to release on monetary bond and/or reasonable conditions of supervision.

The "clear and convincing evidence" standard is a higher evidentiary standard than the "preponderance of the evidence" standard, which only requires a showing that something is more likely than not to be true. *See* Black's Law Dictionary (10th ed. 2014) (defining "clear and convincing" standard as being "highly probable" or "reasonably certain"); *see also Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (to meet the clear and convincing evidence standard, the evidence presented must "place in the ultimate factfinder an abiding conviction that the truth of

8

the factual contentions are highly probable") (internal quotation marks and citations omitted)). It also requires more than a showing of reasonable, substantial, and probative evidence. *See Woodby v. INS*, 385 U.S. 276, 287 (1966) (Clark, J., dissenting on other grounds) (calling the "clear, unequivocal, and convincing" standard of proof placed on the government in deportation proceedings a higher standard of proof than the "long-established 'reasonable, substantial, and probative' burden"); *cf.* 8 U.S.C. § 1229a(c)(3)(A) (specifying that "clear and convincing" evidence for establishing that a noncitizen is deportable and also requiring that the immigration judge's decisions be based on "reasonable, substantial, and probative evidence.").

Thus, to determine whether the government has met its burden, the IJ should consider whether the government has presented reasonable, substantial, and probative evidence that demonstrates that the individual is "highly probable" or "reasonably certain" to be a flight risk or a danger if released. Importantly, this analysis must be prospective in nature. In other words, *past* evidence of flight risk or dangerousness is only sufficient if it demonstrates that an individual is highly probable or reasonably certain to be a *future* risk of flight or danger.

To justify detention on dangerousness grounds, the Ninth Circuit has required that the government put forward substantial evidence that a person is highly likely to engage in criminal activity. As the Ninth Circuit has explained, "[a]lthough an alien's criminal record is surely relevant to a bond assessment, . . . criminal history alone will not always be sufficient to justify denial of bond on the basis of dangerousness. Rather, the recency and severity of the offenses must be considered." *Singh*, 638 F.3d at 1206 (discussing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)); *id.* ("not all criminal convictions conclusively establish that an alien presents a danger to the community, even where the crimes are serious enough to render the alien removable"). The IJ must determine that the government's asserted interest in "protecting the community from danger 'is *actually* served by detention *in [t]his case.*'" *Id.* (quoting *Casas-Castrillon*, 535 F.3d at 949) (emphasis in original). For example, in *Singh*, the Ninth Circuit found that a man convicted of several offenses including receiving stolen property, petty theft with priors, and controlled substance offenses, could be found not to be a danger to the community, even though at least one of those offenses was an aggravated felony. 638 F.3d at 1200-01, 1205.

Moreover, the Ninth Circuit has held that a past criminal record should only be considered to the extent it shows the individual will be dangerous in the future. *See id.* at 1205 (observing that even a lengthy record of prior convictions, including some past violent convictions, may not meet the standard for clear and convincing evidence of "future dangerousness" where the "impetus for his previous offenses[ ] has ceased.").

Likewise, to justify detention on flight risk grounds, the Ninth Circuit has required government to put forward substantial, individualized evidence as to why that individual is highly likely to flee if released. In *Singh*, the Ninth Circuit found that the fact that a noncitizen has a final administrative order of removal is "common" to all noncitizens who are seeking judicial review and that it "alone does not constitute clear and convincing evidence that [the noncitizen] presented a flight risk justifying denial of bond." 638 F.3d at 1205.

9

***Is it relevant how long my client has been detained?***

**Yes**, the Ninth Circuit has held that that IJ "must consider the length of time for which a non-citizen has already been detained" in determining whether continued detention is justified. *Rodriguez III*, 804 F.3d at 1089. As the length of detention grows, the government correspondingly must present stronger evidence to justify detention: "a non-citizen detained for one or more years is entitled to greater solicitude than a non-citizen detained for six months." *Id*.

The relevance of detention length may change over time. At the first *Rodriguez* bond hearing conducted after six months of detention, you can emphasize that your client has already been detained for a period that the Ninth Circuit has recognized as "profound," *Diouf II*, 634 F.3d at 1092, and may exceed the period that he or she served for any criminal offense. For any subsequent *Rodriguez* hearings conducted after longer periods of detention, the IJ should require that the government present more or different evidence to justify continued detention. You should argue that your client's prior criminal history is less indicative of future dangerousness as time passes, *see Singh*, 638 F.3d at 1205, and present any evidence demonstrating rehabilitation since that time.

Moreover, the Ninth Circuit has made clear that, "[a]t some point, the length of detention could become[] so egregious that it can no longer be said to be reasonably related to an alien's removal" and that continued detention is therefore no longer justified. *Rodriguez III*, 804 F.3d at 1089 (internal quotation marks and citation omitted).

