UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORNELIO DE LA CRUZ SALES,

Petitioner,

v.

JEH CHARLES JOHNSON, et al.,

Respondents.

Case No.16-cv-01745-EDL

**ORDER DENYING RESPONDENTS' MOTION FOR RECONSIDERATION AND GRANTING MOTION TO ENFORCE JUDGMENT**

Re: Dkt. Nos. 20, 25

The Court issued an order granting the petition for writ of habeas corpus of Petitioner Cornelio de la Cruz Sales, Jr. and denying Respondents' motion to dismiss on April 27, 2017 ("April 27 Order"). Dkt. No. 17. The Court ordered Petitioner to be released unless Petitioner had a new bond hearing before an immigration judge ("IJ") within 60 days. On May 25, 2017, Respondents moved for an order under Federal Rules of Civil Procedure 59(e) and 60(a) and (b) amending or altering the Court's April 27 Order. Dkt. No. 20. Petitioner opposed, and Respondents replied. Dkt. Nos. 34 & 35. In addition, before the Court is a pending motion to enforce judgment filed by Petitioner on July 11, 2017. Dkt. No. 25. The Court held a hearing on that motion on August 2, 2017. For the reasons below, the Court DENIES Respondents' motion for reconsideration and GRANTS Petitioner's motion to enforce judgment.

## I. BACKGROUND

Petitioner is a native and citizen of the Philippines who became a lawful permanent resident of the United States in 1989. Pet. at 3. In 1995, Petitioner was convicted of second degree murder in a California state court, and sentenced to a term of 16 years to life in state prison. Id. On September 18, 2014, Petitioner was found suitable for parole and released. Id. Thereafter, Petitioner was immediately detained by the Immigration and Customs Enforcement ("ICE") agency.

United States District Court
Northern District of California

On November 24, 2014, an immigration judge ("IJ") found Petitioner removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien who, after admission, was convicted of murder, which is an aggravated felony, as defined in INA § 101(a)(43)(A), 8 U.S.C. § 1101(a)(43)(A). Resp., Ex. A4. The IJ also found Petitioner removable because Petitioner had been convicted of an aggravated felony/crime of violence as defined in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F). Id. The IJ further found that Petitioner was not eligible for a waiver, and ordered Petitioner removed. Id.

On March 18, 2015, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal of the order of removal, affirmed the IJ's decision, and ordered Petitioner removed. Resp. Ex. A5. On March 23, 2015, Petitioner filed a petition for review and a motion to stay the removal in the Ninth Circuit Court of Appeals.

On March 25, 2015, the IJ held a bond hearing to determine whether Petitioner could be released on bond pending the Ninth Circuit's resolution of Petitioner's petition for review. Pet., Ex. I. On April 28, 2015, the IJ issued a memorandum detailing his reasons for denying bond. Resp., Ex. A6. On September 17, 2015, the BIA affirmed the IJ's decision. Id., Ex. A7.

On September 18, 2015, the Ninth Circuit granted Petitioner's motion to stay the removal pending adjudication of the petition for review. Pet. at 5 and Ex. VIII. The petition for review before the Ninth Circuit has been fully briefed.

The IJ has since conducted four more bond hearings, the last occurring on June 23, 2017, and denied bond. Resp., Exs. A8, A10; Dkt. Nos. 20-2, 25-2.

Petitioner filed a Section 2241 petition on April 6, 2016. Dkt. No. 1. On April 27, 2017, the Court issued an order granting the petition for writ of habeas corpus and denying Respondents' motion to dismiss. Dkt. No. 17. The Court held that the bond hearings which had occurred prior to the filing of the petition were constitutionally deficient because the government's evidence did not establish clearly and convincingly that Petitioner was a poor bail risk. The Court ordered Petitioner to be released unless Petitioner had a new bond hearing before an IJ within 60 days.

At the time of filing, Petitioner was detained at the Rio Cosumnes Correctional Center in California. Dkt. No. 25 at 3. While the habeas petition was pending, Respondents transferred Mr.