***Can my client ask to be released on conditions other than a monetary bond?***

**Yes**, the Ninth Circuit has required IJs to consider whether the individual can be released on **"reasonable conditions of supervision"** at a *Rodriguez* hearing. *See Rodriguez III*, 804 F.3d at 1087-88. IJs have the authority to order a detainee released on their "own recognizance" without a monetary bond or conditions of supervision.[13] An IJ can also order release on conditions besides a monetary bond, including attendance in drug treatment or counseling, regular phone or in-person reporting, or electronic monitoring.

At the hearing, you should request release on appropriate, reasonable conditions. In particular, if your client cannot afford a monetary bond or it would create financial strain for your client or his or her family, the individual should request that the IJ order release on alternative conditions of supervision. *See Pugh v. Rainwater*, 572 F.2d 1053, 1057-58 (5th Cir. 1978) (en banc) (emphasizing that "[t]he incarceration of those who cannot [pay a money bail], without meaningful consideration of other possible alternatives, infringes on both due process and equal protection requirements").

---

[13] *See Rivera v. Holder*, 307 F.R.D. 539, 553 (W.D. Wash. 2015). Notably, DHS has conceded in a brief to the BIA that IJs have "authority under section INA § 236(a) to release a respondent on her own recognizance and pursuant to conditional parole, as opposed to settling a monetary bond with a minimum amount of $1,500." In re V-G, DHS Br. at 3 (BIA filed Jan. 21, 2015). For more information and a copy of DHS's brief, *see* ACLU Practice Advisory on *Rivera v. Holder* (Sept. 2015), https://www.aclu.org/legal-document/rivera-v-holder-practice-advisory.

### *Are the Merits of My Client's Immigration Case Relevant?*

The government may argue that your client is a flight risk because he or she is unlikely to win his or her immigration case (for example, if the client has already been ordered removed by an IJ). However, the Ninth Circuit has suggested that IJ generally should not consider the strength of the individual's removal case at a bond hearing. *See Rodriguez III*, 804 F.3d at 1089 (holding that "likelihood of eventual removal . . . [is] too speculative and too dependent upon the merits of the detainee's claims for us to require IJs to consider during a bond hearing."). If the IJ nonetheless considers this factor, you should explain to the judge why your client will prevail on his or her claims or on appeal.

### *Challenging an adverse IJ decision through a BIA appeal or in a habeas petition*

If your client is dissatisfied with the IJ's bond determination, you can appeal the determination to the BIA. 8 C.F.R. 1003.19(f).

The Ninth Circuit has also recognized that the federal districts have jurisdiction to consider habeas petitions challenging immigration bond determinations in certain circumstances. In *Leonardo v. Crawford*, 646 F.3d 1157 (9th Cir. 2011), the Ninth Circuit held that habeas petitioners should typically first exhaust their administrative remedies by appealing the IJ's decision at a prolonged detention hearing to the BIA. *Id.* at 1160-61. However, there is no statutory exhaustion requirement. Exhaustion is required, if at all, as a prudential matter alone, and the traditional exceptions to such exhaustion apply. *See id.* at 1160 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-49 (1992), *superseded by statute on other grounds as stated in Booth v. Churner*, 532 U.S. 731 (2001); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).[14]

The Ninth Circuit has held that the federal courts have jurisdiction to consider legal issues raised in a habeas petition challenging a bond decision, but lack jurisdiction over purely discretionary determinations. *See Singh*, 638 F.3d at 1202 (holding that the immigration statutes "restrict[] jurisdiction only with respect to the executive's exercise of discretion" and the federal courts retain "habeas jurisdiction over questions of law. . . including 'application of law to undisputed facts, sometimes referred to as mixed questions of law and fact,'" and constitutional claims) (quoting *Ramadan v. Gonzales*, 479 F.3d 646, 648 (9th Cir. 2007) (per curiam)). *See also Prieto-Romero*, 534 F.3d at 1067; *Doan v. INS*, 311 F.3d 1160, 1162 (9th Cir. 2002).

\*   \*   \*

If you have any questions or would like further information on prolonged detention hearings, please contact *Rodriguez* Class Counsel at rodriguezclasscounsel@aclusocal.org.

---

[14] *See also McCarthy*, 503 U.S. at 146-49 (observing that the traditional exceptions to prudential exhaustion include where exhaustion would cause "undue prejudice to the subsequent assertion of a court action" or "irreparable harm" to the petitioner, there is "some doubt as to whether the agency was empowered to grant effective relief," or it would be futile because "the administrative body is shown to be biased or has otherwise predetermined the issue before it" (internal citations and quotation marks omitted)).