Sales to Louisiana and later to Alabama, where Petitioner is currently detained. Id.

On May 25, 2017, Respondents moved to amend or alter judgment under Federal Rules of Civil Procedure 59(e), 60(a) and 60(b). Dkt. No. 20. Respondents argued that the portion of the Court's April 27 Order discussing Petitioner's history of bond hearings was not complete, as it did not address Petitioner's fourth bond hearing that occurred on April 5, 2017, shortly before the Court entered the April 27 Order. Dkt. No. 20-1, Mot. at 1-2. Respondents also asked the Court to reconsider its analysis in its April 27 Order, contending that it is not in accordance with Ninth Circuit and Supreme Court law. Id. at 2.

On June 23, 2017, IJ Anthony Murry conducted a bond hearing. The IJ found that he did not have jurisdiction to release Petitioner. Dkt. No. 25-2 at 48. The IJ also found that the Court's April 27 Order, to the extent it meant the evidence does not show or has not shown to a clear and convincing standard that Petitioner was a risk of non-appearance such that he should be detained, should be addressed to the BIA rather than the IJ. Id. at 49. The IJ, noting that he was applying the clear and convincing standard, found that Petitioner was an appearance risk who should be detained without bond. Id. at 17, 20. Accordingly, the IJ denied Petitioner's request for change of custody status.

On July 11, 2017, Petitioner moved to enforce the April 27 Order. Dkt. No. 25. Petitioner argues that the IJ did not conduct a Rodriguez bond hearing, the IJ's jurisdictional analysis was incorrect, the IJ's assessment of Mr. Sales' flight risk violated the court order, and the IJ failed to consider whether Petitioner's nearly three years of detention was reasonable.

On July 19, 2017, Respondents opposed the motion. Dkt. No. 28. Respondents contend that the bond hearing on June 23, 2017 fully complied with the Court's April 27 Order, and that Petitioner must exhaust judicial and administrative remedies before seeking relief under Section 2241.

On July 26, 2017, Petitioner replied arguing that the hearing on June 23 did not satisfy the Court's order, and that Petitioner had no administrative remedies to exhaust before filing his motion. Dkt. No. 32.

On August 2, 2017, the Court held a hearing on Plaintiff's motion to enforce judgment.

Dkt. No. 33. The Court took the motion under submission and provided a briefing schedule for the government's motion for reconsideration. On August 4, 2017, Petitioner opposed Respondents' motion for reconsideration. Dkt. No. 34. Petitioner argued that evidence of Mr. Sales' fourth bond hearing was neither new nor material, and that the Court did not clearly err as it obeyed binding Ninth Circuit authority. Id. On August 10, 2017, Respondents replied. Dkt. No. 35. Respondents argued that the IJ correctly applied the clear and convincing standard in all of the bond redetermination hearings, and that this Court should reconsider its impermissible weighing of the evidence. Id.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 59(e), a party may move to have the court amend its judgment within twenty-eight days after entry of the judgment. Fed. R. Civ. P. 59(e). In general, a district court may grant a Rule 59(e) motion if it "is presented with newly discovered evidence, committed *clear error,* or if there is an intervening change in the controlling law." McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999) (citing 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.1999)) (emphasis in original). However, amending a judgment after its entry pursuant to Federal Rule of Civil Procedure 59(e) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir. 2000).

Accordingly, "[a] Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation," id., or used to reargue previously decided issues. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1442 (9th Cir. 1991) (holding that the Rule 59(e) motion should be denied because the moving party did not present arguments that court had not already considered).

To prevail on a Rule 59(e) motion, a party must show that: (i) such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; or (ii) such motion is necessary to present newly discovered or previously unavailable evidence; or (iii) such motion is necessary to prevent manifest injustice; or (iv) amendment is justified by an intervening change in controlling law. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).

Rule 60(a) allows the court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. Pro. 60(a). Under Fed. R. Civ. P. 60(b) the court may relieve a party from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

See also Herbst v. Cook, 260 F.3d 1039, 1044 (9th Cir. 2001).

## III. DISCUSSION

### A. Motion for Reconsideration

#### 1. Evidence of Mr. Sales' Fourth Bond Hearing

Respondents argue that the Court should find sufficient grounds for amending or altering the April 27 Order, or alternatively, correct a mistake arising from the omission of any discussion of Petitioner's fourth bond hearing on April 5, 2017. Petitioner, citing Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003), argues that relief from judgment based on newly discovered evidence is warranted only if the evidence was actually newly discovered, the moving party exercised due diligence to discover it, and it would likely have changed the outcome of the case. Petitioner pointed out that Respondents concede that they failed to update the Court regarding the fourth bond hearing. Dkt. No. 20-1, Mot. at 2 n.2. Furthermore, Respondents argue that the fourth bond hearing was substantively identical to the first, second, and third hearings.

In Feature Realty, Inc. v. City of Spokane, the court stated:

> Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence; and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case."

331 F.3d 1082, 1093 (9th Cir. 2003) (citing Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,

Inc., 833 F.2d 208, 211 (9th Cir. 1987)). "Evidence in the possession of the party before the judgment was rendered is not newly discovered." Id. (quoting Coastal Transfer Co., 833 F.2d at 212). The bond hearing on April 5, 2017 does not constitute newly discovered evidence because Respondents was not diligent but instead simply failed to update the Court. See Dkt. No. 20-1, Mot. at 2 n.2. Furthermore, Respondents have not shown that the fourth bond hearing would have been likely to change the disposition of the case.

**2. The IJ's Application of Clear & Convincing Standard**

Respondents argued that the Court impermissibly re-weighed the factors that the immigration judge considered in determining that Petitioner poses a flight risk justifying detention without bond. Respondents contend that the Court analyzed the immigration judge's discretionary weighing of whether Petitioner posed a flight risk rather than limiting its review to whether the immigration judge applied the correct legal standard. Respondents contend that the Ninth Circuit consistently rejects attempts such as this to recast abuse of discretion arguments as due process violations, citing Martinez-Rosas v. Gonzales. 424 F.3d 926, 930 (9th Cir. 2005) ("[T]raditional abuse of discretion challenges recast as alleged due process violations do not constitute colorable constitutional claims that would invoke our jurisdiction.").

Petitioner responds that the Court properly obeyed the Ninth Circuit's controlling decision in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011). Petitioner contends that the April 27 Order properly acknowledges the tension between the statute barring judicial review of discretionary bond determinations and case law preserving a measure of habeas jurisdiction. Petitioner argues that Singh dictates the outcome of this case because here, as in Singh, the government did not argue that Petitioner was a flight risk and the only evidence of flight risk underlying the bond denial was the removal order.

In Singh, the Ninth Circuit held that the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond. Id. at 1197. The Ninth Circuit also held, among other holdings, that the application of an incorrect standard of proof at alien's bond hearing warranted granting habeas relief unless an alien was provided with a new hearing. Id. at 1205-06. The court wrote,

> [A]lthough the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241. . . . The conclusion that the district court had habeas jurisdiction to review Singh's claims of constitutional and legal error is also consistent with 8 U.S.C. § 1252(a)(2)(B)(ii). Like § 1226(e), § 1252(a)(2)(B)(ii) restricts jurisdiction only with respect to the executive's exercise of discretion. It does not limit habeas jurisdiction over questions of law, including application of law to undisputed facts, sometimes referred to as mixed questions of law and fact.

Id. at 1202 (internal quotation marks and citations omitted). The court remanded the case to the district court with instructions to grant the writ and order the petitioner's release unless the agency provided the petitioner a new bond hearing applying the proper standard. Id. at 1205-06.

Notwithstanding 8 U.S.C. § 1226(e),[1] under Singh the Court has habeas jurisdiction "over questions of law, *including application of law to undisputed facts, sometimes referred to as mixed questions of law and fact*." 638 F.3d at 1202 (emphasis added). Accordingly, the April 27 Order reviewed the IJ's evaluation of the reasons that he concluded that Petitioner was a risk of nonappearance and a poor bail risk. Dkt. No. 17 at 10. The IJ noted that Petitioner owned no assets or property in the U.S., had been ordered removed by both the IJ and the BIA, had no incentive to report for removal because of his family ties to the U.S., and desired to remain in the U.S. Id. at 10-11. As a matter of law, these reasons did not meet the clear and convincing standard. Thus, Respondents have failed to show that the Court's judgment rests upon manifest errors of law or fact.

**B. Motion to Enforce Judgment**

**1. Whether the IJ Complied with the Court's April 27 Order**

The government argues that the IJ conducted a new bond hearing on June 23, 2017, applying the 'clear and convincing' standard, in compliance with the Court's April 27 Order. The

[1] "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e).



United States District Court
Northern District of California

IJ reviewed all of the evidence once again, as Petitioner submitted no new evidence, and determined that Petitioner continues to be a flight risk if released. Id. Petitioner contends that the Court's April 27 Order required the government to provide additional evidence that Petitioner was a flight risk. Petitioner also argues that the IJ perversely turned the length of Petitioner's detention against him. Controlling Ninth Circuit authority cited in the April 27 Order provides that the longer a non-citizen is detained, the more robust the procedural protections should be. Rodriguez v. Robbins, 804 F.3d 1060, 1077 (9th Cir. 2015).

As noted in the Court's April 27 Order, "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). That section does not, however, limit habeas jurisdiction over constitutional claims or questions of law. Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011). The Court's April 27 Order cited Judulang v. Chertoff, 562 F. Supp. 2d 1119 (S.D. Cal. 2008). There, the court held that the evidence before the IJ failed, as a matter of law, to prove flight risk or danger pursuant to the Court's earlier order for a bail hearing. Id. at 1127. Accordingly, the court ordered the respondents to release the petitioner under appropriate conditions of supervision. Id. In that case, the district held that it had jurisdiction to review the IJ's bail determination. Id. at 1126. The court also held that where the petitioner's only relevant conviction for violence is nearly 20 years old and no other evidence indicating dangerousness was put forward, that the IJ's determination of present dangerousness was an error of law. Id. at 1127.

At the hearing on June 23, 2017, the IJ purported to apply the correct standard of clear and convincing evidence, reading from the model Federal Jury Instructions and the 9th Circuit Jury Instruction 1.4. Dkt. No. 25-2 at 48 (internal pagination of 17).[2] The IJ did so only after stating

[2] Number one, I want to point out that the model Federal Jury Instructions for clear and convincing evidence says that clear and convincing evidence, is evidence that produces a firm belief or conviction as to the matter at issue. It does not require proof as to an absolute certainty since that's seldom possible.

The 9th Circuit jury instruction 1.4 uses the following language. Clear and convincing evidence means you must be persuaded by the evidence that the claim or defense is highly probable and obviously it's a higher standard than a preponderance of the evidence; which is

that he could not implement this Court's April 27 Order that the evidence the IJ had already reviewed one did not meet the clear and convincing standard because in the IJ's view only the BIA could do so. He further clearly expressed his disagreement with this Court's April 27 Order, stating that this Court had acted contrary to law in determining that the evidence fell short of clear and convincing:

> **[T]**o the extent the Magistrate's Order should be read to mean that the evidence does not show or has not shown the clear and convincing standard that the respondent was a risk of non-appearance such that he should be detain, I believed that has to be addressed to the BIA, not me, as I cannot, in effect overrule the BIA's determination . . . .
>
> If we--the Magistrate has signed that, in her view, as if she were reading--de novo and making her own determination regarding clear and convincing evidence that finding by the Magistrate is contrary to law. Congress specifically too away jurisdiction from the Magistrate to make that determination.

Dkt. No. 25-2, Mot., Ex. D at 17-18. The IJ then doubled down by stating that Petitioner's length of detention increased his risk of flight, id. at 50-51, despite controlling Ninth Circuit authority that the longer a non-citizen is detained, the more robust the procedural protections should be. See Rodriguez, 804 F.3d at 1077. The IJ then found that based on the same evidence as before which this Court had held did not meet the clear and convincing standard that "it is highly probable that given the opportunity [Petitioner] will abscond." Dkt. No. 25-2 at 51 (internal pagination of 20). In sum, the IJ held:

> [L]ooking at all the evidence once again, clearly the length of detention, which I believe cuts against the respondent because the length of his detention, in my view, increases the likelihood that he's not going to want to be detained again, I have no doubt whatsoever that the respondent is an appearance risk such that he should be detained without bond.

Dkt. No. 25-2 at 51. This brief and conclusory treatment of the evidence that Petitioner is a flight risk at the June 23, 2017 hearing does not actually, or correctly, apply the clear and convincing standard.

---

> what I've always understood the standard to be and the standard that I try to apply in this case.

Dkt. No. 25-2 at 48 (17:7-21 based on internal pagination).

**2. Exhaustion of Administrative Remedies**

**a. Prudential Exhaustion**

Administrative exhaustion can be statutorily required or judicially imposed as a matter of prudence. See Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003). Respondents argued that the jurisdictional exhaustion requirement does not apply to a challenge to detention without bond, but the Court could require prudential exhaustion.

> Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Petitioner responds that Respondents have cited no authority for the proposition that a litigant must exhaust administrative remedies before filing a motion to enforce a final judgment. Furthermore, Petitioner contends that there is no administrative agency process through which Mr. Sales can seek compliance with a federal court order.

Here, the time for Petitioner to appeal to the Board has passed, as the appeal was due July 24, 2017. Dkt. No. 25-2 at 51 (internal pagination of 20). Thus, it is too late for administrative review. Furthermore, Respondents have not cited any authority for exhaustion of administrative remedies before filing a motion to enforce a final judgment.

**3. Jurisdiction**

The IJ also erroneously determined that he did not have jurisdiction over Petitioner "because [he] is no longer within the class of persons covered by the Rodriguez injunction." Dkt. No. 25-2 at 49 (internal pagination of 18). A court retains jurisdiction over a habeas petition even if a petitioner is transferred outside of the court's jurisdiction after filing. Rumsfeld v. Padilla, 541 U.S. 426, 441 (2004) (citing Ex parte Endo, 323 U.S. 283 (1944)):

> Endo stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.



United States District Court
Northern District of California

Rumsfeld, 541 U.S. at 441. At the hearing before this Court, Respondents conceded that the IJ erred on this point and did, in fact, have jurisdiction over Petitioner.

**4. Enforcement of Judgment**

Petitioner states that the Court may enforce its judgment when the parties have not complied with the terms of the judgment, citing Federal Rule of Civil Procedure 70(a) and Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004), aff'd sub nom. Heartland Reg'l Med. Ctr. v. Leavitt, 415 F.3d 24 (D.C. Cir. 2005). The court in Heartland held that a court may enforce its judgment even if the noncompliance was due to misinterpretation of the judgment. Id. at 11 (citing Pub. Citizen, Inc. v. Dep't. of Educ., 292 F. Supp. 2d 1 (D.D.C. 2003)). Petitioner states that "[t]he Court should order Respondents to immediately release Mr. Sales from custody without posting of monetary bond or use of an ankle monitor." Dkt. No. 25 at 7. Respondents did not contest this authority. The Court orders Respondents to release Petitioner under appropriate conditions of supervision, such as an ankle monitor and reporting requirements.

## IV. CONCLUSION

Accordingly, the Court DENIES Respondents' motion for reconsideration and GRANTS Petitioner's motion to enforce judgment. The Court orders Respondents to release Petitioner under appropriate conditions of supervision, such as an ankle monitor and reporting requirements.

**IT IS SO ORDERED.**

Dated: September 20, 2017

ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California